# In the United States Court of Federal Claims

| | |
|---|---|
| ROSS BEWLEY, *et al.*,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 22-cv-1589<br>Filed: September 8, 2026 |

*Reed W. Ripley* of Stewart, Wald, & Smith, LLC, Kansas City, MO, appeared for Plaintiffs. With him on the briefs were *Thomas S. Stewart* of Stewart, Wald, & Smith, LLC, Kansas City, MO, and *Steven M. Wald* and *Michael J. Smith* of Stewart, Wald, & Smith, LLC, St. Louis, MO.

*Kyle Lyons-Burke* of the United States Department of Justice, Energy and Natural Resources Division, Washington, D.C. appeared for Defendant. With him on the briefs were *Adam R.F. Gustafson* and *Taylor Gamm*, of the United States Department of Justice, Energy and Natural Resources Division, Washington, D.C.

**MEMORANDUM AND ORDER**

More than a century ago, the North Coast Railroad Authority's (NCRA's or railroad's) predecessors in interest purchased the rights to build and operate a railroad running through Mendocino, Trinity, and Humboldt counties in California. Throughout the twentieth century, railroad traffic declined, and in 1989, the State of California created the North Coast Railroad Authority to purchase railroads that would otherwise seek to abandon rail lines or discontinue service. North Coast Railroad Authority Act, § 1, 1989 Cal. Legis. Serv. 1085 (West). Eventually, trains stopped running on this line, and California decided to convert the rail right-of-way into a trail for pedestrians and bicyclists. On October 24, 2022, the Federal Surface Transportation Board (STB) issued a Notice of Interim Trail Use (NITU) and approved the State's plan to transform the

disused rail line into a trail, pursuant to Section 8(d) of the National Trails System Act (Trails Act), 16 U.S.C. § 1247(d).

Plaintiffs contend that, at the time of the NITU, they held fee title or reversionary interests in the land underneath the railroad right-of-way.[1] Plaintiffs allege the STB's trail agreement was a taking that deprived them of their interest in the land by operation of the Trails Act, for which they are allegedly entitled to just compensation pursuant to the Fifth Amendment.

Pending before the Court is the United States' (Defendant's) Partial Motion for Summary Judgment, which challenges the ability of certain Plaintiffs to prove that they owned a property interest at the time the rail line converted to recreational trail use. ECF No. 63 (Motion). The parties do not dispute that the NITU effected a taking of privately held reversionary interests in the right-of-way. Instead, the parties dispute whether the Plaintiffs hold reversionary interests.

For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Partial Motion for Summary Judgment (ECF No. 63).

## BACKGROUND

### I. Railroad Regulation and the Trails Act

In the nineteenth century, railroads were a new technology that provided "a fast and reliable way to transport people and property to those frontier lands" in the western United States. *Marvin M. Brandt Revocable Tr. v. United States*, 572 U.S. 93, 96 (2014). As railroads expanded their rights-of-way across the United States around the end of the nineteenth century, they acquired a variety of property interests through several types of transactions. *Preseault v. Interstate Com. Comm'n*, 494 U.S. 1, 16 (1990) (*Preseault I*). Generally, "rights-of-way were created by voluntary

[1] A right-of-way is a strip of land over which a railroad holds a legal interest to lay track and run trains. *See Right-of-Way*, *Black's Law Dictionary* (12th ed. 2024). A right-of-way is wider than the tracks and includes the entire parcel of land which the railroad can use.

conveyance or through condemnation proceedings." *Nat'l Wildlife Fed'n v. Interstate Com. Comm'n*, 850 F.2d 694, 703 (D.C. Cir. 1988). Railroads acquired, in different places, either fee simple absolute interests to rights-of-way (which include the entire full rights to use and possess the rights-of-way), or more limited property interests, which often "are specifically limited to railroad use and may revert to the original owner (or a successor in interest) if railroad use is discontinued." *Id.* Where a railroad acquired a more limited property interest, it often held an easement or a defeasible fee. *See id.*

During the second half of the twentieth century, the United States began to experience a sharp reduction in rail trackage. *Preseault I*, 494 U.S. at 5. In response, Congress enacted several laws, including the National Trails System Act (Trails Act), 16 U.S.C. §§ 1241–1251, to address the loss of trackage. *See id*. The Trails Act, as amended, provides for the preservation of "established railroad rights-of-way for future reactivation of rail service" by authorizing the interim use of such rights-of-way[2] as recreational and historical trails. 16 U.S.C. § 1247(d). This process is referred to as "railbanking." *Memmer v. United States*, 150 Fed. Cl. 706, 713 (2020). Section 1247(d) states in relevant part

> Consistent with the purposes of [the Trails Act], and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

---

[2] A right-of-way is the land on which "the railroad had obtained a property interest allowing it to operate its equipment over the land involved." *Preseault v. United States*, 100 F.3d 1525, 1529 (Fed. Cir. 1996) (*Preseault II*). A railroad can hold different property interests in a right-of-way, including fee simple or an easement. *See id.* at 1533.

16 U.S.C. § 1247(d).

Railroads and their "construction, acquisition, operation, abandonment, or discontinuance," including the railbanking process, fall under the exclusive jurisdiction of the Surface Transportation Board (STB or Board).[3] 49 U.S.C. § 10501(b). Its authority over railroads is exclusive, Congress has stated that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id.*

The railbanking process works as follows. First, a rail carrier proposing to abandon any part of its rail line must either file an application to abandon pursuant to 49 U.S.C. § 10903 or file a notice of exemption to abandon the line proceedings pursuant to 49 U.S.C. § 10502. *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004). Pursuant to Section 10903, a railroad company that initiates abandonment proceedings may only abandon its line "if the Board finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance." 49 U.S.C. § 10903(d). A rail carrier is exempt from Section 10903 if the carrier files a notice of exemption with the STB in accordance with Section 10502 and the accompanying regulations. Pursuant to 49 C.F.R. § 1152.50, a carrier petitioning for exemption must certify that "no local traffic has moved over the line for at least 2 years" and meet other specified criteria. 49 C.F.R. § 1152.50(a)-(b), (d)(1).

[3] Congress initially conferred exclusive and plenary authority on the Interstate Commerce Commission (ICC) to regulate most railroad lines in the United States in the Transportation Act of 1920. Pub. L. No. 66-152, § 402, 41 Stat. 476-78. In 1995, Congress enacted the ICC Termination Act, Pub. L. No. 104-88, 109 Stat. 803 (codified in scattered sections of the U.S.C., including 49 U.S.C. §§ 10101-16106), abolishing the ICC and establishing the STB. *Pejepscot Indus. Park, Inc. v. Maine. Cent. R. Co.*, 215 F.3d 195, 197 (1st Cir. 2000). Under 49 U.S.C. § 10501(b), Congress gave the STB exclusive jurisdiction over transportation service by rail carriers, including abandonment or discontinuance of services.

Upon receiving these certifications, the STB must publish a notice in the Federal Register within 20 days noting the submission. 49 C.F.R. § 1152.50(d)(2)-(3). The purpose of the Federal Register notice is to "alert the public that following any abandonment of rail service and salvage of the line, the line may be suitable for other public uses, including interim trail use." *Id.* § 1152.50(d)(3).

If the prospective trail sponsor assumes responsibility for the right-of-way's management and legal liability and the rail carrier agrees to negotiate an interim trail use agreement, the STB will issue a Certificate of Interim Trail Use (CITU) (if proceeding under 49 U.S.C. § 10903) or a Notice of Interim Trail Use or Abandonment (NITU) (if proceeding under 49 U.S.C. § 10502). *See* 49 C.F.R. § 1152.29. As is relevant in this case, a NITU acts to "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking . . . ; and permit the railroad to fully abandon the line if no agreement is reached within one year from the date on which the NITU is issued, subject to appropriate conditions . . . ." *Id.* at § 1152.29(d)(1). The Board will entertain requests to extend the 180-day deadline to enable further negotiations. 49 C.F.R. § 1152.29(d)(1)(ii).

If the negotiations lead to a trail use agreement between the railroad company and the interested third party, then abandonment of the railroad line is stayed for the duration of the agreement. 16 U.S.C. § 1247(d). If this occurs, the interim trail use agreement is, in fact, interim in that relevant corridors remain available for future rail use. *See Preseault I*, 494 U.S. at 8; *Preseault v. United States*, 100 F.3d 1525, 1552 (Fed. Cir. 1996) (en banc) (*Preseault II*). Importantly, the interim trail use agreement also prevents corridors from being deemed abandoned under state law during the period of interim trail use. *Preseault I*, 494 U.S. at 8. This preclusion of whatever state-law abandonment might otherwise occur gives rise to takings claims. *Id.* at 9.

## II. The NCRA Right-of-Way[4]

At issue in this case are reversionary property interests that Plaintiffs claim along 175 miles of the NCRA right-of-way, over which the NCRA and its predecessors ran trains in Mendocino, Trinity, and Humboldt Counties, California. ECF No. 28 (Third Amended Complaint or Complaint) ¶ 3. The State of California created the NCRA in 1989 to purchase railroads that would otherwise seek to abandon rail lines or discontinue service, as railroad traffic declined over the right-of-way.[5] North Coast Railroad Authority Act, § 1, 1989 Cal. Legis. Serv. 1085 (West).

Eventually, trains stopped running entirely on the right-of-way, and in 2018, the California legislature directed the state government to issue a report about the possibility of turning the rail line into a recreational use trail. *See* North Coast Railroad Authority Closure and Transition to Trails Act, § 2, 2018 Cal. Legis. Serv. 934 (West). The NCRA was subsequently renamed the Great Redwood Trail Agency (GRTA). Great Redwood Trail Act, § 10, 2021 Cal. Legis. Serv. 423 (West) (codified at Cal. Gov't Code § 93010(b)). The California legislature directed the newly-renamed GRTA to begin the regulatory process for railbanking and creating a trail on what was previously the rail line, through the federal STB's regulatory process. *Id.* § 19 (codified at Cal. Gov't Code § 93022(a)). When completed, the Great Redwood Trail is planned to become a "307-mile, world-class, multi-use rail-to-trail project connecting California's San Francisco and Humboldt Bays." Great Redwood Trail Agency, *The Great Redwood Trail*, https://thegreatredwoodtrail.org/great-redwood-trail/ (last accessed July 26, 2026).

---

[4] Unless otherwise noted, the facts set forth in this section are undisputed.

[5] The NCRA was a state-owned successor to the Northwestern Pacific Railroad. Some of the deeds at issue in this case conveyed land to the Eel River and Eureka Railroad, which was itself a predecessor of the Northwestern Pacific. ECF No. 64-28 at 21, PLT000793 (referencing conveyance to "the Eel River and Eureka Railroad Company (now Northwestern Pacific Railroad Company).").

On May 14, 2021, GRTA filed a notice of exemption with the STB pursuant to 49 U.S.C. § 10502, which began the regulatory process to turn the rail line right-of-way into a trail. STB, *Decision and Notice of Interim Trail Use or Abandonment*, STB Docket No. AB 1305X (Oct. 24, 2022). The notice of exemption sought approval to convert 175.84 miles of the NCRA right-of-way into a trail. *Id.* The STB ruled upon the notice of exemption and issued the NITU on October 24, 2022. *Id.* Shortly thereafter, GRTA confirmed that it would begin interim trail use and railbanking. *See* GRTA, *Notice of Consummation of Railbanking*, STB Docket No. AB 1305X (Oct. 26, 2022). Plaintiffs contend that these filings constituted a taking of any reversionary interests in the rail right-of-way. Compl. ¶ 11.

Plaintiffs claim that they owned land adjacent to the rail line at the time of the alleged taking and claim fee ownership or reversionary interests to the land underneath the right-of-way. Compl. ¶¶ 12–108. Plaintiffs further claim that the STB's trail agreement was a taking that deprived them of their interest in the land by operation of the Trails Act, 16 U.S.C. § 1247(d), for which they are allegedly entitled to just compensation pursuant to the Fifth Amendment. *Id.* ¶ 112.

## PROCEDURAL HISTORY

On October 25, 2022, Plaintiffs filed their initial complaint. Subsequently, the parties engaged in several rounds of settlement discussions, and on July 1, 2024, the parties stipulated to dismissal of several claims. *See* ECF No. 27 at 1. On July 3, 2024, Plaintiffs filed their Third Amended Complaint, which is the current operative Complaint. *See* ECF No. 28 (Third Amended Complaint or Compl.). In their Third Amended Complaint, 106 Plaintiffs advance claims based on 177 parcels of land. ECF No. 66 (Response) at 7.[6] Defendant answered the Third Amended

[6] Throughout this Memorandum and Order, page numbers for briefs and motions filed in the Court will reference the ECF-assigned page number, which does not always correspond to pagination within the document.

Complaint on August 13, 2024, and denied its liability toward every Plaintiff. *See* ECF No. 29 ¶¶ 12–108. On November 5, 2024, the Court set a schedule for discovery, which included expert and fact discovery for the valuation of representative parcels. *See* ECF No. 34 at 1.

On May 28, 2025, Defendant filed the present Partial Motion for Summary Judgment. *See* Mot. The Motion seeks dismissal of claims related to 117 parcels, involving 63 Plaintiffs. *Id.* at 7. Defendant grouped similar claims together into Groups labeled A through H. *Id.* at 7–8. Plaintiffs filed their Response opposing the Motion on June 27, 2025, and Defendant lodged its Reply in support of its Motion on July 28, 2025. *See* ECF No. 66 (Resp.); ECF No. 67 (Reply). The Court held oral argument on the Motion on December 17, 2025. Minute Entry dated Dec. 17, 2025.

During oral argument, Plaintiffs requested more discovery, and on January 6, 2026, the Court granted Plaintiffs limited, additional discovery. ECF No. 78 (Discovery Order). Specifically, the Discovery Order permitted Plaintiffs to conduct discovery into chains of title for certain parcels, for which Plaintiffs had previously relied upon the centerline presumption to establish their interests in the right-of-way. *Id.* at 1–2. In doing so, the Court exercised its discretion to ensure that all parties had a sufficient opportunity to complete title-related discovery. *See id.* at 1. The Court also stayed the present Motion in the interim. *Id.* at 3.

On January 9, 2026, Plaintiffs filed a Motion for Relief under Rule 60(b)(6). *See* ECF No. 79 (Rule 60 Motion). Plaintiffs sought three forms of relief from the Discovery Order: (1) an extension of time to gather chains of title for the non-representative parcels; (2) bifurcation of proceedings on representative and non-representative parcels and modification of the existing Discovery Order to apply only to the representative parcels; and (3) issuance of a decision on Defendant's Partial Motion for Summary Judgment (ECF No. 63), including on the centerline

presumption, before Plaintiffs gathered chains of title for non-representative parcels. Rule 60 Mot. at 2.

On January 22, 2026, Defendant filed its Response in opposition (ECF No. 81) and on February 5, 2026, the Court conducted two hearings on the record concerning Plaintiffs' Rule 60 Motion. *See* Minute Entries dated Feb. 5, 2026. During the afternoon hearing, the Court issued several rulings on the record. *See* ECF No. 84 (Transcript of Feb. 5, 2026 hearings) at 49:7–52:9. The Court "den[ied] in part, without prejudice, Defendant's Motion for Summary Judgment, ECF Number 63, as to only nonrepresentative parcels in Groups C through H." *Id.* at 49:7–10. The Court extended "the discovery period . . . as to title issues related to nonrepresentative parcels in Groups C through H." *Id.* at 49:20–23. Finally, the Court set a deadline for chain of title discovery for representative parcels in Groups C through H. *Id.* at 52:5–6. Plaintiffs withdrew their Rule 60 Motion. *Id.* at 52:24. Consistent with the Court's February 5 rulings on the record, on February 6, 2025, the Court issued an order resetting some discovery schedules and ordering further summary judgment briefing. ECF No. 82. The Order reflected that the Court had denied in part, without prejudice, Defendant's Motion (ECF No. 63) "only as to the arguments advanced in pages 22 through 36 of its Summary Judgment Motion with respect to the non-representative parcels identified in Groups C through H." *Id.* at 1–2. The arguments for Groups C through H challenged Plaintiffs' ability to prove their property interests in the right-of-way with California's centerline presumption. Mot. at 22. The Court ordered the parties to propose schedules to complete discovery into chains of title, which Plaintiffs could use to establish property interests if the centerline presumption did not apply, and file summary judgment motions concerning chains of title and the application of California's centerline presumption. ECF No. 82 at 2–3.

Separately, the parties have filed cross-motions for summary judgment concerning the impact of the chains of title for representative parcels and renewing their arguments about the application of the centerline presumption to Plaintiffs' parcels. ECF Nos. 91, 92. These cross-motions for summary judgment address chain of title evidence that the Court allowed Plaintiffs to gather and brief separately. *See* ECF No. 86 at 1. For efficiency, the Court will rule upon those motions via a separately-issued opinion.

## LEGAL STANDARD

### I. Summary Judgment

The Court may grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the United States Court of Federal Claims (Rule(s)) 56(a). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts are material if they "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party seeking to establish a genuine dispute of material fact must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

While "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment may still be granted when the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly probative." *Anderson,* 477 U.S. at

249–50 (internal citations omitted). The Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita, Elec. Indus. Co., Ltd. v. United States*, 475 U.S. 574, 587 (1986).

## II. Rails-to-Trails Takings

The Fifth Amendment requires the federal government to pay just compensation when it "*requires* the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992) (emphasis in original); *see also Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831 (1987) (observing that the appropriation of a public easement across a private landowner's premises "constitute[s] the taking of a property interest"); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982). "Whether a [Fifth Amendment] taking has occurred is a question of law based on factual underpinnings." *Caquelin v. United States*, 959 F.3d 1360, 1366 (Fed. Cir. 2020). "[T]he property rights protected by the Takings Clause are creatures of state law." *Cedar Point v. Hassid*, 594 U.S. 139, 155 (2021); *see, e.g.*, *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1353−55 (Fed. Cir. 2013) (analyzing the scope of appellant's property interest under California law). Said differently, "existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." *Fishermen's Finest*, *Inc. v. United States*, 59 F.4th 1269, 1275 (Fed. Cir. 2023) (quoting *Acceptance Ins. Cos.*, *Inc. v. United States*, 583 F.3d 849, 857 (Fed. Cir. 2009)); *Blevins v. United States*, 158 Fed. Cl. 295, 307 (2022).

The STB's issuance of a NITU stays the abandonment of the covered rail right-of-way. 16 U.S.C. § 1247(d). If this occurs, the NITU is, in fact, interim in that relevant corridors remain available for future rail use. *See Preseault I*, 494 U.S. at 8; *Preseault II*, 100 F.3d at 1552.

Importantly, the interim trail use agreement also prevents corridors from being deemed abandoned under state law during the period of interim trail use. *Preseault I*, 494 U.S. at 8; *Blevins*, 158 Fed. Cl. at 300. As noted, it is this preclusion of state-law abandonment that gives rise to takings claims. *Preseault I*, 494 U.S. at 9. A plaintiff is entitled to compensation after the STB's issuance of a NITU if the plaintiff can demonstrate a "state law reversionary interest[]" in the land subject to the railroad right-of-way that is "effectively eliminated in connection with [the] conversion of [the] railroad right-of-way to trail use." *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004) (citing *Preseault II*, 100 F.3d at 1543); *see also Rogers v. United States*, 814 F.3d 1299, 1303 (Fed. Cir. 2015) ("The government must provide just compensation under the Fifth Amendment Takings Clause if the issuance of a NITU results in the taking of private property."); *Blevins*, 158 Fed. Cl. at 304.

**DISCUSSION**

In this Memorandum and Order, the Court rules upon portions of Defendant's Partial Motion for Summary Judgment seeking to dismiss claims brought by 37 Plaintiffs based on 73 parcels.

As noted, the parties do not dispute that the NITU effected a taking of any privately held reversionary interests in the right-of-way. Instead, the parties dispute Plaintiffs' ability to demonstrate that they hold a property interest in the right-of-way, which was taken via issuance of the NITU. *See Preseault II*, 100 F.3d at 1533 (plaintiff must own property interest in trail to establish taking). The Court must apply California law to determine the rights that Plaintiffs held to the right-of-way because the right-of-way is situated in California. *See ATS Ford Drive Inv., LLC v. United States*, 136 F.4th 1066, 1070 (Fed. Cir. 2025); *Chicago Coating Co. v. United States*,

892 F.3d 1164, 1170 (Fed. Cir. 2018) ("[W]e must apply the law of the state where the property interest arises.").

For ease of organization, Defendant organized the challenged claims into several groups. To begin, Defendant groups various parcels into "A" and "B" Groups. For Groups A and B, Defendant challenges Plaintiff's property interest in the right-of-way because, Defendant argues, the NCRA held the land in fee, rather than an easement. Defendant argues that because the NCRA's predecessors purchased land in the right-of-way in fee, Plaintiffs do not hold any reversionary interest in the right-of-way. Mot. at 14–15. Key evidence for these arguments comes from "source deeds," the deeds by which Plaintiffs' predecessors-in-interest granted an interest to the right-of-way to the NCRA's predecessors-in-interest. This Memorandum and Order will evaluate what interest each source deed in Groups A and B granted to the NCRA's predecessors-in-interest: fee simple or an easement. Disposition of this issue requires the resolution of several sub-issues. *First*, the Court will address whether the reversionary interests have expired for Plaintiffs whose predecessors granted the railroad property in fee simple subject to condition subsequent, so that the NCRA now holds the right-of-way in fee simple absolute. *Second*, the Court will evaluate the proper standard by which to determine the property interest that a deed conveys under California law. *Third*, the Court will apply that standard on a whistle-stop tour of source deeds and determine whether each source deed conveyed an easement or land in fee. *Fourth*, the Court will assess Plaintiffs' argument that even if they hold no interest in the right-of-way, the burden imposed upon adjoining properties by a pedestrian and bicycle trail effects a taking on adjoining properties.

After analyzing the source deeds, the Court will turn to the additional issues raised in the Motion. Defendant argues that a handful of ungrouped Plaintiffs are ineligible to recover. Two

Plaintiffs (the First Street Plaintiffs) own parcels along a public road, for which Defendant argues an existing easement must already encompass trail use. Mot. at 36–38. One Plaintiff, Humboldt Bay Harbor, Recreation, and Conservation District (Humboldt Bay District), is a California public corporation, which, Defendant argues, is prevented from recovery as a matter of law. *Id.* at 38–40.

## I. Groups A and B: Does the Railway Own the Right-of-Way in Fee Simple?

The disputes for Groups A and B concern the nature of the interest that NCRA holds in the right-of-way through the source deeds. The source deeds can determine whether NCRA holds fee simple to the right-of-way because the NCRA's predecessors-in-interest[7] acquired the right-of-way with the source deeds. If the railway owns the right-of-way in fee simple absolute, then no other party can hold a reversionary interest. *See Pressly v. United States*, 174 F.4th 1368, 1373 (Fed. Cir. 2026) ("If . . . the railroad company holds fee simple title to the land over which the railroad operated, no taking can occur because no third party holds underlying fee simple title that would otherwise become unencumbered upon the railroad's abandonment of operations.").

Defendant argues that the NCRA holds fee title to the right-of-way in sections claimed by the Group A and B Plaintiffs, rather than an easement, so that Group A and B plaintiffs do not hold

[7] The NCRA succeeded the Northwestern Pacific Railroad when the latter faced bankruptcy. *See* Cal. Gov't Code § 93001 (1989). The Northwestern Pacific Railroad itself succeeded several earlier railroads, which established the right-of-way and are named as the grantee in most source deeds at issue in this Memorandum and Opinion. *See, e.g.,* ECF No. 64-69 at 2, PLT000748 (granting interest to Eel River and Eureka Railroad Company); ECF No. 64-80 at 2, PLT000551 (granting interest to San Francisco and Northwestern Railway Company); ECF No. 64-78 at 2, PLT001167 (describing right-of-way created by Eureka and Klamath River Railroad Company); *see also* ECF No. 64-28 at 21, PLT000793 (referencing historic conveyance to "the Eel River and Eureka Railroad Company (now Northwestern Pacific Railroad Company)").

any reversionary interest.[8] Mot. at 14–15. Defendant argues that the language used in each source deed at issue in this Motion—the deed through which the NCRA's predecessors obtained the right-of-way—indicates a transfer in fee simple, rather than the sale of an easement. *Id.* at 15.

Plaintiffs disagree and claim that the source deeds instead convey an estate besides fee simple absolute. First, Plaintiffs argue that most of the deeds conveyed only an easement to the railroad, so that Plaintiffs hold a reversionary interest. Resp. at 9. Second, Plaintiffs argue that even if deeds convey fee simple, they actually convey fee simple subject to condition subsequent, so that Plaintiffs still hold a reversionary interest. *Id.* at 9–10. Finally, for some deeds in Groups A and B, Plaintiffs argue that even if Plaintiffs have no interest in the right-of-way, the increased burdens of trail use will constitute a taking upon the parcels that Plaintiffs own next to the right-of-way. *Id.* at 29.

Defendant additionally argues that to the extent the source deeds convey land in fee simple subject to condition subsequent, Plaintiffs have failed to preserve their interests as required by California law, so that the NCRA now holds the land in fee simple absolute. *See* Reply at 14.

In this section, the Court will first address the issue of the preservation of reversionary interests when a deed conveys fee simple subject to condition subsequent. The Court finds that Plaintiffs have failed to protect their reversionary interests, as required by California statute, for land that that was transferred as in fee simple subject to condition subsequent. For these claims, when Plaintiffs failed to preserve their reversionary interests, the NCRA's fee simple subject to

[8] This Memorandum and Order describes the property interest that follows the termination of an easement as a "reversionary interest." *See Preseault II*, 100 F.3d at 1543. Historically, this interest would have been described as a "fee simple burdened by the easement," rather than a reversionary interest because the grantor of an easement never relinquishes fee ownership. *Id.* at 1533. However, the modern trend is to use the term "reversion." *Id.* The "reversion" following an easement is not subject to the recording issue that affects sections of the right-of-way which NCRA held in fee simple subject to condition subsequent. *See infra* Discussion I.A.

condition subsequent converted to fee simple absolute by operation of law. Second, the Court will determine how to interpret whether a deed conveyed easement or fee under California law. Third, the Court will assess each source deed in Groups A and B to determine whether the deed conveyed land in fee or easement.[9] The Court finds that ten source deeds conveyed land in fee and that disputed issues of material fact preclude summary judgment with respect to three source deeds. The Court thus finds that the railroad held fee simple for eighteen of the contemporary parcels at issue in this case. Fourth and finally, the Court will assess whether the burdens of increased trail use constitute a taking under the Fifth Amendment.

### A. <u>Preservation of Reversionary Rights</u>

Even where the source deeds granted the railroad land in the right-of-way in fee simple subject to condition subsequent, Defendant argues that Plaintiffs no longer hold a reversionary interest because they have failed to preserve their powers of termination. Mot. at 15 n.6. The power of termination expires in California if holders do not record their interests and, every 30 years thereafter, file "a notice of intent to preserve the power of termination." Cal. Civ. Code § 885.030(a)(3). Plaintiffs do not dispute that neither they nor their predecessors-in-interest filed such notices, but instead dispute the requirement's applicability. Resp. at 26 ("Plaintiffs do not dispute that there is no evidence that either they or their predecessors-in-title filed a 'notice of

---

[9] This Memorandum and Order evaluates the source deeds individually, rather than considering Groups A and B as a whole. Defendant sorted the challenged source deeds into Groups A and B. Mot. at 15. Plaintiffs disagree about which of the deeds should be analyzed together. *See* ECF No. 66 (Response or Resp.) at 9–10. Due to this dispute about categorization, this Memorandum and Order considers the source deeds individually for purposes of resolving the present Motion.

Defendant challenges thirteen source deeds in Groups A and B. Mot. at 18 n.9, 19 n.11. Plaintiffs argue that two other deeds not mentioned by Defendant are relevant to resolve Plaintiffs' property interest in the right-of-way, so this section of the Discussion will analyze fifteen source deeds. *See* Resp. at 13.

intent' such that the power of termination would be preserved pursuant to the MRTA."). Plaintiffs argue that federal preemption blocks application of the California statute or, alternatively, that the Plaintiffs have otherwise protected their rights. *Id.* at 26–28. For the reasons stated below, Plaintiffs' arguments fail. None of the Plaintiffs holding reversionary interests to land that the railroad held in fee simple subject to condition subsequent have preserved their rights, so the railroad holds fee simple absolute to all parcels in which Plaintiffs' predecessors-in-interest originally granted fee simple subject to condition subsequent.

*1. Federal Preemption of State Reversionary Rights*

First, Plaintiffs argue that federal railroad regulation preempts California law requiring Plaintiffs to record their property interests. Resp. at 26 ("[F]iled notice is irrelevant in the context of a federally regulated railroad corridor because federal jurisdiction completely preempts state law that would normally determine such notices' import."). Federal law preempts state regulation and grants the STB (and its predecessor, the Interstate Commerce Commission (ICC)) exclusive jurisdiction over the "regulation of rail transportation," including the abandonment or discontinuance of rail lines. 49 U.S.C. § 10501(b); *see also Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981) ("The exclusive and plenary nature of the [Interstate Commerce] Commission's authority to rule on carriers' decisions to abandon lines is critical to the congressional scheme, which contemplates comprehensive administrative regulation of interstate commerce."). Plaintiffs argue that they should be excused from California's filing requirement because "neither Plaintiffs nor their predecessors-in-title could properly trigger their reversionary interests without running afoul of federal preemption." Resp. at 27.

As Defendant correctly argues, federal preemption did not reach the underlying property interests that Plaintiffs held to the right-of-way and did not prevent Plaintiffs from protecting their

reversionary interests. *See* Reply at 14–15. Federal law would only preempt state-law property interests if those interests affected the "regulation of rail transportation." 49 U.S.C. § 10501(b). The STB's jurisdiction does not preempt "the continued application of laws having a more remote or incidental effect on rail transportation." *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001); *see Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 410–11 & n.2 (5th Cir. 2010) (holding that state-law railroad crossing disputes are only preempted if enforcement would affect management or governance of rail transportation); *Adrian & Blissfield R.R. Co. v. Vill. Of Blissfield*, 550 F.3d 533, 539–41 (6th Cir. 2008) (holding state law only preempted if it prevents railroad operations).

Here, neither party cites precedent on the particular issue of whether the filing of a notice of reversionary interests has more than an incidental effect upon rail transportation. *See* Mot.; Resp.; Reply. However, there is no evidence in the record that the filing of a notice about a reversionary interest would impose more than an incidental effect upon rail transportation. *See Fla. E. Coast Ry.*, 266 F.3d at 1331. To the contrary, California's notice requirement does not "seek to regulate the operations of rail transportation," so it is not preempted. *See Franks Inv. Co.*, 593 F.3d at 413. The notice filing requirement only imposes a burden upon the holder of the reversionary interest; the railroad, as the holder of the fee simple subject to condition subsequent, does not incur any burden at all under the filing requirement. *See* Cal. Civ. Code § 885.030. As such, federal preemption did not prevent Plaintiffs here from protecting their reversionary interests.

*2. No Evidence of Consistent Possession by Plaintiffs*

Second, Plaintiffs argue that their consistent, public possession of the corridor preserved their rights. Resp. at 27. Reversionary interest holders need not file notices to prevent the

expiration of their interests if they possess the property at issue and "possession would have been revealed by reasonable inspection or inquiry." Cal. Civ. Code § 880.240(a). Plaintiffs argue that they and their predecessors-in-interest have "demonstrably possessed the corridor" with regard to at least certain parcels because the corridor has been unused for rail service. Resp. at 27. However, Plaintiffs do not present any evidence of this possession; Plaintiffs did not respond to the Motion with affidavits or other evidence that could create a genuine dispute of material fact about whether Plaintiffs have "demonstrably possessed the corridor." *See id.* Attorney argument about consistent possession is not sufficient evidence to defeat summary judgment. *See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("There must be sufficient substance, other than attorney argument, to show that the issue requires trial."); *FastShip, LLC v. United States*, 892 F.3d 1298, 1309 (Fed. Cir. 2018); *see also BHL Props., LLC v. United States*, 135 Fed. Cl. 222, 229 (2017) (granting summary judgment against plaintiff who failed to present any evidence showing ownership of land in rail right-of-way). Due to this failure to "set out specific facts showing a genuine issue for trial," Plaintiffs have not met the summary judgment burden to demonstrate a genuine dispute of material fact regarding the preservation of interests through occupation of the rail corridor. *GBA Assocs. Ltd. P'ship v. United States*, 171 Fed. Cl. 93, 99–100 (2024).

*3. The Termination Clauses are Not Equitable Servitudes*

Third, Plaintiffs argue that they "nonetheless hold equitable rights, and specifically, equitable servitudes, associated with the corridor that would be enforceable via injunction but for the government's imposition of recreational trail use." Resp. at 28. If a power of termination that expired for lack of recording "is also an equitable servitude alternatively enforceable by injunction," then the equitable servitude can still be enforced by injunction:

> (b) Expiration of a power of termination pursuant to this chapter terminates the restriction to which the fee simple estate is subject and makes the restriction unenforceable by any other means, including, but not limited to, injunction and damages.
>
> (c) However, subdivision (b) does not apply to a restriction for which a power of termination has expired under this chapter if the restriction is also an equitable servitude alternatively enforceable by injunction. Such an equitable servitude shall **remain enforceable by injunction** and any other available remedies, but **shall not be enforceable by a power of termination**. This subdivision does not constitute a change in, but is declaratory of, the existing law. However, nothing in this subdivision shall be construed to make enforceable any restriction prohibited or made unenforceable by other provisions of law, including Section 53.

Cal. Civ. Code § 885.060(b), (c) (emphasis added). Plaintiffs argue that the deeds conveying fee simple subject to condition subsequent "clearly create a covenant for the constructing railroad, and its successors-in-interest, to refrain from using the corridor for anything other than railroad purposes." Resp. at 28–29.

Plaintiffs cite a case in which a right of termination that could be triggered by two conditions subsequent expired under California law for lack of recording, but the conditions subsequent were nevertheless interpreted as equitable servitudes that remained enforceable through injunctions. *See id.* at 28 (citing *S. Cal. Sch. of Theology v. Claremont Graduate Univ.*, 274 Cal. Rptr. 3d 180, 185 (Cal. Ct. App. 2021)). There, the termination conditions required (1) that the property had to be used for educational purposes and (2) that the grantor held a right to re-purchase the property if the grantee ceased operation. *Id.* at 183. Both clauses could be construed as equitable servitudes because they "show[ed] an agreement to do or refrain from doing something with respect to use of the land." *Id.* at 186 (quoting *Comm. to Save the Beverly Highlands Homes Assn. v. Beverly Highlands Homes Ass'n*, 112 Cal. Rptr. 2d 732, 748 (Cal. Ct. App. 2001)). Importantly, the conditions could be enforced via injunctions independently of the powers of termination. *Id.* at 183. Here, Plaintiffs argue that the termination provisions in the

relevant deeds before the Court included similar provisions that could be interpreted as equitable servitudes. Resp. at 28. Defendant argues that the termination provisions in the deeds are not equitable servitudes. Reply at 16.

A comparison between the deeds at issue here and those that contained equitable servitudes in *Southern California School of Theology* demonstrates that the deeds at issue here do not contain equitable servitudes. In *Southern California School of Theology*, the conditions subsequent granted enforceable rights against the grantee's use of the land separate from the termination clauses. 274 Cal. Rptr. 3d at 185. Here, in contrast, the deeds simply provided the condition for the termination clause and did not include any other method for enforcement. *See, e.g.*, ECF No. 64-80 at 3, PLT000552 (Pacific Lumber 82-410 reversionary clause). There is no indication that the conditions here could be enforced through injunctions. *See id.* In addition, Plaintiff misreads the equitable servitude exception in the California statute. *See* Resp. at 28. Even if the restrictions at issue here could be interpreted as equitable servitudes, they still would "not be enforceable by a power of termination." Cal. Civ. Code § 885.060(c). Here, Plaintiff seeks to invoke the "powers of termination," rather than any sort of injunctive relief that would stop the infringing use of the right-of-way. *See* Resp. at 27. In contrast, in *Southern California School of Theology*, the holder of the reversionary interest did not solely seek to invoke the power of termination, but rather sought an injunction to use the right of first refusal that was written into the deed. 274 Cal. Rptr. 3d at 184. Thus, the conditions subsequent in the source deeds are not equitable servitudes and, even if they were, could not be invoked as powers of termination, as Plaintiffs seek to do here.

All of Plaintiff's arguments against the application of California's notice requirement to preserve powers of termination fail. As stated above, Plaintiffs have admitted that they did not file the required notices to preserve the powers of termination. Resp. at 25–26. Thus, the powers of

termination have expired, as if the landowners provided "a quitclaim of the power to the owner of the fee simple estate," providing the railroad (as owner of the fee simple estate) with the current and future interests in the land. Cal. Civ. Code § 885.060(a). For all parcels at issue in this Motion for which the railroad or its predecessors purchased fee simple subject to condition subsequent in a source deed, the railroad effectively now holds fee simple absolute, and Plaintiffs hold no reversionary interest.[10]

**B. <u>Railway Deed Interpretation in California Law</u>**

The parties dispute the legal framework according to which this Court should determine whether each source deed granted fee simple or an easement. The issue is whether interpretation of a deed to a railroad for a right-of-way relies upon standard rules of deed interpretation, or whether California law puts a thumb on the scale toward interpreting such deeds as easements.

Defendant contends that the question of whether a deed to a railway conveys an easement or fee simple should be evaluated according to the seven factors presented in *Machado*[11]:

> [C]ertain indicia of such deeds have proven useful to courts engaged in this analysis. Our review of reported decisions in this area reveals that those indicia include: 1) whether the reference to a "right of way" is merely descriptive or acts to limit the grant; 2) the location of the limiting language; 3) whether the deed contains references to the interest conveyed as a fee or easement; 4) whether the conveyance includes words of inheritance such as "tenements," "hereditaments," or which describe interests in real property which are normally associated with a fee; 5) whether the interest is described as running "over and across" the land of the grantor; 6) the reservation of rights to remove minerals or to cultivate the property in question; and 7) the amount of consideration paid. Of course, in many situations, the court will find aspects indicative of both a fee and an easement and must determine which construction, on balance, better [] effectuates the intent of the parties to the instrument.

[10] The parcels for which Plaintiffs thus hold no reversionary interest because their rights of termination expired are listed *infra* at nn.13, 18, 22, 23, 28.

[11] The Court of Federal Claims has previously cited *Machado* as a guide to determining whether a railway deed conveys fee or easement under California law. *See Sutton v. United States*, 107 Fed. Cl. 436, 440 (2012).

*Machado v. So. Pac. Transp. Co.*, 284 Cal. Rptr. 560, 563 (Cal. Ct. App. 1991). Defendant also argues that references to "land" in a deed and references to "tenements, hereditaments and appurtenances thereunto" indicate the intent to transfer a fee interest. Mot. at 16 (first quoting *City of Manhattan Beach v. Super. Ct.*, 914 P.2d 160, 168 (1996), then quoting *Severns v. Union Pac. R.R. Co.*, 125 Cal. Rptr. 2d 100, 105 (Cal. Ct. App. 2002)).

Plaintiffs counter that there is a presumption in favor of deeds to railroads being construed as easements, which Defendant attempts to steam past, and that a smaller set of factors should determine what interest a deed conveys. Resp. at 10–12. Plaintiffs argue that the presumption in favor of an easement arises from language in *Highland Realty*. *Id.* at 11; *see Highland Realty Co. v. City of San Rafael*, 298 P.2d 15, 20 (1956) ("[T]he general rule is that in construing contracts and deeds for railroad rights of way such deeds are usually construed as giving a mere right of way, although the terms of the deed would otherwise be apt to canvey [*sic*] a fee." (cleaned up)). According to Plaintiffs, the rule drawn from this decision is that if the deed "identifies the purpose of the grant to be a right of way for a railroad," the deed conveys an easement. Resp. at 11; *see* ECF No. 77 (Oral Argument transcript or OA Tr.) at 40:8–12 ("If you go back to *Highland Realty*, that was the first case that described it in that way, where you look at these railroad easements and if it conveys a right of way for railroad purposes, we generally construe those as easements."). Plaintiffs also identify three "general rules of deed interpretation" that apply to the Group A and B claims: the presence of a statement of purpose in a deed suggests an easement, the phrase "over and across" suggests an easement, and the use of nominal consideration suggests an easement. Resp. at 12 (citing *City of Manhattan Beach*, 914 P.2d at 167–68, then *Machado*, 284 Cal. Rptr. at 568–69, then *City of Manhattan Beach*, 914 P.2d at 168–69).

To resolve the interpretation of California law here, the Court begins with California's principle that, as with contracts, the "primary object" of deed interpretation "is to ascertain and carry out the intention of the parties." *City of Manhattan Beach*, 914 P.2d at 164. *Highland Realty* does not create the "general rule" that Plaintiffs seek to invoke because the California Supreme Court limited that decision's applicability in *City of Manhattan Beach*, where, as here, the railroad may have purchased *either* an easement or a fee interest. *See id.* at 165 n.7 (distinguishing *Highland Realty* because statute there limited railroad to purchasing easement). Rather than adopt the general rule from *Highland Realty*, the California Supreme Court in *City of Manhattan Beach* favorably cited a contrary proposition from *Machado*. *See id.* at 167 (citing *Machado*, 284 Cal. Rptr. at 565); *see also Machado*, 284 Cal. Rptr. at 565 ("the cardinal rule in the interpretation of deeds is to effectuate the original intent of the grantor and grantee, and there is no preference for construing a grant to a railroad as an easement instead of a fee"). A California Court of Appeal has held that *City of Manhattan Beach* rejected the application of any "general rule" from *Highland Realty* and limited the latter case in favor of the rules proposed in *Machado*. *See Alameda Belt Line v. City of Alameda*, No. A118596, 2009 WL 1744543, at *12 (Cal. Ct. App. June 22, 2009) ("A full reading of *Manhattan Beach* demonstrates that the Supreme Court has not endorsed the quoted 'general rule.'").

In addition, *City of Manhattan Beach* expressly limited the broad rule that Plaintiffs seek. *See City of Manhattan Beach*, 914 P.2d at 168. Whereas *Highland Realty* said that a "general rule" looked only at whether the deed mentioned a right-of-way, *City of Manhattan Beach* clarified that courts must look at the purpose of the reference to a right-of-way: "if prescriptive and thus restricted, a statement of purpose evidences an easement; if merely descriptive and thus unrestricted, the grant is considered not inconsistent with a fee." *Id.* *City of Manhattan Beach*

also built upon *Machado* to explain when language is prescriptive, rather than descriptive; prescriptive language that limits a deed "generally prevails when there is some qualification such as 'only for the construction, etc.'" *Id.* As such, deed interpretation under California law must proceed according to the language of the deed itself, without the "bright-line rules of construction" sought by Plaintiff. *Id.* at 167.

At oral argument, Plaintiffs highlighted several cases besides *Highland Realty* for the proposition that if a deed "conveys a right of way for railroad purposes, we generally construe those as easements." OA Tr. at 40:10–12 (citing *Moakley v. Los Angeles Pac. Ry. Co.*, 34 P.2d 218 (Cal. Dist. Ct. App. 1934); *City of Glendora v. Faus*, 307 P.2d 976 (Cal. Dist. Ct. App. 1957); *Johnson v. Ocean Shore R.R. Co.*, 94 Cal. Rptr. 68 (Cal. Ct. App. 1971); *Concord & Bay Point Land Co. v. City of Concord*, 280 Cal. Rptr. 623 (Cal. Ct. App. 1991)). However, in each of these cases, courts looked to the prescriptive or descriptive nature of the deed's description of the property as a right-of-way, as *City of Manhattan Beach* would later instruct, or relied upon traditional rules of deed interpretation. *See City of Manhattan Beach*, 914 P.2d at 168. *Moakley* relied upon standard rules of deed interpretation, as a right-of-way "over and along" a parcel of land signified an easement. *Moakley*, 34 P.2d at 219. *City of Glendora* relied upon the prescriptive versus descriptive nature of the grant, as a grant of a right-of-way "for railroad purposes **only**" conferred an easement. *City of Glendora*, 307 P.2d at 980 (emphasis added). Similarly, the deed at issue in *Johnson* contained the same "for railroad purposes **Only**" language, and was held to transfer an easement because the description as a right-of-way was prescriptive, not descriptive. *Johnson*, 94 Cal. Rptr. at 71 (emphasis added). Finally, the *Concord & Bay Point* decision relied upon an interpretation of the language of the deed, and held that traditional fee transfer language with a descriptive reference to a right-of-way transferred fee, not an easement. *Concord & Bay*

*Point*, 280 Cal. Rptr. at 625–26. These cases, proffered by Plaintiffs, illustrate that California courts analyze deeds to railroads for rights-of-way according to the standard rules of deed interpretation, and that the description of an interest as a right-of-way tips the scales in favor of an easement grant only if that reference is prescriptive. This is the rule offered by *City of Manhattan Beach* and *Machado*, and the Court will thus follow those cases, rather than the single line in *Highland Realty* that Plaintiffs prefer. *See City of Manhattan Beach*, 914 P.2d at 168.

Beyond the applicability of *Highland Realty*, the parties are closer to agreement about the appropriate factors for determining fee or easement conveyance. The parties agree that at least some of the *Machado* factors are relevant: Plaintiff's three interpretive rules match *Machado* factors two, five, and seven, which look at "the location of the limiting language," "whether the interest is described as running 'over and across' the land of the grantor," and "the amount of consideration paid." *Machado*, 284 Cal. Rptr. at 563; *see* Resp. at 12. Plaintiff has not argued that the other *Machado* factors would be inappropriate to apply. *See* Resp. at 12. The use of a balancing test, such as *Machado*, is appropriate here because it matches the California Supreme Court's guidance that "no bright-line rules of construction are available to us" when interpreting century-old grants to railroads, but that the entire document must be analyzed to discern the parties' intent. *See City of Manhattan Beach*, 914 P.2d at 167. Several other California courts have relied upon *Machado* for the factors involved in deed interpretation. *See Severns*, 125 Cal. Rptr. 2d at 105; *Otay Land Co., LLC v. UE Ltd. LLC*, No. D076415, 2021 WL 4889871, at *10 (Cal. Ct. App. Oct. 21, 2021). As such, the *Machado* factors provide the correct method of deed interpretation under California law, and *City of Manhattan Beach* has built upon those factors with its interpretation of when purpose language in a deed is prescriptive.

Some of the deeds at issue in this Motion that conveyed land in fee, rather than an easement, may have still retained a reversionary interest for the grantor. The parties agree that some of the deeds in this case might convey defeasible fees. *See* Mot. at 15 n.6; Resp. at 9. Plaintiffs specifically argue that the defeasible fees are fees simple subject to condition subsequent.[12] Resp. at 9. Under this type of fee, the grantee "is in the same position as the owner of a fee simple absolute, as long as the condition is not broken, or, if the condition is broken, as long as the power of termination is not exercised." 4 Miller & Starr, *Cal. Real Est.* § 12:6 (4th ed. 2026); *see Concord & Bay Point*, 280 Cal. Rptr. at 626. If the condition fails and the power of termination is exercised, the grantee's interest in the land terminates, and the grantor (or the grantor's successor-in-interest) receives the property in fee simple absolute. *See* 4 Miller & Starr, *Cal. Real Estate* § 12:8 (4th ed. 2026). A deed provision saying that a grant will "revert" to the grantor upon the occurrence of a condition tends to indicate fee simple subject to condition subsequent, rather than an easement. *City of Manhattan Beach*, 914 P.2d at 168–69; *see Concord & Bay Point*, 280 Cal. Rptr. at 626. Easements do not, in precise terminology, "revert" to the grantor, but rather are extinguished, so the term "revert" would be out of place in an easement. *See Concord & Bay Point*, 280 Cal. Rptr. at 626 ("[A]n easement which is abandoned by nonuse or use outside its limitations does not 'revert' to the grantor, it is simply extinguished." (quoting *Johnson*, 94 Cal. Rptr. at 72)). As Plaintiffs who hold fee simple subject to condition subsequent have failed to preserve their interests, *see supra* Discussion I.A, Defendant is entitled to summary judgment if the railroad received land in fee simple subject to condition subsequent.

[12] California treats deeds that originally conferred fee simple determinable as fee simple subject to condition subsequent, as the state has abolished the fee simple determinable. *See* Cal. Civ. Code § 885.020. Throughout this Memorandum and Order, references to defeasible fees will only be to fee simple subject to condition subsequent.

### C. Analysis of the Deeds

The Court will analyze each of the source deeds at issue in this Motion to resolve whether they convey easements or land in fee. Defendant is entitled to summary judgment if the source deed conveys land in any type of fee (either fee simple absolute or fee simple subject to condition subsequent) because the grants of fee simple subject to condition subsequent have effectively converted to fee simple absolute. *See supra* Discussion I.A. Thus, although Plaintiffs argue that several deeds convey fee simple subject to condition subsequent, Defendant will still prevail if that is true. Summary judgment will be denied where the source deed conveys an easement or where disputed issues of material fact prevent a summary judgment determination.

#### *1. J. McCarty Deed*

Defendant argues that the J. McCarty source deed conveyed land in fee simple. Mot. at 18. Plaintiffs argue that the deed conveyed an easement or fee simple subject to condition subsequent. Resp. at 23, 25. The Court concludes that the J. McCarty deed conveyed land in fee simple subject to condition subsequent.[13]

The J. McCarty deed conveys "all that certain lot piece or parcel of land" at a defined location. ECF No. 64-69 at 2, PLT000748. The deed includes a statement of purpose in the description of the property, which says that the interest was "to be used by the party of the second part or its assigns **as a way** for the transportation of freight and passengers and the operation of a railroad for that purpose." *Id.* (emphasis added). The deed contains traditional language associated with a fee grant: "[t]ogether with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions remainder and

[13] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: Viola McBride Education Trust, 311-231-009; Russ Investment Company, 311-231-010.

remainders, rents issues and profits thereof." *Id.* at 3, PLT000749. Finally, the habendum clause[14] limits the grant "as a way for the transportation of freight and passengers by rail until abandoned."[15] *Id.*

The language in the deed indicates a grant in fee under *Machado* factors four (references to tenements and hereditaments) and five (conveyance of an interest in the land itself, rather than interest running "over and across" the land). *See Machado*, 284 Cal. Rptr. at 563. Factor one ("whether the reference to a 'right of way' is merely descriptive or acts to limit the grant") also weighs in favor of a fee grant because the reference to a right-of-way in this deed appears to be used descriptively. *See id.* Here, the deed describes the grant as land "to be used . . . as a way." ECF No. 64-69 at 2, PLT000748. This deed lacks any exclusive limiting language in the description, such as "only," that would indicate a prescriptive reference to a right-of-way, which a deed typically needs for the reference to a right-of-way to weigh in favor of an easement conveyance under California law. *See City of Manhattan Beach*, 914 P.2d at 168.

---

[14] A deed's habendum clause contains "limitations on the estate conveyed to the grantee, such [as] the duration of an estate for years or the limitation to the surviving heirs of a life tenant." 3 Miller & Starr, *Cal. Real Est.* § 8:2 (4th ed. 2026). A habendum clause often begins with the words "to have and to hold" and sometimes repeats words of inheritance that are typically found in the granting clause. Black's Law Dictionary (12th ed. 2024); *see also Concord & Bay Point*, 280 Cal. Rptr. at 625 ("The habendum clause ('TO HAVE AND TO HOLD') repeats the language of inheritance found in the granting clause."). Although limitations upon a deed are more likely to appear in a granting clause, language in the habendum clause can still limit a deed. *Machado*, 284 Cal. Rptr. at 565–66.

[15] Plaintiff argues that the handwritten J. McCarty deed contains the words "rail until." Resp. at 23. Defendant says that the words that Plaintiffs read as "rail until" are illegible. ECF No. 64-69 at 7. However, Defendant does not contest Plaintiffs' interpretation of the words in its Reply. Reply at 10. From this Court's review of the scanned source deed, "rail until" is a plausible interpretation of the text. *See* ECF No. 64-69 at 3, PLT000749. As such, the Court will accept Plaintiffs' interpretation for purposes of resolving this summary judgment motion.

In addition, the J. McCarty deed indicates an intent to convey fee simple subject to condition subsequent when the habendum clause limits the grant "as a way for the transportation of freight and passengers by rail until abandoned." ECF No. 64-69 at 3, PLT000749. Such conditional language indicates that the deed was intended to convey a defeasible fee because the plain meaning of the word "until" is that the grantee's interest ends once the rail use is "abandoned."[16] *See Severns*, 125 Cal. Rptr. 2d at 105; *Concord & Bay Point*, 280 Cal. Rptr. at 625–26. The inclusion of a reversionary condition provides further evidence that the grantor intended to convey land in fee, rather than an easement. *See Severns*, 125 Cal. Rptr. 2d at 105. Therefore, the J. McCarty deed conveys fee simple subject to condition subsequent.[17]

Plaintiffs who draw their title from the J. McCarty source deed have failed to preserve any reversionary interest that the deed included. *See supra* Discussion I.A. As such, Defendant is entitled to summary judgment against Plaintiffs who draw their claims from the J. McCarty source deed. *See supra* at n.13.

*2. M.T. Blackburn Deed*

Defendant argues that the M.T. Blackburn source deed conveyed land in fee simple. Mot. at 18. Plaintiffs argue that the deed conveyed an easement or fee simple subject to condition

[16] For purposes of deciding the Motion before the Court, it is unnecessary to decide what "abandoned" means in this deed or whether the condition subsequent has been met.

[17] The language of the J. McCarty deed is amenable to interpretation as a fee simple determinable. However, California has abolished the fee simple determinable and now interprets such deeds as fee simple subject to condition subsequent. *See* Cal. Civ. Code § 885.020.

subsequent. Resp. at 23. The Court concludes that the M.T. Blackburn deed conveyed land in fee simple subject to condition subsequent.[18]

The M.T. Blackburn deed conveys "all my right, title, and interest in, and to, the following described parcel of land." ECF No. 64-70 at 2, PLT001052. In addition to the land, the deed grants the "right and privilege of entering into and upon the lands hereby granted, and of constructing and maintaining thereon" a railroad. *Id*. This provision does not modify the use of the "lands hereby granted," but instead grants access to those lands through other lands not conveyed in the deed. *See id.* The deed does not contain language related to tenements and hereditaments. *See id* at 2–3. However, the deed explicitly creates a reversionary interest: "[p]rovided never the less that the lands hereby granted **shall revert to me, my heirs and assigns**, whenever said corporation its successors or assigns shall cease to use the same in maintaining and operating a railroad thereon." *Id* at 3. (emphasis added).

Although the M.T. Blackburn deed is short, it contains several *Machado* factors that weigh in favor of construing it as a grant in fee. The grant of "all my right, title, and interest in" the land, along with the later description of the grant as a "strip of land," corresponds to a fee grant under *Machado* factor one because the interest is described as land itself. ECF No. 64-70 at 2, PLT001052; *Machado*, 284 Cal. Rptr. at 563; *see City of Manhattan Beach*, 914 P.2d at 168 ("References to 'land,' particularly in conjunction with precise and technical designation of the location, generally indicate an intention to transfer the entire estate not just a limited right to pass over the property."). In addition, the presence of a reversionary interest indicates that a transfer in fee was intended. *See Severns*, 125 Cal. Rptr. 2d at 105; *Concord & Bay Point*, 280 Cal. Rptr. at

[18] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: APA Enterprises, 007-092-010; APA Enterprises, 007-092-003; William and Sandra Madsen, 007-081-009.

622. The reversionary language in the M.T. Blackburn deed nearly matches the reversionary language that indicated a fee simple subject to condition subsequent in *Severns*. *Compare* ECF No. 64-70 at 3, PLT001053 ("Provided never the less that the lands hereby granted **shall revert to me, my heirs and assigns**, whenever said corporation its successors or assigns shall cease to use the same in maintaining and operating a railroad thereon." (emphasis added))*, with, Severns*, 125 Cal. Rptr. 2d at 103 (quoting the deed at issue: "[s]hould said railway after being completed and in operation cease thereafter to be operated for a period of six months, then said right of way herein conveyed **shall revert to the parties of the first or assigns**" (emphasis added)). As such, the deed exhibits multiple indications of an intent to transfer in fee.

Plaintiffs cite the deed's language reciting a "right and privilege of entering into and upon the lands hereby granted" as a reason why the deed only conveys an easement. Resp. at 23 (quoting ECF No. 64-70 at 2, PLT001052). However, this language appears in a separate paragraph from the grant of land, and the purpose of this separate paragraph is to grant a "right and privilege" of access to a separate parcel of land besides that which is conveyed in fee. *See* ECF No. 64-70 at 2, PLT001052. Although this paragraph cited by Plaintiffs may have granted an easement to land outside the railroad right-of-way, it does not limit the grant of land within the right-of-way, which is at issue in this case. Therefore, the language of the deed exhibits an intent to transfer land in fee.

Plaintiffs who draw their title from the M.T. Blackburn source deed have failed to preserve any reversionary interest that the deed included. *See supra* Discussion I.A. As such, Defendant is entitled to summary judgment against Plaintiffs who draw their claims from the M.T. Blackburn source deed. *See supra* at n.18.

*3. A.C. Allen Deed*

Defendant claims that the A.C. Allen source deed conveys land in fee, and that Defendant is thus entitled to summary judgment against Plaintiff CUE VI LLC. Mot. at 18 & n.9; ECF No. 1-2 at 2. Plaintiffs agree that the Allen deed conveys a fee interest. Resp. at 12. However, Plaintiffs argue that the Allen deed is irrelevant because Plaintiff CUE VI LLC subsequently purchased the fee interest to the right-of-way over the relevant portion of the right-of-way from NCRA's predecessor-in-interest. *Id.* at 12–13. Defendant responds that Plaintiff CUE VI LLC did not purchase land in the right-of-way, but instead purchased a rail yard abutting the right-of-way. Reply at 8. Defendant also argues that Plaintiff could not have purchased land in the rail right-of-way due to federal regulatory restrictions on the abandonment of rail corridors. *Id.* at 8–9 (citing 49 U.S.C. § 10903). Despite Defendant's protest, Plaintiff CUE VI LLC has introduced sufficient evidence to put its fee ownership of the rail right-of-way in genuine dispute.[19]

The description of the property conveyed in the A.C. Allen deed closely matches the description of the property conveyed to CUE VI LLC from the Union Pacific Railroad Company in the deed offered by Plaintiffs. *Compare* ECF No. 64-71 at 2, PLT001134 (Allen source deed), *with* ECF No. 66-2 at 11–12, PLT001105–06 (deed to CUE VI LLC from Union Pacific Railroad Company). Both deeds grant land in fee at a point beginning "on the North line of Clark's Addition to the City of Eureka, at the intersection of the West line of Broadway," then heading north on the West line of Broadway, then further north, then west, southwesterly, and finally east back to the beginning point. *See* ECF No. 64-71 at 2, PLT001134; ECF No. 66-2 at 11, PLT001105. Plaintiffs also offer parcel maps that show the disputed parcels encompassing both the rail yard and the right-

[19] The Court thus **DENIES** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: CUE VI, LLC, 003-041-007; CUE VI, LLC, 003-031-006; CUE VI, LLC, 003-021-009; CUE VI, LLC, 001-014-002.

of-way, without any break for the right-of-way to be owned by a different entity. *See* ECF No. 66-3 at 6, PLT001133. Defendant offers no contrary evidence to disprove Plaintiff's purchase of a fee interest in the right-of-way, except attorney argument that such a sale should not have passed regulatory muster. *See* Reply at 8. Defendant could not demonstrate, for example, that the deed to CUE VI LLC reserved the right-of-way in fee for the railroad. *See id.* Plaintiffs have thus presented enough evidence about a material fact—whether CUE VI LLC owns the right-of-way in fee—to at least raise a genuine dispute. *See* Rule 56(a). As such, Defendant is not entitled to summary judgment against Plaintiff CUE VI LLC with respect to these four parcels. *See supra* at n.19.

*4. Burnell Deeds*

Defendant argues that the Burnell source deeds convey land in fee, so that Plaintiff Nyberg Trust's claims for four parcels that trace their title to the Burnell deeds are unsupported. Mot. at 18 & n.9. Defendant submits one of the two Burnell source deeds at issue as evidence (deed number 16-519), and that deed uses traditional fee transfer language. *Id.*; ECF No. 64-72 at 2–3, PLT001451–52. For example, the deed transfers "the following described land," followed by a detailed metes-and-bounds description, and concludes with a statement that the transfer includes "tenements, hereditaments, and appurtenances." ECF No. 64-72 at 2–3, PLT001451–52. Plaintiffs argue, however, that the deed submitted by Defendant does not correspond to the properties for which Plaintiff Nyberg Trust makes its claim, so that this deed's fee transfer is irrelevant.[20] Resp. at 13.

---

[20] Plaintiffs submit a digital image of a map as an exhibit, which purports to demonstrate that the Burnell deed in evidence did not apply to the rail right-of-way. ECF No. 66-4 at 1; *see* Resp. at 13. This map cannot prove to the Court which deed applies to which portion of the land because

In its Reply, Defendant acknowledges that the deed submitted as evidence of a fee transfer did not apply to the stated Plaintiff. Reply at 8 n.1 ("The United States concedes for purposes of this motion that those deeds are not applicable to the Plaintiffs subject to this motion."). Defendant confirmed this concession at oral argument. OA Tr. at 12:20.

As such, Defendant is not entitled to summary judgment against Plaintiffs whose claims derive their title from Burnell source deeds.[21]

*5. Georgeson and Pacific Lumber (102-82 and 126-145) Deeds*

Defendant claims that the Georgeson source deed conveys land in fee, and that Plaintiff Jack Rice is thus unable to recover for one of his parcels. Mot. at 18 & n.9. Plaintiffs do not contest that the Georgeson deed conveys land in fee, but instead argue that two other source deeds apply to most of Jack Rice's parcel. *See* Resp. at 13.

In particular, Plaintiffs claim that Pacific Lumber source deeds numbered 126-145 and 102-82 apply to a majority of Rice's parcel. *Id.* Defendant argues that the 126-145 deed also conveys title in fee and that the 102-82 deed does not apply to the Rice parcel or, alternatively, that the 102-82 deed conveys title in fee. Reply at 9 & n.2. The Court concludes that all of the source deeds at issue for Plaintiff Jack Rice's parcel (the Georgeson source deed and Pacific Lumber deeds 126-145 and 102-82) convey land in fee, either fee simple absolute or fee simple subject to condition subsequent. Thus, regardless of whether the Georgeson deed or Pacific

---

the image resolution is not high enough to reveal the parcel numbers. *See* ECF No. 66-4 at 1. The Court reminds parties that digital images submitted as evidence should have sufficient resolution for the Court to read relevant markings.

[21] The Court thus **DENIES** summary judgment to Defendant for claims associated with the following parcels owned by Plaintiff Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg: 204-171-001, 204-081-007, 204-081-002, 204-081-006.

Lumber deeds 126-145 and 102-82 correspond to Jack Rice's parcel, Defendant has established that the railroad held the land in fee.[22]

Plaintiffs concede that the Georgeson deed conveyed land in fee. Resp. at 13.

The Pacific Lumber 102-82 deed says that it effects a transfer of "land and property." ECF No. 67-4 at 3. The 102-82 deed refers to the property transferred as a "strip of land one hundred (100) feet wide, lying equally on each side of the center line of said Railroad Company's railroad, as located through, upon or across said Lumber Company's land." *Id.* The deed then recites a detailed description of the boundaries for the conveyed land. *Id.* After the description, the deed includes traditional habendum clause language with words of inheritance: "TO HAVE AND TO HOLD the premises and property hereby conveyed with all the rights and privileges and appurtenances thereto belonging or in any wise appertaining, unto the said Railroad Company, its successors and assigns, subject to the reservations and conditions, and for the purposes hereinafter set forth." *Id.* at 4. The deed contains a condition, under which the conveyance "shall revert" to the grantor if the railroad stops operating over the line, and the grantee "shall re-convey" the land upon request. *Id.* Finally, the deed reserves the right to harvest trees for the lumber company: "[t]here is excepted from the aforesaid conveyance all timber standing, lying or being on the lands therein described, and the same shall remain the property of the Lumber Company." *Id.*

This language in the Pacific Lumber 102-82 deed exhibits the intent to transfer land in fee under the *Machado* factors. *See Machado*, 284 Cal. Rptr. at 563. The first factor (whether references to a right-of-way are descriptive or limit the grant) applies in favor of a fee grant. *See id.* Although the deed does not mention a right-of-way, the reference to the "Railroad Company's

[22] The Court thus **GRANTS** summary judgment to Defendant for the claims associated with the following Plaintiff and parcel: Jack Rice, 209-271-012.

railroad" is purely descriptive. ECF No. 67-4 at 3. The third factor (references to a fee or easement) weighs in favor of a fee transfer. *See Machado*, 284 Cal. Rptr. at 563. The references to the conveyed interest as "land and property" and a "strip of land" are strong indicators of a transfer in fee because an easement is not the conveyance of land itself. ECF No. 67-4 at 3; *see Concord & Bay Point*, 280 Cal. Rptr. at 625. The fourth factor (presence of words of inheritance) does not weigh in favor of either a fee or easement. *See Machado*, 284 Cal. Rptr. at 563. Although the deed lacks references to tenements or hereditaments, the habendum clause itself mentions a future condition that can terminate the grant. ECF No. 67-4 at 4. The California Supreme Court has held that nearly identical language is inconclusive but "not inconsistent with the grant of a fee." *City of Manhattan Beach*, 914 P.2d at 169. Factor five (interest described as running "over and across the land") is similarly inconclusive. *See Machado*, 284 Cal. Rptr. at 563. Although the deed includes the words "upon or across," this does not weigh in favor of an easement under factor five because that language in the deed refers to the location of existing physical railroad tracks, whereas the interest conveyed is described as a "strip of land," not as an interesting upon or across the land. ECF No. 67-4 at 3; *see Machado*, 284 Cal. Rptr. at 563. Finally, the reservation of rights to harvest timber on the land indicates a transfer in fee, as the grantor would not have needed to reserve these rights if the railroad received only an easement. *See Machado*, 284 Cal. Rptr. at 563; ECF No. 67-4 at 4. On balance, then the Pacific Lumber 102-82 deed conveys fee simple subject to condition subsequent.

Similarly, the factors indicate that the Pacific Lumber 126-145 deed also conveys land in fee simple subject to condition subsequent. The deed conveys "the following described land and property." ECF No. 67-3 at 3. The deed contains "through, upon or across" language to refer to the location of the then-extant railroad: "A strip or tract of land of varying widths lying on either

side of the located center line of the Northwestern Pacific Railroad Company's railroad where the same is located through, upon or across said Lumber Company's land." *Id.* The metes-and-bounds description of the parcel occupies several pages. *Id.* at 3–7. The deed contains words of inheritance associated with a transfer in fee. *Id.* at 7 ("TOGETHER with the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents issues and profits thereof."). In addition, the deed transfers land "subject to" the terms and conditions of the 102-82 deed, which included a termination clause and transferred land in fee simple subject to condition subsequent. ECF No. 67-3 at 7; *see* ECF No. 67-4 (Pacific Lumber 102-82 deed).

This language in the Pacific Lumber 126-145 deed indicates the intent to transfer in fee, for many of the same reasons as the 102-82 deed. The references to the property conveyed as a "strip of land" weigh in favor of a fee transfer. *See Concord & Bay Point*, 280 Cal. Rptr. at 625. The references to land "upon or across" the grantee's land does not weigh in favor of an easement because that language merely describes an existing monument that is physically located on the land, rather than the nature of the interest conveyed. *Machado*, 284 Cal. Rptr. at 568 ("over and across" language weighs in favor in easement only if it describes the property interest transferred). The reference to "tenements, hereditaments and appurtenances thereunto belonging" also indicates an intent to transfer the entire estate in fee. ECF No. 67-3 at 7; *see Machado*, 284 Cal. Rptr. at 563. Finally, the "precise and technical designation of the location," which spreads across several pages for this deed, indicates and intent to transfer in fee. *See City of Manhattan Beach*, 914 P.2d at 168. As such, the Pacific Lumber 126-145 deed also transfers land in fee simple subject to condition subsequent, with the inclusion of the same condition subsequent as the 102-82 deed. *See* ECF No. 67-3 at 7; *see also* ECF No. 67-4.

Thus, all of the parcels that, Plaintiffs contend, might cover Plaintiff Jack Rice's parcel conveyed land in fee simple or fee simple subject to condition subsequent. To the extent that there was a condition subsequent, the power of termination has expired. *See supra* Discussion I.A. As such, the railroad held fee simple absolute title to the land in dispute, and Defendant is entitled to summary judgment against Plaintiff Jack Rice with respect to his claim for parcel number 209-271-012.

*6. Vance Redwood Deed*

Defendant claims that the Vance Redwood source deed conveys land in fee, rather than as an easement, so Plaintiffs Humboldt Bay District and Samoa Pacific Group LLC cannot recover for covered parcels. Mot. at 19 & n.11; ECF No. 63-3 at 7. Plaintiffs respond that the Vance Redwood deed conveys either an easement or fee simple subject to condition subsequent. Resp. at 20, 23 n.23. The Court concludes that the Vance Redwood deed conveyed land in fee simple subject to condition subsequent.[23]

The Vance Redwood deed conveys to the railroad and "its successors and assigns forever, for railroad purposes, all that certain lot, piece or parcel of land situate" within a technical metes-and-bounds description of the property. ECF No. 64-77 at 2, PLT000920. In addition to the sale of land, the deed also conveys "all of [the grantor's] right, title and interest in and to the main line track of what is known as the Samoa Extension of the Oregon and Eureka Railroad, as the same is now constructed across and upon the above described parcels of land." *Id.* at 2, PLT000920. The deed includes a termination provision: "should the [railroad] decide to abandon or cease to

[23] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: Humboldt Bay District, 401-031-058; Humboldt Bay District, 401-031-050; Humboldt Bay District, 401-031-048; Humboldt Bay District, 401-031-041; Samoa Pacific Group, LLC, 401-031-070 (previously 401-031-082).

maintain or operate the railroad track described above as the Samoa Extension, all the right, title and interest hereby conveyed shall revert to the [grantor]." *Id.* at 4, PLT000922. Finally, the deed includes words of inheritance associated with a fee transfer: "TOGETHER WITH ALL AND SINGULAR the tenements, hereditaments and appurtenances therefore belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof." *Id.*

A separate conveyance in the Vance Redwood deed (which does not cover the land at issue in the case) uses different language to describe the type of property transferred:

> [T]he parties of the first part do hereby covenant and agree that they will and do hereby grant to party of the second part **the right to operate trains** of the party of the second part **over the present existing spurs** leading from said main line or said Samoa Extension to what is known as Gibson Street Dock, Warehouse Track and Samoa Wye, in said town of Samoa, so long as the same are maintained by the parties of the first part, or their assigns, being mutually understood that the land upon which said spurs are located is the property of the parties of the first part and that the track and track material in such spurs are the property of the party of the second part.

ECF No. 64-77 at 3, PLT000921 (emphasis added).

The relevant portion of the Vance Redwood deed transferred land in fee. The description of the interest conveyed as "all that certain lot, piece or parcel of land situate," combined with a technical description of the land, weighs in favor of a fee conveyance. *See City of Manhattan Beach*, 914 P.2d at 168. The mention of "tenements, hereditaments and appurtenances" also indicates that the parties intended a fee conveyance. *See Machado*, 284 Cal. Rptr. at 563. The presence of a termination clause weighs in favor of a fee conveyance. *See Severns*, 125 Cal. Rptr. 2d at 105.

Plaintiffs argue that the use of the phrase "for railroad purposes" in the deed's granting clause indicates an intent to transfer only the limited right of an easement. Resp. at 22 ("[T]he

Court need only look at the specific limiting language of both the granting clause and the habendum clause, which expressly limits the conveyance 'for railroad purposes' and 'for the purposes as above set forth' (*i.e.*, railroad purposes), respectively, which unequivocally demonstrates the parties' intent to convey merely an easement."). However, such language is not dispositive, especially where the purpose language does not accompany additional conditions. *See Machado*, 284 Cal. Rptr. at 358; *Faus*, 15 Cal. Rptr. at 789 (finding that deed granted an easement after examining "all the facts and circumstances" in addition to deed's purpose language). The deed at issue in *Machado* included similar language about purpose in the granting clause, which described the grant as "for a right of way for a standard gauge railroad." *Machado*, 284 Cal. Rptr. at 359. This purpose language was not sufficient to determine that the deed conveyed an easement, and the deed at issue in *Machado* ultimately conveyed land in fee. *See id.* at 361.

Instead, a comparison of different conveyances within the Vance Redwood deed provides decisive evidence that the conveyance at issue was in fee. Language within the deed itself reveals the parties' intent, which is the "ultimate interpretive touchstone" to determine the interest that is conveyed. *City of Manhattan Beach*, 914 P.2d at 167. The Vance Redwood deed conveys an easement for land not at issue in this case, which consists of "the right to operate trains . . . over the present existing spurs." ECF No. 64-77 at 3, PLT000921. This conveyance explicitly states that the grantor retains fee ownership over the land underlying this easement. *Id.* ("being mutually understood that the land upon which said spurs are located is the property of [the grantor]"). Conveyances, such as this one, that "limit the railway to a right of passage and exclude title to the land beneath" are likely to be easements. *See City of Manhattan Beach*, 914 P.2d at 168. Thus, the parties to the Vance Redwood deed had one set of clauses that they used to convey an easement. In contrast, the conveyance at issue in this case uses strikingly different language, which hews

more closely to the language typically employed for fee conveyances. *See* ECF No. 64-77 at 2–4, PLT000920–22. As such, the conveyance at issue conveyed fee simple subject to condition subsequent.

Plaintiffs who draw their title from the Vance Redwood source deed have failed to preserve any reversionary interest that the deed included for the fee conveyance. *See supra* Discussion I.A. As such, Defendant is entitled to summary judgment against Plaintiffs who draw their claims from the Vance Redwood source deed. *See supra* at n.23.

*7. Ramsey Livestock, Long, and Swanson Deeds*

Defendant argues that the Ramsey Livestock, Long, and Swanson source deeds convey land in fee. Mot. at 19 & n.11. Plaintiffs argue that the deeds convey easements but agree that the deeds are "substantively very similar," so that they may be analyzed as a group. Resp. at 16. The Court finds that all three deeds convey land in fee.[24]

The Swanson deed (which is representative of all three source deeds) conveys "as and for a right of way for [the] railroad, all that certain lot, piece or parcel of land situate" within an area defined by a metes-and-bounds description. ECF No. 64-76 at 2, PLT000222. The deed further describes the property conveyed as a "strip or tract of land." *Id.* The deed includes traditional words of inheritance: "TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof." *Id.*

[24] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: Robert Taylor, 031-020-051; Robert Taylor, 031-020-050; Harold and Uarda Prior Family Trust (Trustees Harold and Uarda Prior), 216-112-013; Fort Baker Ranch Company, 216-116-016.

This language indicates an intent to convey land in fee. The first *Machado* factor weighs in favor of a fee transfer because the reference to a right-of-way describes but does not limit the grant. *See Machado*, 284 Cal. Rptr. at 563. There, the description in the granting clause of a "strip or parcel of land for a right of way" described the grant but did not limit it because it lacked additional limiting language, such as "only." *Id.* at 566. Here, similarly, the Swanson deed grants "for a right of way . . . all that certain lot, piece or parcel of land," in which the purpose describes the grant but does not include additional limiting language. *See* ECF No. 64-76 at 2, PLT000222. The fourth *Machado* factor indicates this is a fee transfer because the Swanson deed contains traditional words of inheritance, including "tenements" and "hereditaments." *See Machado*, 284 Cal. Rptr. at 563. These are the two determinative *Machado* factors that are present in this short deed, and they both indicate the intent to transfer land in fee. *See id.* As such, the Ramsey Livestock, Long, and Swanson deeds convey land in fee simple, and Defendant is entitled to summary judgment against the following Plaintiffs whose claims derive from these three source deeds. *See supra* at n.24.

*8. Fisher Deed*

Defendant argues that the Fisher deed conveys land in fee. Mot. at 19 & n.11. Plaintiffs contend, to the contrary, that the Fisher deed conveys an easement. Resp. at 18. The Court concludes that the Fisher deed conveys an easement.[25]

The Fisher deed conveys "all these certain lots, pieces or parcels of land situate" within a described boundary. *See* ECF No. 64-78 at 2, PLT001167. The deed describes the interest granted

[25] The Court thus **DENIES** summary judgment to Defendant for the claim associated with the following Plaintiff and parcel: Jones 1996 Family Trust (Trustees Mark C. and Bonnie L. Jones), 507-461-064.

as "[a] right of way for railroad purposes and over and across a strip of land."[26] *Id.* After the description of the property conveyed, the Fisher deed includes standard words of inheritance: "Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof." *Id.*

Although the *Machado* factors are divided here, the Fisher deed conveys an easement. The first *Machado* factor slightly favors an easement grant because the description of the interest conveyed as a right-of-way could limit the grant but does not accompany other limiting language, such as "only." *See Machado*, 284 Cal. Rptr. at 563. This is a description of the purpose of the deed because it lacks the limiting language, such as "only," that is typically present when a statement of purposes indicates an easement. *See City of Manhattan Beach*, 914 P.2d at 168. Under the second factor (location of the limiting language), the location of the reference to a right-of-way points in favor of an easement because the reference appears in the granting clause, and references in the granting clause are likely to indicate an easement. *Machado*, 284 Cal. Rptr. at 565. The third factor (reference to the interest conveyed as fee or easement) does not point in either direction because the Fisher does not reference the interest conveyed as either fee or

---

[26] This quote relies upon Plaintiffs' interpretation of the handwritten deed. *See* Resp. at 18. Defendant contends that the words that Plaintiffs identify as "purposes" and "over and across" in the Fisher deed are "illegible." *See* ECF No. 64-78 at 4. The Court agrees that those century-old words are, at best, difficult to discern and, at worst, indecipherable on the scan that Defendant provided to the Court as an exhibit. *See* ECF No. 64-78 at 2, PLT001167. However, Plaintiffs' proffered reading is reasonable, and, at summary judgment, this Court must construe reasonable inferences from the evidence in Plaintiffs' favor as the non-movant. *See Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968 (Fed. Cir. 2009) ("In considering the existence of a genuine issue of material fact, a court must draw all inferences in the light most favorable to the non-moving party." (citing *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))); *EFC Servs., Inc. v. United States*, 172 Fed. Cl. 694, 698 (2024). At oral argument, Defendant's counsel asserted that even if the Court accepts Plaintiff's proffered reading, the Fisher deed still conveys land in fee. OA Tr. at 26:2–4.

easement. *See* ECF No. 64-78 at 2, PLT001167; *Machado*, 284 Cal. Rptr. at 563. The fourth factor, on the other hand, weighs in favor of a grant in fee because the deed includes words of inheritance, such as "tenements, hereditaments and appurtenances." ECF No. 64-78 at 2, PLT001167; *see Machado*, 284 Cal. Rptr. at 563. The fifth factor weighs strongly in favor of an easement because the granting clause describes the interest conveyed as running "over and across a strip of land." ECF No. 64-78 at 2, PLT001167; *see Machado*, 284 Cal. Rptr. at 563. Although the inclusion of the phrase "over and across" in *Machado* was insufficient to establish that the deed granted an easement and, as here, the deed contained a detailed metes-and-bounds description of the conveyed land, the granting clause in this deed contains more indications of an easement grant. *Machado*, 284 Cal. Rptr. at 568–69. There, the decisive factor to establish that the deed conveyed fee was the reference to a conveyance of land in the granting clause, whereas the Fisher deed describes the grant itself (not the purpose of the grant) as a right-of-way. *Id.* at 566. Here, the deed tilts slightly more in favor of an easement than the deed in *Machado*, so the factors weigh in favor of the conveyance of an easement. *See id.*

As the Fisher deed conveyed an easement, Defendant is not entitled to summary judgment against Plaintiffs whose claims derive from the Fisher deed. *See supra* at n.25.

*9. Pacific Lumber (96-114) Deed*

Defendant argues that the Pacific Lumber deed numbered 96-114 conveys title in fee simple. Mot. at 19 & n.11. Plaintiffs do not contest that the deed conveys land in fee. Resp. at 12. Rather, Plaintiffs argue the deed is irrelevant because (1) this deed only applies to Plaintiffs whose claims have already been dismissed, *see infra* Discussion II, and (2) Plaintiffs whom Defendant identifies as inheriting title from Pacific Lumber 96-114 actually reference another Pacific Lumber deed, numbered 82-410. Resp. at 13–14. Defendant does not contest that it is

actually the Pacific Lumber deed numbered 82-410 that applies to those Plaintiffs. Reply at 8 n.1. As such, interpretation of the 96-114 deed is not necessary for the Court to reach a summary judgment decision with respect to any Plaintiff.

*10. Pacific Lumber (82-410) Deed*

Defendant argues that the Pacific Lumber deed numbered 82-410 conveys title in fee simple absolute to the railroad. Mot. at 19 & n.11. Plaintiffs respond that the deed conveys an easement or a fee simple subject to condition subsequent. Resp. at 23–24.[27] The Court concludes that the Pacific Lumber 82-410 deed conveys land in fee simple subject to condition subsequent.[28]

The Pacific Lumber 82-410 deed conveys "land and property." ECF No. 64-80 at 2, PLT000551. The deed includes a statement of purpose: the land was expected "to be used as a right of way for a railroad." *Id.* The deed describes one conveyance as "[a] strip of land" and

[27] Plaintiffs do not make any arguments in their Response brief based on the language of the Pacific Lumber 82-410 deed. *See* Resp. at 23–24. Rather, Plaintiffs reprint sections of the deed (and bold selected sentences). *Id.* at 24. The Court interprets this as an argument that the reprinted and bolded selections should establish that the deed granted an easement or fee simple subject to condition subsequent. *See id.*

[28] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: Steven and Velma Town, 209-191-010; Renner Ranches, Inc., 205-091-013; Henry and Angela Hall, 205-381-013; Frances and James Renner, 205-101-004; Loren and Laura Lee, 205-101-007; Jesus and Lisa Sierra, 201-241-004; John and La Vada Matney, 201-241-014; W. John Gray and Davina L. Gray 2007 Revocable Trust (Trustees W. John and Davina Gray), 201-262-002; Jessie Jefferies, F. Nocona Mendes & TVH Enterprises, 205-111-057; Randy and Dawnita Hoisington, 205-181-004; Randy and Dawnita Hoisington, 205-181-002; the Hongran Cohen Trust (Trustees Hongran Cohen and Sean Suh), 205-111-074; Scilacci Irrevocable Trust (Trustee Steven Scilacci), 205-101-012; Scilacci Irrevocable Trust (Trustee Steven Scilacci), 205-161-001; Hunt Family Partnership, 205-101-010; Hunt Family Partnership, 205-161-024; Steven and Machelle Scilaci, 205-381-005; Steven and Machelle Scilacci, 201-262-007; Steven and Machelle Scilacci, 201-262-010; Steven and Machelle Scilacci, 201-262-004; Dennis & Tammy Miranda Living Trust (Trustees Dennis and Tammy Miranda), 201-262-012; Dennis & Tammy Miranda Living Trust (Trustees Dennis and Tammy Miranda), 201-262-011; Tomac, LLC, 201-241-017; Tomac, LLC, 201-241-015; Paul Nelson, 201-254-022; Paul Nelson, 201-254-023.

provided a detailed metes-and-bounds description for that conveyance. ECF No. 64-80 at 2–3, PLT000551–52. The deed describes a second conveyance as "[a] right of way four (4) rods in width through all lands owned by the Lumber Company" in particular sections of the grantor's lands, without a metes-and-bounds description. ECF No. 64-80 at 3, PLT000552. The habendum clause includes words of inheritance associated with a fee conveyance: "TO HAVE AND TO HOLD the premises and property hereby conveyed, with all the rights, privileges and appurtenances thereunto belonging or in any wise appertaining." *Id.* The deed includes a termination clause, which requires the railroad to reconvey the land if the grantee fails to construct a railroad: "if thereafter such railroad shall not be maintained upon the aforesaid strip of land hereby conveyed, then to the extent that the same shall not be so used it shall revert to the Lumber Company, and upon its request the Railway Company will, by proper deed, reconvey the same." *Id.* Finally, the Pacific Lumber 82-410 deed reserves the grantor's right to harvest timber on the conveyed land. *Id.*

The Pacific Lumber 82-410 deed conveyed land in fee. The deed exhibits many of the *Machado* factors in favor of a fee conveyance. The first factor weighs in favor of a fee grant because the reference to the land "to be used as a right of way for a railroad" is descriptive and does not include "only" or other words that limit the grant. ECF No. 64-80 at 2, PLT000551; *see Machado*, 284 Cal. Rptr. at 563. The deed's repeated references to the interest conveyed as a "strip of land," along with a technical description of the property, favor the grant of a fee interest under *Machado* factor one. ECF No. 64-80 at 2–3, PLT000551–52; *see Machado*, 284 Cal. Rptr. at 563; *City of Manhattan Beach*, 914 P.2d at 168. Although the deed does not include the words "tenements" or "hereditaments," it includes other words of inheritance: "TO HAVE AND TO HOLD the premises and property hereby conveyed, with all the rights, privileges and

appurtenances thereunto belonging." ECF No. 64-80 at 3, PLT000552; *see Machado*, 284 Cal. Rptr. at 563. The reservation of rights for the grantor to harvest timber is a sign that the deed granted a fee interest, as such a reservation would be unnecessary if the deed only conveyed an easement. *See Machado*, 284 Cal. Rptr. at 563. Finally, the specific inclusion of a reversionary interest—the land "shall revert to the Lumber Company" after maintenance of a railroad ceases—indicates that the deed conveyed land in fee simple subject to condition subsequent. ECF No. 64-80 at 3, PLT000552; *see Severns*, 125 Cal. Rptr. 2d at 105.

In addition, the inclusion of a separate conveyance of a "right of way" indicates that the conveyance of a "strip of land" at issue in this case was for land in fee. ECF No. 64-80 at 3, PLT000552. Usage within the deed itself can reveal the parties' intent in the conveyance, which is the "ultimate interpretive touchstone" of a deed's meaning. *City of Manhattan Beach*, 914 P.2d at 167. Here, the deed describes the second conveyance as a "right of way," whereas the deed described the first conveyance as a "strip of land." ECF No. 64-80 at 3, PLT000552. The second conveyance is also described in more general terms, without the metes-and-bounds description of the first conveyance, and the use of a more general description is associated with an easement conveyance. *See City of Manhattan Beach*, 914 P.2d at 168. The different language used in the two conveyances indicates that they conveyed two different interests: a fee interest and an easement. Each party identifies the deed's conveyance of a "strip of land" as the conveyance at issue in this case, rather than the conveyance of a "right of way." *See* Resp. at 24; Reply at 14. Thus, the conveyance at issue in this case transferred land to the railroad in fee simple subject to condition subsequent.

Plaintiffs who draw their title from the Pacific Lumber 82-410 source deed have failed to preserve any reversionary interest that the deed included. *See supra* Discussion I.A. As such,

Defendant is entitled to summary judgment against Plaintiffs who draw their claims from the Pacific Lumber 82-410 source deed. *See supra* at n.28.

*11. W. Field Deed*

Defendant argues that the W. Field deed conveys fee title to the railroad, defeating the claims of 10 parcels owned by three Plaintiffs. Mot. at 19 & n.11. Plaintiffs respond that to the extent the Field deed is relevant, it grants an easement. Resp. at 18. The Court concludes that the Field deed conveys both a fee interest and an easement, and that Defendant has not met its burden to establish that the Plaintiffs draw their interest from the fee conveyance.[29]

The Field deed includes two conveyances. The first conveyance grants "all that certain lot piece or parcel of land" located within a technical metes-and-bounds description. ECF No. 64-81 at 3, PLT000803. The second conveyance grants "a right of way for a railroad across" a portion of the grantee's land, whose precise boundaries are not fixed by any technical description. *Id.* The deed limits this second conveyance to the railroad's "right to pass and repass with its rolling stock freight and passenger cars to construct and maintain sidetracks switches turntables and warehouses." *Id.* at 3–4, PLT000803–04. The deed concludes with traditional words of inheritance: "[t]ogether with all and singular the tenements hereditaments and appurtenances

[29] The Court thus **DENIES** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: Head Family Trust (Trustees John and Susan Head), 306-016-007; John, Jr., and Andrea Schutt, 306-121-043; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 306-211-004; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 305-201-016; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 305-171-015; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 307-101-008; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 305-201-008; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 306-013-010; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 305-201-009; Stanwood & Pamela Murphy Family Trust (Trustees Stanwood and Pamela Murphy), 305-201-008.

thereto belonging or in anywise appertaining and the reversion and reversions remainder and remainders rents issues and profits thereof. *Id.* at 4, PLT000804.

The different language used for the two conveyances in the Field deed indicate one fee conveyance and one easement conveyance. Defendant asserts that both grants in the Field deed conveyed land in fee. Reply at 12–13. However, the second conveyance includes classic markers of an easement conveyance, such as the description of the interest conveyed as a right-of-way and a less technical description of the parcel. *See City of Manhattan Beach*, 914 P.2d at 168. Whereas the first conveyance grants an estate in "land," the second conveyance does not grant land, but rather a "a right of way for a railroad," ECF No. 64-81 at 3, PLT000803. "[A]n easement is an interest in the land of another rather than an estate in land," *Concord & Bay Point*, 280 Cal. Rptr. at 626. Although the reference to a "right of way for a railroad" is descriptive, the second grant includes other limiting language, which limits the railroad's use of the second conveyance to "pass and repass" and perform other activities related to rail operations. *See* ECF No. 64-81 at 3–4, PLT000803–04. In addition, the description of the second conveyance as running "across" the grantor's land indicates an easement conveyance. *See Machado*, 284 Cal. Rptr. at 563. Defendant argues that the deed is for a grant of fee simple because there was more than nominal consideration ($1,000) and the deed contains traditional words of inheritance associated with a fee transfer. Reply at 12–13. Defendant's argument fails because these indicia of a fee transfer can be associated with the first grant, which was for a fee transfer, rather than the grant of an easement. *See* ECF No. 64-81 at 3, PLT000803. As such, the second grant in the Field deed is for an easement.

Defendant does not provide any evidence about which parcels derive from each grant in the Field deed. *See* Reply at 12–13. Plaintiffs argue that six of the Murphy Family Trust's parcels

and the parcel owned by Plaintiffs John and Andrea Schutt draw their title from the easement grant in the Field deed.[30] Resp. at 20. The two other Murphy Family Trust parcels draw from the fee grant in the Field deed, Plaintiffs say, but Plaintiff Murphy Family Trust later acquired that land in fee from the railroad, and Plaintiff has submitted evidence of this acquisition. *Id.*; ECF No. 66-7 at 23, PLT000796. Defendant does not contest that Plaintiff Murphy Family Trust later acquired land in fee from the railroad. *See* Reply at 12–13. Plaintiffs, similarly, do not offer any evidence beyond attorney argument that ties their claims to the easement grant instead of the fee conveyance in the Field deed; however, the burden lies with Defendant here to show that there is no genuine dispute of this material fact. *See Celotex Corp.*, 477 U.S. at 322–23; *Marriott Int'l Resorts, L.P.*, 586 F.3d at 968 ("The moving party carries the burden of establishing that no genuine issue of material fact exists."). When Defendant fails to submit any evidence that the Plaintiffs' claims are tied to the fee conveyance, it is not entitled to summary judgment. *See Marriott Int'l Resorts*, 586 F.3d at 968. In addition, Plaintiffs' proffered title deed showing ownership of parcels that derive from the Field Deed's fee conveyance is sufficient for Plaintiffs to "show an evidentiary conflict on the record" about fee ownership over the right-of-way in the portion covered by the Field deed. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir. 1987) ("[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient."). As such, Defendant is not entitled to summary judgment with respect to any of the Plaintiffs that trace their parcels to the Field deed. *See supra* at n.29.

---

[30] One of the Plaintiffs that draws from the Field deed, the Head Family Trust, has already had its claim dismissed. Resp. at 18 n.21. As such, the Head Family Trust's claim is not at issue in this Motion.

### D. <u>Burdens of Trail Use</u>

Plaintiffs argue that even if they do not retain any property interest in the right-of-way, they are still entitled to compensation for the burden that trail use will impose on their properties that adjoin the right-of-way. Resp. at 29 (citing *Richards v. Wash. Term. Co.*, 233 U.S. 546 (1914)). Plaintiffs argue that the trail use alone causes such "'direct,' 'peculiar,' and 'substantial' burdens" that it effects a taking, even where Plaintiffs have no property interests that are physically occupied. *Id.* at 31 (quoting *Richards*, 233 U.S. at 557). Defendant argues that Plaintiffs cannot recover for the incidental effects of "harms . . . shared with every other adjacent landowner." Reply at 17.

In the case that Plaintiffs rely upon, the Supreme Court held that the "direct and peculiar and substantial" impact of a railroad could effect a taking upon nearby property. *Richards*, 233 U.S. at 557. There, a railroad constructed a busy train tunnel next to land that the plaintiff owned in Washington, D.C., and the emissions from that tunnel entrance caused particular damage to the plaintiff's enjoyment of the property: "Plaintiff's property has been damaged by the volumes of dense black or gray smoke, and also by dust and dirt, cinders and gases, emitted from the trains while passing over the tracks and in or out of the tunnel, or standing upon the tracks near the signal tower." *Id.* at 549. A ventilation system inside the tunnel forced all the emissions from trains in the tunnel directly into plaintiff's property. *Id.* The Court found that this was a compensable taking but limited its holding, so that that railroads were not liable in private nuisance or eminent domain suits for "actions in behalf of neighboring property owners for the ordinary damages attributable to the operation of the railroad, in the absence of negligence." *Id.* at 553. Thus, "[a]ny diminution of the value of property not directly invaded nor peculiarly affected, but sharing in the

common burden of incidental damages arising from the legalized nuisance, is held not to be a 'taking' within the constitutional provision." *Id.* at 554.

Here, Defendant correctly argues that *Richards* does not apply to this situation because Plaintiffs have failed to present any evidence that their property will be "peculiarly affected" by the impacts of trail use. *See* Reply at 17 (quoting *Richards*, 233 U.S. at 554); *see also Richards*, 233 U.S. at 557 (finding a taking where the impacts on a property were "direct and peculiar and substantial"). For example, Plaintiffs cite no evidence in their Response that their properties will be subject to a particular harm, much less a harm that will materially affect their enjoyment of their property. *See* Resp. at 29–31. Rather, it appears that Plaintiffs will only "shar[e] in the common burden of incidental damages arising from the legalized nuisance" of a public trail, so the Court finds that there has not been any taking. *See Richards*, 233 U.S. at 554.

Plaintiffs' other arguments that the burden of trail use provides an independent ground for a taking similarly fail. Plaintiffs argue that their "appraisers routinely testify that imposition of recreational trail use specially and substantially damages Plaintiffs' adjacent properties, and the [Court of Federal Claims] routinely accepts such testimony in determining just compensation." Resp. at 31 n.29. However, in each case that Plaintiffs cite for this proposition, landowners had already established the federal Government's liability for a taking, and the impact of trail use was considered only at the quantum of damages stage. *See Price v. United States*, 175 Fed. Cl. 1, 12 (2025) (plaintiffs previously won summary judgment finding of liability, and Court of Federal Claims then considered damages); *Jackson v. United States*, 155 Fed. Cl. 689, 692 (2021) (same); *Hardy v. United States*, 141 Fed. Cl. 1, 3 (2018) (same); *McCann Holdings, Ltd. v. United States*, 111 Fed. Cl. 608, 610 n.1 (2013) (same); *Childers v. United States*, 116 Fed. Cl. 486, 494 & n.1 (2013) (Court of Federal Claims held trial on damages after establishing liability). Plaintiff fails

to cite a single case in which the trail use had no direct or peculiar impact upon land but still effected a taking. *See* Resp. at 31 n.29. As such, Plaintiffs fail to establish a taking where they do not own any property interest in the right-of-way.

## II. Plaintiffs Do Not Contest Summary Judgment Against Former Plaintiffs Micheli and Schneider Dock

Defendant challenges the claims of two plaintiffs whose claims Plaintiffs have already voluntarily dismissed. Mot. at 32–33; Resp. at 13–14, 36 n.32 (stating that Plaintiffs have voluntarily dismissed claims by Schneider Dock Industrial Park and Anthony and Elsie Micheli); *see* ECF No. 27 at 1 (stipulating dismissal of claims by Anthony and Elsie Micheli). As these Plaintiffs' claims have already been voluntarily dismissed, the Motion is denied as moot with respect to the Micheli Plaintiffs and Plaintiff Schneider Dock Industrial Park.[31]

## III. Scope of the Rail Easement for First Street Plaintiffs

Defendant argues that two Plaintiffs—Dolores M. Vellutini 2007 Separate Property Trust and FSB Holdings, LLC—are ineligible to recover because their properties are already burdened by separate easements that are "broad enough to encompass trail use." Mot. at 36–37. A plaintiff cannot recover for a rails-to-trails taking if an easement over a right-of-way already has sufficient scope to cover trail use. *See Preseault II*, 100 F.3d at 1533. The First Street Plaintiffs own property at 422 and 424 First Street in Eureka, California. ECF Nos. 64-68 at 2 (granting Plaintiff Dolores

[31] The Court **DENIES AS MOOT** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: Anthony Micheli & Elise Micheli, 209-163-004; Anthony Micheli & Elise Micheli, 209-163-003; Schneider Dock Industrial Park LLC, 003-062-024; Schneider Dock Industrial Park LLC, 003-062-024; Schneider Dock Industrial Park LLC, 003-062-021.

M. Vellutini 2007 Separate Property Trust ownership of 422 First Street[32]), 64-67 at 2 (granting Plaintiff FSB Holdings LLC ownership of 424 First Street).

Defendant offers a screenshot from Google Maps as evidence to show that the NCRA railroad tracks run through the middle of First Street in front of these properties. Mot. at 37. Defendant argues that the rail right-of-way must overlap an easement for the street because the rails run through the middle of the street, and that an easement for a street must include pedestrian use. *Id.* ("Clearly, an easement permitting the construction and use of a public street with sidewalks likewise encompasses use of the corridor by pedestrians or bicyclists—the same use associated with a trail."). Defendant also argues, again without any evidence beyond a Google Maps screenshot, that Plaintiffs' properties are already burdened with the same type of use that the trail will provide for, so that no property interests were taken. *Id.* at 38 ("The NITU, which simply allows for uses that already exist on this property, did not take any property rights held by the Plaintiffs along this segment of the corridor."). Plaintiffs argue that the alleged road easement is irrelevant to the question of liability for a taking, and that the road easement's effect upon damages for the taking cannot be determined at this stage. Resp. at 42–43.

The Court **DENIES** summary judgment with regard to the First Street Plaintiffs because Defendant fails to meet its burden as the movant.[33] Defendant cites no precedent for the proposition that no taking occurs when the Federal Government converts a railroad right-of-way to trail use where there is already a public street. *See* Mot. at 36–38. Instead, Defendant cites

[32] This deed also granted ownership of 424 First Street to the Dolores M. Vellutini 2007 Separate Property Trust. ECF No. 64-68 at 2. FSB Holdings LLC later purchased 424 First Street. ECF No. 64-67 at 2.

[33] The Court thus **DENIES** summary judgment to Defendant for claims associated with the following Plaintiffs and parcels: Dolores M. Vellutini 2007 Separate Property Trust, 001-051-015; FSB Holdings, LLC, 001-051-011.

*Preseault* for the general proposition that "there is no taking if the current easement encumbering the property is broad enough to encompass trail use." Mot. at 36–37 (citing *Preseault II*, 100 F.3d at 1553). However, *Preseault* asked only whether the scope of a single railroad easement included trail use, not whether the expansion in scope of a rail easement to include trail use was rendered not a taking by the presence of an overlapping easement. *See Preseault II*, 100 F.3d at 1542–43. In addition, that case interpreted Vermont property law, not the California law at issue here. *Id.* at 1544.

Defendant has not introduced or referenced any evidence that would demonstrate that the State of California has an easement on First Street whose scope includes pedestrian and bicycle traffic comparable to the future trail. *See* Mot. at 37. A Google Maps screenshot showing a road with train tracks in the middle is not proof that the state owns an easement for the road or that the road and railway rights-of-way are coterminous. *See id.*; *see also Su Hung v. Choukeir*, No. H046990, 2020 WL 7383329, at *2 n.2 (Cal. Ct. App. Dec. 16, 2020) (Google Earth image without property lines marked was insufficient to prove easement boundaries). As the movant, Defendant bears the burden of demonstrating the absence of any genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. Even if Defendant supported its proposition that the existence of an overlapping easement for First Street could defeat liability for a taking,[34] Defendant still would have failed to meet its burden because it introduced only "attorney argument" about the scope of

[34] Although Defendant's failure to present evidence alone is sufficient to deny summary judgment with respect to the First Street Plaintiffs, this Court and its predecessor have previously dealt with overlapping easements and found that the overlapping easement does not necessarily extinguish liability but rather affects the quantum of damages. *See Adams v. United States*, 230 Ct. Cl. 628, 631, 680 F.2d 746 (1982); *Zanzarella v. United States*, 180 Fed. Cl. 91, 144 (2025); *In re Upstream Addicks and Barker (Tex.) Flood-Control Reservoirs*, 162 Fed. Cl. 495, 532 (2022).

an alleged road easement.[35] *See FastShip*, 892 F.3d at 1309; *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence."); *E&I Glob. Energy Servs., Inc. v. United States*, No. 24-1286, 2025 WL 2945698, at *5 (Fed. Cir. Oct. 17, 2025) (finding attorney argument insufficient to support litigant's position at summary judgment). It is plausible that Defendant is correct that there is an overlapping easement for the road, which has a similar scope to the trail use, but Defendant failed to introduce any law or evidence that would support such a conclusion. *See* Mot. at 36–38. As such, the Court **DENIES** summary judgment with respect to the First Street Plaintiffs.

## IV. Plaintiff Humboldt Bay District's Claims

At the Motion's caboose, Defendant argues that one Plaintiff, Humboldt Bay District, cannot recover for a taking because it is a California agency, and California owns any land that the agency owns. Mot. at 38. Another state agency will operate the trail, so the state will receive any rights that are taken from Humboldt Bay District. *Id.* Defendant argues that such a transfer, from the state back to the state, makes Plaintiff ineligible to recover for any taking. *Id.* at 39.

Plaintiffs dispute both the rule of law that applies to this issue and whether this issue is appropriate to resolve at summary judgment. Resp. at 43–44. Defendant argues that if Humboldt Bay District is a state instrumentality or agency, then it cannot recover as a matter of law. Mot. at 39–40. Plaintiff counters that the proper question is instead whether Humboldt Bay District has the power to manage part of its land independently, even if it is a state agency, and that this fact-specific question cannot be resolved at summary judgment. Resp. at 44. For the reasons stated

[35] Defendant argues in its Reply that if California holds an easement for the road over the same land where there is an easement for the rails, then California already has the rights (as the trail sponsor) to allow trail use via the easement for the street. Reply at 24. However, Defendant simply failed to introduce evidence (or make an argument of law) that would establish California's ownership of an easement over the street whose scope covers trail use. *See* Mot. at 37.

below, Defendant offers the correct standard, and this issue is appropriate to resolve at summary judgment because no material facts are in dispute. Defendant is entitled to summary judgment against Plaintiff Humboldt Bay District.[36]

### A. <u>State agencies and municipalities cannot recover for a taking by the state</u>

Defendant cites authorities holding that "municipal corporations" cannot recover when their land is taken for the use of the state that created the municipality. *Id.* at 38–39; *see Balagna v. United States*, 135 Fed. Cl. 16, 27 (2017) (denying recovery to municipality in a rails-to-trails case sponsored by state agency because municipality and agency were both state instrumentalities). The relevant factor preventing municipal corporations from recovering for such a taking, according to Defendant, is that they are "political subdivisions of the state, created as convenient agencies for exercising such of the government powers of the state as may be entrusted to them." Mot. at 38 (quoting *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907)). This structure gives the state the power to take property from a municipality for the state's own use. *Hunter*, 207 U.S. at 179. Similarly, Defendant argues that the transfer of property from a state instrumentality to the Federal Government, when that land is held in trust for another state instrumentality, creates no need to pay just compensation:

> When . . . a sovereign state transfers its own public property from one governmental use to another, or when the Federal Government takes property from state ownership merely as to put it to a federal public use for which the state already holds it in trust, a like obligation does not arise to pay just compensation for it.

*United States v. Carmack*, 329 U.S. 230, 242 n.12 (1946). Defendant argues that the Court should reach the same conclusion as the Court of Federal Claims in *Balagna*, where both the plaintiff and

[36] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following parcels owned by Plaintiff Humboldt Bay District: 305-162-006, 305-162-008, 305-141-005, 302-181-038, 401-011-026, 401-031-058, 401-031-050, 401-031-048, 401-031-041, 401-021-022.

trail sponsor were municipal corporations, created by the state as instrumentalities of the state. Mot. at 39; *see Balagna*, 135 Fed. Cl. at 26. There, the court said that "no compensable taking occurred" because the state, through its request for the NITU, consented to the taking of land that was already owned by the state through its instrumentalities—the municipalities. *Balagna*, 135 Fed. Cl. at 27 & n.10; *see also Yee v. City of Escondido*, 503 U.S. at 527 (holding that taking only occurs when landowner is forced to submit to occupation of land). The only relevant factual question for this issue, according to Defendant, is whether the State of California owns the land held by Humboldt Bay District: "California cannot ask the United States to pay for its own choice to convert its own property to trail use, as directed by the State legislature." Mot. at 38.

Plaintiffs respond that because "the properties owned by the Humboldt Bay Harbor District in this litigation are **not** subject to the State's authority and Humboldt Bay Harbor District has the power to use and dispose of the properties as it sees fit," Humboldt Bay District is eligible for compensation. Resp. at 44 (emphasis in original). According to Plaintiffs, the question is not whether the State of California owns the land through the District, but rather whether properties owned by the District are "subject to the State's authority," or whether the district "has the power to use and dispose of the properties as it sees fit." *Id.* Plaintiffs do not contest that California owns all of Humboldt Bay District's lands or that Humboldt Bay District is a state agency. *See id.* Plaintiffs acknowledge that the District "could not receive compensation" for property controlled by the state but claim that the land at issue in this case falls outside that category. *Id.* Plaintiffs do not cite any precedent or other law to support their contention that the state's degree of control matters more than the state's ultimate ownership. *See id.* at 43–44.

Defendant accurately states the legal standard at issue: whether the landowner is an instrumentality of the state, rather than how much control the state exercises for itself over the

land. A state may, "at its pleasure . . . take without compensation" its own instrumentality's interests in land. *Hunter*, 207 U.S. at 178; *see also Balagna*, 135 Fed. Cl. at 27 ("It is well established that a municipality's interests in the land it owns are subordinate to the authority of the state, which retains near-plenary power over its municipalities' property." (citing *Hunter*, 207 U.S. at 178–79)). When a state (here, California) consents to transfer its own municipality's land through its request for a NITU, the Federal Government has not made any compensable taking. *See Carmack*, 329 U.S. at 242 n.12; *Balagna*, 135 Fed. Cl. at 27. The relevant factor that has decided previous cases is whether the state owns the land through its instrumentalities, not whether the state has granted the instrumentalities power to themselves manage land. *See Carmack*, 329 U.S. at 242 n.12 (rule applies when the state "transfers its own public property"). The powers a state delegates to its own instrumentalities are disregarded for Fifth Amendment purposes:

> The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the state within the meaning of the Federal Constitution.

*Hunter*, 207 U.S. at 178. Accordingly, as Defendant argues, internal rules of state organization, which might allow an instrumentality to manage property, are disregarded, so the rule for whether a taking has occurred instead turns on whether the landowner is a state instrumentality. *See* Mot. at 38.

**B. <u>This issue is appropriate to resolve at summary judgment in favor of Defendant</u>**

Here, Humboldt Bay District cannot recover compensation for any taking because it is an instrumentality of the State of California. The District is a "public corporation" created by the California legislature. *See* Cal. Harb. & Nav. Code, App. 2 § 1 ("The district created in accordance

with the provisions of this act is a public corporation created for the purposes set forth herein."). Under California law, a public corporation is an "instrumentality of the state." *People ex rel. Post v. San Joaquin Valley Agric. Ass'n*, 151 Cal. 797, 805 (1907); *see also* Cal. Gov't Code § 6300(b) ("'Public corporation' means the state, any political subdivision thereof, any incorporated municipality therein, any public agency of the state, of any political subdivision thereof, or of any municipality therein, or any corporate municipal instrumentality of this state, or of this state and one or more other states."); *see also Hagman v. Meher Mount Corp.*, 155 Cal. Rptr. 3d 192, 195 (Cal. Ct. App. 2013) ("The term 'public corporation' is a term of art used to designate certain entities that exercise governmental functions."). In addition, California courts have treated Humboldt Bay District as a government agency. *See Humboldt Fishermen's Mktg. Ass'n Inc. v. Humboldt Bay Harbor, Recreation, and Conservation Dist.*, No. A158634. 2020 WL 4382704, at *8 (Cal. Ct. App. July 31, 2020) (applying statutory immunity available for a "public entity" to Humboldt Bay District).

Humboldt Bay District, a state agency, falls into the same category as the municipalities from which land was taken in prior cases because the relevant fact in those prior cases was whether the municipality was a state instrumentality. *See Hunter*, 207 U.S. at 179 (deciding based on the state's "supreme" status over the municipality). Like the municipalities, Humboldt Bay District "is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit." *See City of Trenton v. New Jersey*, 262 U.S. 182, 187 (1923). Plaintiff emphasizes Humboldt Bay District's history of selling properties "without restriction" by the state as evidence that the District independently owns land. Resp. at 44. However, the District only has the power to "dispose of real . . . property" because the state legislature delegated that power. Cal. Harb. & Nav. Code, App 2 § 28. The District's ability to sell its land is limited by the state,

as the District can only purchase and sell land to the extent that such actions are "necessary to the full or convenient exercise of its powers." *Id.* The District's history of selling properties does not mean that it can sustain takings claim after the State of California, which is the source of all its powers, has consented to the taking. As such, Humboldt Bay District cannot recover for a taking that transfers its land to California with California's consent.

Plaintiffs also argue that the question of whether Humboldt Bay Harbor District is eligible to recover cannot be resolved on a motion for summary judgment because the record allegedly contains insufficient facts. Resp. at 43. Until the parties have conducted "subsequent fact discovery," Plaintiffs argue, this Court cannot resolve whether the property at issue in this case is subject to the state's control. *Id.* at 43. In particular, Plaintiffs argue that discovery will reveal which of Humboldt Bay District's properties are and are not independent of state control. *Id.* at 44 ("This issue is not ripe for determination without those facts and, as a result, the government's motion should be denied so both the facts and the law can be further developed.").

Contrary to Plaintiffs' contentions, the Court can resolve this issue at summary judgment because, as discussed above, Plaintiffs identify the wrong legal question with regard to Humboldt Bay District's ability to bring a takings claim in this case. *See supra* Discussion IV.A. The question can be resolved as a matter of law. Even if Plaintiff proved that the state did not exercise control over the property, that would not change the outcome of this issue, so no material facts are in dispute. *See Textron Aviation Def. LLC v. United States*, 161 Fed. Cl. 256, 265 (2022) ("A 'material fact' is one that could affect the outcome of the suit."); *Smart v. United States*, 85 Fed. Cl. 609, 611 (2009) ("Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment."). The proper issue for examination here is not whether California has historically allowed Plaintiff Humboldt Bay District to buy and sell property, but whether Plaintiff

Humboldt Bay District is a state instrumentality whose ability to buy and sell property the state can restrict. Only one fact is material to this question: whether Humboldt Bay District is an instrumentality of the State of California. *See Hunter*, 207 U.S. at 178. As there is no genuine dispute that Humboldt Bay District is an instrumentality, the issue is ripe for resolution on summary judgment. *See* Rule 56(a). Defendant is thus entitled to summary judgment against all claims made by Humboldt Bay District.

## CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Partial Motion for Summary Judgment (ECF No. 63), as set forth below.

The Court **GRANTS** Defendant's Partial Motion for Summary Judgment (ECF No. 63) with respect to the following Plaintiffs and associated parcels:

| PLAINTIFF | PARCEL NUMBER |
|---|---|
| Harold and Uarda Prior Family Trust, Trustees Harold Prior & Uarda Prior | 216-112-013 |
| Fort Baker Ranch Company | 216-166-016 |
| Steven Town & Velma Town | 209-191-010 |
| William and Sandra Madsen | 007-081-009 |
| Samoa Pacific Group, LLC | 401-031-070<br>(Previously 401-031-082) |
| Jack Rice | 209-271-012 |
| Robert Taylor | 031-020-051 |
| Robert Taylor | 031-020-050 |
| Viola McBride Education Trust, Trustee, Jack McBride | 311-231-009 |
| Russ Investment Company | 311-231-010 |
| Humboldt Bay Harbor Recreation & Conservation District | 305-162-006 |
| Humboldt Bay Harbor Recreation & Conservation District | 305-162-008 |
| Humboldt Bay Harbor Recreation & Conservation District | 305-141-005 |

| | |
|---|---|
| Humboldt Bay Harbor Recreation & Conservation District | 302-181-038 |
| Humboldt Bay Harbor Recreation & Conservation District | 401-011-026 |
| Humboldt Bay Harbor Recreation & Conservation District | 401-031-058 |
| Humboldt Bay Harbor Recreation & Conservation District | 401-031-050 |
| Humboldt Bay Harbor Recreation & Conservation District | 401-031-048 |
| Humboldt Bay Harbor Recreation & Conservation District | 401-031-041 |
| Humboldt Bay Harbor Recreation & Conservation District | 401-021-022 |
| APA Enterprises | 007-092-010 |
| APA Enterprises | 007-092-003 |
| Renner Ranches, Inc. | 205-091-013 |
| Henry Hall & Angela Hall | 205-381-013 |
| Frances Renner & James Renner | 205-101-004 |
| Loren Lee & Laura Lee | 205-101-007 |
| Jesus Sierra & Lisa Sierra | 201-241-004 |
| John Matney & La Vada Matney | 201-241-014 |
| W. John Gray and Davina L. Gray 2007 Revocable Trust, Trustees, W. John Gray & Davina Gray | 201-262-002 |
| Jessie Jefferies, F. Nocona Mendes, & TVH Enterprises | 205-111-057 |
| Randy Hoisington & Dawnita Hoisington | 205-181-004 |
| Randy Hoisington & Dawnita Hoisington | 205-181-002 |
| The Hongran Cohen Trust, Trustee, Hongran Cohen & Sean Suh | 205-111-074 |
| Scilacci Irrevocable Trust, Trustee, Steven Scilacci | 205-101-012 |
| Scilacci Irrevocable Trust, Trustee, Steven Scilacci | 205-161-001 |

| | |
|---|---|
| Hunt Family Partnership | 205-101-010 |
| Hunt Family Partnership | 205-161-024 |
| Steven Scilacci & Machelle Scilacci | 205-381-005 |
| Steven Scilacci & Machelle Scilacci | 201-262-007 |
| Steven Scilacci & Machelle Scilacci | 201-262-010 |
| Steven Scilacci & Machelle Scilacci | 201-262-004 |
| Dennis & Tammy Miranda Living Trust, Trustees Dennis Miranda and Tammy Miranda | 201-262-012 |
| Dennis & Tammy Miranda Living Trust, Trustees Dennis Miranda and Tammy Miranda | 201-262-011 |
| Tomac, LLC | 201-241-017 |
| Tomac, LLC | 201-241-015 |
| Paul Nelson | 201-254-022 |
| Paul Nelson | 201-254-023 |

Accordingly, the claims of these Plaintiffs for their respective parcels are **DISMISSED** from this action.

The Court **DENIES** Defendant's Partial Motion for Summary Judgment against the following Plaintiffs and associated parcels:

| PLAINTIFF | PARCEL NUMBER |
|---|---|
| Head Family Trust, Trustees John Head and Susan Head | 306-016-007 |
| FSB Holdings LLC | 001-051-011 |
| Dolores M. Vellutini 2007 Separate Property Trust, Trustee Delores M. Vellutini | 001-051-015 |

| | |
|---|---|
| John Schutt, Jr. & Andrea Schutt | 306-121-043 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 306-211-004 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 305-201-016 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 305-171-015 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 307-101-008 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 305-201-008 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 306-013-010 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 305-201-009 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy | 305-201-008 |
| CUE VI, LLC | 003-041-007 |
| CUE VI, LLC | 003-031-006 |
| CUE VI, LLC | 003-021-009 |
| CUE VI, LLC | 001-014-002 |
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 204-171-001 |
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 204-081-007 |
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 204-081-002 |
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 204-081-006 |
| Jones 1996 Family Trust, Trustees Mark C. Jones & Bonnie L. Jones | 507-461-064 |

The Court **DENIES AS MOOT** Defendant's Partial Motion for Summary Judgment against the following Plaintiffs and associated parcels:

| PLAINTIFF | PARCEL NUMBER |
|---|---|
| Anthony Micheli & Elise Micheli | 209-163-004 |
| Anthony Micheli & Elise Micheli | 209-163-003 |
| Schneider Dock Industrial Park LLC | 003-062-024 |
| Schneider Dock Industrial Park LLC | 003-062-028 |
| Schneider Dock Industrial Park LLC | 003-062-021 |

The Court does not presently rule upon the Partial Motion for Summary Judgment (ECF No. 63) with regard to the application of the centerline presumption for representative parcels. For the purpose of judicial efficiency and due to overlapping issues, the Court will address those remaining arguments alongside the parties' Cross-Motions for Summary Judgment regarding chain of title ownership for representative parcels (ECF Nos. 91, 92).

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

September 8, 2026
Washington, D.C.