# In the United States Court of Federal Claims

| | |
|---|---|
| ROSS BEWLEY, *et al.*,<br>Plaintiffs,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 22-cv-1589<br>Filed: September 10, 2026 |

*Reed W. Ripley* of Stewart, Wald, & Smith, LLC, Kansas City, MO, appeared for Plaintiffs. With him on the briefs were *Thomas S. Stewart* of Stewart, Wald, & Smith, LLC, Prairie Village, KS, and *Steven M. Wald* and *Michael J. Smith* of Stewart, Wald, & Smith, LLC, St. Louis, MO.

*Kyle Lyons-Burke* of the United States Department of Justice, Environment and Natural Resources Division, Washington, D.C. appeared for Defendant. With him on the briefs were *Adam R.F. Gustafson* and *Taylor Gamm*, of the United States Department of Justice, Energy and Natural Resources Division, Washington, D.C.

**MEMORANDUM AND ORDER**

This is the Court's second summary judgment ruling in a rails-to-trails dispute arising out of Mendocino, Trinity, and Humboldt counties in California. Familiarity with the Court's first ruling, and the background information provided therein, is presumed and incorporated here. *See Bewley v. United States*, No. 22-1589, slip op. (Fed. Cl. Sep. 8, 2026) (First Ruling or *Bewley I*).

In this Memorandum and Order, the Court rules upon cross-motions for summary judgment concerning fee title interest to land within the right-of-way of the North Coast Railroad Authority (NCRA or railroad) that abuts 16 parcels, which are owned by eight representative Plaintiffs. When the Surface Transportation Board (STB) authorizes the conversion of a railroad right-of-way to trail use, the STB may effect a taking of reversionary property interests. If the NCRA holds an easement whose scope does not include trail use over the right-of-way, then the conversion to

trail use extinguishes the easement, and the owner of the fee simple interest[1] in the right-of-way is legally entitled to regain full use of the land, but the conversion to trail use seizes the reversionary interest. Thus, the STB's authorization of trail effects a taking, and fee interest holders may be entitled to compensation under the Takings Clause of the Fifth Amendment. However, many landowners struggle to establish their fee interest in a right-of-way, especially when, as is the case here, the railroad or its predecessors-in-interest acquired the right-of-way more than a century ago. Plaintiffs in this case all own parcels that abut the NCRA right-of-way and claim that their parcels include a fee interest in the right-of-way. In this Memorandum and Order, the Court assesses three ways in which Plaintiffs try to establish their fee interest in the right-of-way.

*First*, Plaintiffs invoke the centerline presumption. California law presumes that when a railroad holds an easement interest in a right-of-way, a property owner whose land abuts the right-of-way owns the fee simple interest up to the centerline of the right-of-way, even when the owner's title deed does not mention land within the right-of-way. This means that a parcel that borders a railroad right-of-way is presumed to include the fee interest to half of the right-of-way—the centerline is the middle of the railroad tracks—along the entire border between the parcel and the right-of-way. This presumption prevents the creation of narrow strips of land in rights-of-way with unidentifiable or long-lost fee owners. For example, an owner of the fee interest within the right-of-way (where the railroad had an easement) may overlook that narrow fee interest while selling a parcel that adjoins the right-of-way, and the deed of sale will not mention the fee interest

[1] The fee simple is "the broadest property interest allowed by law." *Fee simple*, *Black's Law Dictionary* (12th ed. 2024). An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Easement*, *Black's Law Dictionary* (12th ed. 2024); *see also Wright v. Best*, 121 P.2d 702, 710 (Cal. 1942) ("An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property.").

under the right-of-way. If generations of transactions ignore the fee interest in the right-of-way, it becomes difficult to identify the record owner of that fee interest. Instead, California law presumes that whoever owns land abutting a right-of-way owns the fee interest up to the centerline. However, California law also establishes that the language of the title deed (the deed by which the present owner of a parcel acquired ownership) can rebut the centerline presumption. If the title deed describes a parcel's boundaries by a detailed metes-and-bounds description and that description ends at the outer edge of the right-of-way—the sideline of the right-of-way—the deed itself rebuts the centerline presumption. Defendant argues that the metes-and-bounds descriptions in the deeds of 14 parcels at issue in this Memorandum and Order rebut the centerline presumption. Defendant groups these parcels into Groups E, F, and G, corresponding to the language that allegedly rebuts the centerline presumption in each deed.

*Second*, a deed may explicitly exclude the land within the right-of-way when conveying a parcel abutting a right-of-way. Deeds that rebut the centerline presumption do not explicitly state that they exclude any conveyance of land in the right-of-way. In contrast, Defendant argues that deeds for four parcels[2] at issue in this Memorandum and Order, categorized together as Group H, explicitly exclude any land within the right-of-way. These deeds each contain a metes-and-bounds description of the conveyed parcel or parcels, followed by another clause that states the deed excepts land within the right-of-way from the conveyance. Defendant argues that when a deed contains such an exception clause, the grantor does not intend to convey any fee interest in the right-of-way, even if the grantor owns the fee interest. Plaintiffs argue that rather than

[2] Defendant contends that the deed for two parcels both explicitly excludes the conveyance of a property interest in the right-of-way and implicitly rebuts the centerline presumption, so those parcels are included in both Groups F and H. *See* ECF No. 63-1 at 3 (including Plaintiff Swallowtail Ranch's parcels in both Group F and H).

demonstrating the grantor's intent to exclude the land from a conveyance, such clauses serve as notifications from grantor to grantee that land conveyed withing the right-of-way is burdened by the railroad's easement.

*Third*, Plaintiffs can present chains of title. A chain of title is a series of deeds that treks through the history of every recorded conveyance affecting a parcel of land. A chain of title might show that the landowner who granted an easement to a railroad later conveyed the fee interest to the rest of the parcel and never separately conveyed or intended to retain the fee interest to the right-of-way. California law presumes that land sales convey all of the seller's interest in property, so that a conveyance of the parcel would include the fee interest to the right-of-way unless the grantor explicitly excludes the right-of-way from the conveyance. Like the centerline presumption, this rule helps to prevent the accumulation of narrow strips of land with long-forgotten owners. If Plaintiffs can demonstrate, through chains of title, that their predecessors-in-interest held the fee interest to the right-of-way and never sold that interest, Plaintiffs establish their own fee interest in the right-of-way. Plaintiffs present chains of title for 15 parcels and argue that the chains of title establish their fee interests in the right-of-way.

These issues arise from two rounds of summary judgment briefing, which the Court addresses in this Memorandum and Order. First, Defendant's original Partial Motion for Summary Judgment (ECF No. 63) (Defendant's Motion or Def. Mot.) seeks a judgment that Plaintiffs in Groups E, F, and G cannot rely upon California's centerline presumption to establish their property interest within the right-of-way and that the Group H deeds except land in the right-of-way. Defendant's Motion originally challenged claims of 117 parcels, from 63 Plaintiffs, and included several other issues. Def. Mot. at 7. Defendant sorted the challenged parcels into Groups A through H. Groups A and B included challenges about the railroad's interest in the right-of-way,

which the Court addressed in a prior opinion and are unrelated to the issues addressed in this Memorandum and Order. *See Bewley I*. For Groups C through G, Defendant challenged Plaintiffs' ability to invoke the centerline presumption based on language in title deeds that allegedly rebutted the centerline presumption. For Group H, Defendant argued that Plaintiffs' title deeds explicitly excluded any interest in the right-of-way. The Court has previously ruled on the other issues within Defendant's Motion and, in this Memorandum and Order, only addresses the remaining arguments raised in Groups E through H as they apply to representative parcels.[3]

In Plaintiffs' Motion for Partial Summary Judgment (ECF No. 91), Plaintiffs argue that they can establish an interest in the right-of-way through the centerline presumption or, alternatively, through their chains of title, for the representative parcels at issue in Groups E through H of Defendant's original Partial Motion for Summary Judgment (ECF No. 63). In Defendant's Supplemental Motion for Summary Judgment (ECF No. 92), Defendant renews its arguments about the centerline presumption and argues that the chain of title evidence fails to prove Plaintiffs' interests in the right-of-way for the representative parcels. Groups C and D did not include any representative parcels, so Plaintiff's Motion for Partial Summary Judgment (ECF No. 91), Defendant's Supplemental Motion for Summary Judgment (ECF No. 92), and this Memorandum and Order address only Groups E through H.

As discussed further below, the Court finds that the metes-and-bounds description in each deed at issue in Groups E, F, and G rebuts the centerline presumption for each parcel at issue. Similarly, each deed for the Group H parcels excludes the fee interest to the right-of-way. Thus,

[3] The Court previously denied without prejudice Defendant's Partial Motion for Summary Judgment for Groups C through H with regard to non-representative parcels, so that Plaintiffs, upon their own request, would have a chance to gather chains of title for non-representative parcels. ECF No. 82 at 1–2.

Plaintiffs may only establish their ownership of a fee interest in the right-of-way through chains of title. The Court holds that Plaintiffs have not presented evidence establishing a fee interest in the right-of-way for nine parcels, that Plaintiffs have successfully established a fee interest in the right-of-way for one parcel, and that disputed issues of material fact preclude summary judgment for the remaining four parcels at issue. As such, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Partial Motion for Summary Judgment (ECF No. 63); **GRANTS IN PART** and **DENIES IN PART** Defendant's Supplemental Motion for Summary Judgment Regarding Chains of Title for Representative Parcels (ECF No. 92); and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment on Record Title Ownership of the Corridor for 8 Representative Plaintiffs (ECF No. 91), as set forth below.

In addition, the Court recognizes that its earlier decision concerning Groups A and B in Defendant's Motion affects some of the claims at issue here. *Bewley I*, slip op. at 63–65. The parties completed briefing on the pending summary judgment cross-motions before the Court issued its decision on Group A and B issues in Defendant's original Partial Motion for Summary Judgment (ECF No. 63). Where the railroad held the right-of-way in fee, Plaintiffs hold no interest. As such, the Court **DENIES AS MOOT** Plaintiffs' Motion for Summary Judgment (ECF No. 91) and Defendant's Supplemental Motion for Summary Judgment Regarding Chains of Title for Representative Parcels (ECF No. 92) with respect to the following claims, for which the Court has already granted summary judgment to Defendant: Fort Baker Ranch Company, parcel number 216-166-016; and The Hongran Cohen Trust, Trustee, Hongran Cohen & Sean Suh, parcel number 205-111-074. *Bewley I*, slip op. at 63–65 (dismissing claims of Fort Baker Ranch Company and The Hongran Cohen Trust).

## BACKGROUND

### I. Railroad Regulation and the Trails Act

During the last century, the United States experienced a sharp reduction in rail trackage, as railroads abandoned unused rights-of-way. *Preseault v. Interstate Com. Comm'n*, 494 U.S. 1, 5 (1990) (*Preseault I*). In response, Congress enacted several laws, including the National Trails System Act (Trails Act), 16 U.S.C. §§ 1241–1251, to address the loss of trackage. *See id*. The Trails Act, as amended, provides for the preservation of "established railroad rights-of-way for future reactivation of rail service" by authorizing the interim use of such rights-of-way[4] as recreational and historical trails. 16 U.S.C. § 1247(d). This process is referred to as "railbanking." *Memmer v. United States*, 50 F.4th 136, 139 (Fed. Cir. 2022). Section 1247(d) states in relevant part

> Consistent with the purposes of [the Trails Act], and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

16 U.S.C. § 1247(d).

Railroads and their "construction, acquisition, operation, abandonment, or discontinuance," including the railbanking process, fall under the exclusive jurisdiction of the Surface Transportation Board (STB or Board). 49 U.S.C. § 10501(b). Its authority over railroads

[4] A right-of-way is the land on which "the railroad had obtained a property interest allowing it to operate its equipment over the land involved." *Preseault v. United States*, 100 F.3d 1525, 1529 (Fed. Cir. 1996) (*Preseault II*). A railroad can hold different property interests in a right-of-way, including fee simple or an easement. *See id.* at 1533.

is exclusive, and Congress has stated that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id.*

The railbanking process works as follows. First, a rail carrier proposing to abandon any part of its rail line must either file an application to abandon pursuant to 49 U.S.C. § 10903 or file a notice of exemption to abandon the line proceedings pursuant to 49 U.S.C. § 10502. *Caldwell v. United States*, 391 F.3d 1226, 1229–31 (Fed. Cir. 2004). Pursuant to Section 10903, a railroad company that initiates abandonment proceedings may only abandon its line "if the Board finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance." 49 U.S.C. § 10903(d). A rail carrier is exempt from Section 10903 if the carrier files a notice of exemption with the STB in accordance with Section 10502 and the accompanying regulations. 49 U.S.C. § 10502(a). Pursuant to 49 C.F.R. § 1152.50, a carrier petitioning for exemption must certify that "no local traffic has moved over the line for at least 2 years" and meet other specified criteria. 49 C.F.R. § 1152.50(a)-(b), (d)(1).

Upon receiving these certifications, the STB must publish a notice in the Federal Register within twenty days noting the submission. 49 C.F.R. § 1152.50(d)(2)-(3). The purpose of the Federal Register notice is to "alert the public that following any abandonment of rail service and salvage of the line, the line may be suitable for other public uses, including interim trail use." *Id.* § 1152.50(d)(3).

If the prospective trail sponsor assumes responsibility for the right-of-way's management and legal liability and the rail carrier agrees to negotiate an interim trail use agreement, the STB will issue a Certificate of Interim Trail Use (CITU) (if proceeding under 49 U.S.C. § 10903) or a Notice of Interim Trail Use or Abandonment (NITU) (if proceeding under 49 U.S.C. § 10502).

*See* 49 C.F.R. § 1152.29. As is relevant in this case, a NITU acts to "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and railbanking . . . ; and permit the railroad to fully abandon the line if no agreement is reached one year after it is issued, subject to appropriate conditions . . . ." *Id.* § 1152.29(d)(1)(i). The Board will entertain requests to extend the one-year deadline to enable further negotiations. 49 C.F.R. § 1152.29(d)(1)(ii).

If the negotiations lead to a trail use agreement between the railroad company and the interested third party, then abandonment of the railroad line is stayed for the duration of the agreement. 16 U.S.C. § 1247(d) ("[I]f such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."). If this occurs, the interim trail use agreement is, in fact, interim in that relevant corridors remain available for future rail use. *See Preseault I*, 494 U.S. at 8. Importantly, the interim trail use agreement also prevents corridors from being deemed abandoned under state law during the period of interim trail use. *Id.* It is this preclusion of whatever state-law abandonment might otherwise occur that gives rise to takings claims. *Id.* at 9.

## II. The NCRA Right-of-Way[5]

At issue in this case are reversionary property interests that Plaintiffs claim along approximately 175 miles of the NCRA right-of-way, over which the NCRA and its predecessors ran trains in Mendocino, Trinity, and Humboldt Counties, California. ECF No. 28 (Third Amended Complaint or Complaint) ¶ 3. The State of California created the NCRA in 1989 to purchase railroads that would otherwise seek to discontinue service and abandon rail lines, as

[5] Unless otherwise noted, the facts set forth in this section are undisputed.

railroad traffic declined. North Coast Railroad Authority Act, § 1, 1989 Cal. Legis. Serv. 1085 (West).

Eventually, trains stopped running entirely on the right-of-way, and in 2018, the California legislature directed the state government to issue a report about the possibility of turning the rail line into a recreational use trail. *See* North Coast Railroad Authority Closure and Transition to Trails Act, § 2, 2018 Cal. Legis. Serv. 934 (West). The NCRA was subsequently renamed the Great Redwood Trail Agency (GRTA). Great Redwood Trail Act, § 10, 2021 Cal. Legis. Serv. 423 (West) (codified at Cal. Gov't Code § 93010(b)). The California legislature directed the newly-renamed GRTA to begin the regulatory process for railbanking and creating a trail on what was previously the rail line, through the federal STB's regulatory process. *Id.* § 19 (codified at Cal. Gov't Code § 93022(a)). When completed, the Great Redwood Trail is planned to become a "307-mile, world-class, multi-use rail-to-trail project connecting California's San Francisco and Humboldt Bays." Great Redwood Trail Agency, *The Great Redwood Trail*, https://thegreatredwoodtrail.org/great-redwood-trail/ (last accessed July 26, 2026).

On May 14, 2021, GRTA filed a notice of exemption with the STB pursuant to 49 U.S.C. § 10502, which began the regulatory process to turn the NCRA right-of-way into a trail. STB, *Decision and Notice of Interim Trail Use or Abandonment*, STB Docket No. AB 1305X (Oct. 24, 2022). The notice of exemption sought approval to convert 175.84 miles of the NCRA right-of-way into a trail. *Id.* The STB ruled upon the notice of exemption and issued the NITU on October 24, 2022. *Id.* Shortly thereafter, GRTA confirmed that it would begin interim trail use and railbanking. *See* GRTA, *Notice of Consummation of Railbanking*, STB Docket No. AB 1305X (Oct. 26, 2022). Plaintiffs contend that these filings constituted a taking of any reversionary interests in the rail right-of-way. ECF No. 28 (Third Amended Complaint or Compl.) ¶ 11.

Plaintiffs claim that they owned land adjacent to the rail line at the time of the alleged taking and that they also own fee interests to the land under the right-of-way. Compl. ¶¶ 12–108. Plaintiffs further claim that the STB's issuance of the NITU deprived them of their reversionary interest in the land by operation of the Trails Act, 16 U.S.C. § 1247(d), for which they are allegedly entitled to just compensation pursuant to the Fifth Amendment. *Id.* ¶ 112.

## **PROCEDURAL HISTORY**

Plaintiffs filed their first complaint on October 25, 2022. *See* ECF No. 1. After several rounds of settlement discussions, the parties stipulated dismissal of several claims on July 1, 2024. *See* ECF No. 27 at 1. On July 3, 2024, Plaintiffs filed their Third Amended Complaint, which is the current operative Complaint. *See* Compl. Defendant answered the Third Amended Complaint on August 13, 2024, and denied its liability toward every Plaintiff. *See* ECF No. 29 ¶¶ 12–108. On November 5, 2024, the Court set a schedule for discovery, which included expert and fact discovery for the valuation of representative parcels. *See* ECF No. 34 at 1.

On May 28, 2025, Defendant filed its Partial Motion for Summary Judgment. ECF No. 63 (Def. Mot.). On June 27, 2025, Plaintiffs filed their Response opposing Defendant's Motion. ECF No. 66 (Pl. Resp.). On July 28, 2025, Defendant filed a Reply in support of its Motion. ECF No. 67 (Def. Reply). The Court held oral argument on Defendant's Motion on December 17, 2025. Minute Entry dated Dec. 17, 2025.

On January 6, 2026, the Court granted limited additional discovery to Plaintiffs, as they had requested at the December 17, 2025, oral argument. ECF No. 78 (Discovery Order). The Discovery Order allowed Plaintiffs to conduct discovery into chains of title for certain parcels, for which Plaintiffs had relied upon the centerline presumption to establish their interests in the right-of-way. *Id.* at 1–2. In doing so, the Court exercised its discretion to ensure that all parties had a

sufficient opportunity to complete title-related discovery. *See id.* at 2. The Court also stayed Defendant's Motion in the interim. *Id.* at 3.

On January 9, 2026, Plaintiffs filed a Motion for Relief under Rule 60(b)(6). *See* ECF No. 79 (Rule 60 Motion). Plaintiffs sought three forms of relief from the Discovery Order: (1) an extension of time to gather chains of title for the non-representative parcels; (2) bifurcated proceedings on representative and non-representative parcels and modify the existing Discovery Order to apply only to the representative parcels; and (3) a decision on Defendant's Partial Motion for Summary Judgment (ECF No. 63), including on the centerline presumption, before Plaintiffs gathered chains of title for non-representative parcels. Rule 60 Mot. at 2.[6] On January 22, 2026, Defendant filed its Response in opposition (ECF No. 81) and on February 5, 2026, the Court conducted two hearings on the record concerning the Rule 60 Motion. *See* Minute Entries dated Feb. 5, 2026. During the afternoon hearing, the Court made several rulings on the record. *See* Feb. 5, 2026, PM Transcript.

On February 6, 2025, the Court issued an order adjusting discovery schedules and ordering further summary judgment briefing, in accordance with its rulings on the record at the previous day's afternoon hearing. ECF No. 82. The Court denied in part, without prejudice, Defendant's Motion (ECF No. 63) "only as to the arguments advanced in pages 22 through 36 of its Summary Judgment Motion with respect to the non-representative parcels identified in Groups C through H." *Id.* at 1–2. The Court ordered the parties to propose schedules to complete discovery into chains of title and to file summary judgment motions concerning chains of title and the application of California's centerline presumption. *Id.* at 2–3.

[6] Citations throughout this Memorandum and Order correspond to the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

On March 27, 2026, Plaintiffs filed a Motion for Partial Summary Judgment on Record Title Ownership of the Corridor for 8 Representative Plaintiffs.[7] ECF No. 91 (Pl. Mot.). On April 10, 2026, Defendant filed a Supplemental Motion for Summary Judgment Regarding Chains of Title for Representative Parcels. ECF No. 92 (Def. Suppl. Mot.). On April 17, 2026, Plaintiffs filed a Combined Response to Defendant's Supplemental Motion and Reply in support of Plaintiffs' Motion. ECF No. 94 (Pl. Suppl. Reply). On April 24, 2026, Defendant filed a Reply in support of Defendant's Supplemental Motion. ECF No. 95 (Def. Suppl. Reply).

The Court issued its first decision on Defendant's original Partial Motion for Summary Judgment on September 8, 2026. *Bewley I.*

## LEGAL STANDARD

### I. Summary Judgment

The Court may grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the United States Court of Federal Claims (RCFC or Rule(s)) 56(a). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts are material if they "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party seeking to establish a genuine dispute of material fact must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

[7] As noted, the Court previously denied, without prejudice, arguments in Defendant's Motion (ECF No. 63) concerning the title ownership issues raised for Groups C through H "with respect to the non-representative parcels." ECF No. 82 at 2.

declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

While "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962), summary judgment may still be granted when the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly probative." *Anderson,* 477 U.S. at 249–50 (internal citations omitted). The Court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita, Elec. Indus. Co., Ltd. v. United States*, 475 U.S. 574, 587 (1986).

## II. Rails-to-Trails Takings

The Fifth Amendment requires the federal government to pay just compensation when it "*requires* the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992) (emphasis in original); *see also Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831 (1987) (observing that the appropriation of a public easement across a private landowner's premises "constitute[s] the taking of a property interest"); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982). "Whether a [Fifth Amendment] taking has occurred is a question of law based on factual underpinnings." *Caquelin v. United States*, 959 F.3d 1360, 1366 (Fed. Cir. 2020). "[T]he property rights protected by the Takings Clause are creatures of state law." *Cedar Point v. Hassid*, 594 U.S. 139, 155 (2021); *see, e.g.*, *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1353−55 (Fed. Cir. 2013) (analyzing the scope of appellant's property interest under California law). Said differently, "existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of

establishing a cognizable taking." *Fishermen's Finest*, *Inc. v. United States*, 59 F.4th 1269, 1275 (Fed. Cir. 2023) (quoting *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 857 (Fed. Cir. 2009)).

The STB's issuance of a NITU stays the abandonment of the covered rail right-of-way. 16 U.S.C. § 1247(d). If this occurs, the NITU is, in fact, interim in that relevant corridors remain available for future rail use. *See Preseault I*, 494 U.S. at 8. Importantly, the interim trail use agreement also prevents corridors from being deemed abandoned under state law during the period of interim trail use. *Preseault I*, 494 U.S. at 8. It is this preclusion of state-law abandonment that gives rise to takings claims. *Id.* at 9. A plaintiff is entitled to compensation after the STB's issuance of a NITU if the plaintiff can demonstrate a "state law reversionary interest[]" in the land subject to the railroad right-of-way that is "effectively eliminated in connection with [the] conversion of [the] railroad right-of-way to trail use." *Caldwell*, 391 F.3d at 1228 (citing *Preseault II*, 100 F.3d at 1543); *see also Rogers v. United States*, 814 F.3d 1299, 1303 (Fed. Cir. 2015) ("The government must provide just compensation under the Fifth Amendment Takings Clause if the issuance of a NITU results in the taking of private property.").

## **DISCUSSION**

The Discussion proceeds in four parts, corresponding to the arguments raised in the various motions before the Court.

*First*, the Court evaluates the centerline presumption in California law and its application to the deeds categorized in Groups E, F, and G in Defendant's Partial Motion for Summary Judgment. Plaintiffs' Motion for Partial Summary Judgment and Defendant's Supplemental Motion Summary Judgment also contain arguments relevant to the centerline presumption, which

the Court assesses. The Court concludes that each deed in Groups E, F, and G contains a description of the conveyed property that rebuts the centerline presumption.

*Second*, the Court evaluates the arguments concerning the Group H deeds, which, Defendant argues, contain descriptions that explicitly exclude the land within the right-of-way from any conveyance. The Court agrees that the Group H deeds convey no interest to land within the right-of-way.

*Third*, the Court assesses the chains of title that Plaintiffs have submitted as evidence for their Motion for Partial Summary Judgment. Under California law, the chains of title fail to establish any fee interest in the right-of-way for nine parcels and successfully establish a fee interest in the right-of-way for one parcel. Disputed issues of material fact preclude summary judgment for the remaining four parcels at issue.

*Finally*, where Plaintiffs have failed to present any evidence that they hold a fee interest in the right-of-way, Defendant is entitled to summary judgment. Plaintiffs argue that even if there is no evidence that they hold a fee interest in the right-of-way, a disputed issue of material fact remains about *who* owns the fee interest in the right-of-way. As the Court discusses, Plaintiffs misunderstand the summary judgment standard. The question is not *who* owns the fee interest, but rather whether *Plaintiffs* can establish that they own a fee interest. Where Plaintiffs have presented no evidence of their ownership, Defendant is entitled to summary judgment.

## I. Centerline Presumption

The parties dispute the evidence required to rebut the centerline presumption in a deed's metes-and-bounds description of a parcel's boundaries. Defendant argues that, under California law, a metes-and-bounds description that does not include the right-of-way in the conveyed property can rebut the centerline presumption. In contrast, Plaintiffs argue that a metes-and-

bounds description that does not include an interest in the right-of-way is insufficient to rebut the centerline presumption.

*First*, the Court evaluates California precedent concerning the rebuttal of the centerline presumption and determines that a metes-and-bounds description alone can rebut the centerline presumption, as Defendant correctly argues. *Second*, the Court analyzes whether the deeds in each of Groups E, F, and G contain language in their metes-and-bounds descriptions that California courts have previously held rebuts the centerline presumption. The Court finds that Defendant has rebutted the centerline presumption for all challenged deeds in Groups E, F, and G.

### A. <u>California's Centerline Presumption</u>

#### *1. Rebutting California's Centerline Presumption*

The centerline presumption dictates that "[a] transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." Cal. Civ. Code § 1112; *see also* Cal. Civ. Code § 831 ("An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."). California courts have extended the statute's reference to "a highway" to railways, so that the buyer of land abutting a rail right-of-way is presumed to own to the centerline of the railroad. *See Freeman v. Affiliated Prop. Craftsmen*, 72 Cal. Rptr. 357, 364 (Cal. App. 1968). The presumption means that even a deed that includes a metes-and-bounds description of property can include the land underneath the right-of-way if the description "either directly or indirectly refers to the [right-of-way] as a boundary." *City of Redlands v. Nickerson*, 10 Cal. Rptr. 431, 434 (Cal. App. 1961). This presumption is tied to the "monument rule" of deed descriptions: "[i]n the absence of any qualifying term, the designation in a conveyance of any physical object or monument as a boundary implies the middle or central

point of such boundary." *Faus v. Nelson*, 50 Cal. Rptr. 483, 485 (Cal. Dist. Ct. App. 1966). That means that a description's reference to a right-of-way (without any modifier, such as a reference specifically to the sideline of the right-of-way) refers to the centerline of that right-of-way. *Id.* Thus, when a description states that a parcel is "bounded . . . on the north by the south side of Spring street"—the street, not the sideline of the street—the presumption applies, and the property "must be taken as carrying the title to . . . the center line of the street." *Brown v. Bachelder*, 7 P.2d 1027, 1028 (Cal. 1932). In contrast, a reference to the sideline as a boundary is an essential distinction, as a reference to the sideline as a boundary is much more likely to rebut the centerline presumption. *See id.*

The party seeking to rebut the presumption bears the burden of proof. *See Taylor v. Cont'l S. Corp.*, 233 P.2d 577, 582 (Cal. Dist. Ct. App. 1951). The language used in a deed's metes-and-bounds description can be sufficient proof to rebut the presumption. *Millyard v. Faus*, 73 Cal. Rptr. 697, 703 (Cal. Ct. App. 1968). For example, a description that says a property runs "to" or "along" the sideline of a right-of-way can rebut the presumption, whereas a description saying a property runs "along" the right-of-way itself (not the sideline) will more likely invoke the presumption. *Warden v. S. Pasadena Realty & Improvement Co.*, 174 P. 26, 27 (Cal. 1918); *see also Sutton v. United States*, 107 Fed. Cl. 436, 441 (2012) ("[W]here a deed contains a description of property extending a boundary to the edge of a road or railroad corridor, the center line presumption is rebutted."). California courts have repeatedly held that the presumption will be rebutted if a description of the property "uses a side line of the street, rather than the street itself, as a boundary." *Speer v. Blasker*, 15 Cal. Rptr. 528, 530 (Cal. Ct. App. 1961); *see Berton v. All Persons*, 170 P. 151, 153 (Cal. 1917) (presumption rebutted when description stated property ran

"along" sideline of street); *Severy v. Cent. Pac. R.R. Co.*, 51 Cal. 194, 197 (1875) (presumption rebutted when description said property line ran "along the easterly line" of a right-of-way).

Plaintiffs argue that the text of a deed alone is insufficient evidence to rebut the centerline presumption: "even where a legal description describes a right of way as a boundary using a metes and bounds description, that description alone does not rebut the centerline presumption." Pl. Mot. at 13; *see* Pl. Resp. at 35–36.[8] Plaintiffs cite *Freeman*, 72 Cal. Rptr. at 364, for the proposition that "even where there is a metes and bounds description, the Court should not presume a grantor's intent to withhold an interest underlying a railroad right of way." Pl. Mot. at 13. Plaintiff is correct that California recognizes a presumption that the conveyance of land includes the interest underlying the right-of-way, and that this presumption *can* apply when a deed uses a metes-and-bounds description; however, the relevant point of law for this case is that the presumption is rebutted if "a different intent appears from the grant." *Freeman*, 72 Cal. Rptr. at 364 (quoting *Neff v. Ernst*, 311 P.2d 849, 853 (Cal. 1957)). In *Freeman*, the deeds at issue did not rebut the centerline presumption because the deeds defined a parcel's boundaries by reference "to a lot number of a particular tract" in a subdivision map. *Id.* at 734. The map drew the parcel line at the edge of a rail right-of-way, rather than through the centerline, but that line on a plat map "is not of itself

[8] Plaintiffs also argue that it takes "substantial evidence" to rebut the presumption, and that deed language alone cannot meet this burden. Pl. Resp. at 36. However, "substantial evidence" is the standard for a California appellate court to overturn a trial court's findings of fact, not an evidentiary standard required to rebut the centerline presumption at the court of first instance. *See Freeman*, 72 Cal. Rptr. at 366 (applying "substantial evidence" standard to review trial court's conclusions of fact); *Millyard*, 73 Cal. Rptr. at 700 (same); *see also* Jon B. Eisenberg et al., *California Practice Guide: Civil Appeals and Writs* § 8:38 (2025) ("On appeals challenging sufficiency of the evidence, appellate courts are guided and restricted by the 'substantial evidence' rule: The trial court's resolution of disputed factual issues must be affirmed so long as supported by 'substantial' evidence."); *Ramirez v. Yosemite Water Co.*, 978 P.2d 2, 13 (Cal. 1999) ("[A]ppellate courts normally defer to trial courts' resolution of conflicting evidence when there is substantial evidence to support the trial court's decision.").

sufficient to exclude the conveyance of title to the center of the railroad." *Id.* Thus, although the centerline presumption applied in *Freeman*, that decision did not announce a broad rule that a metes-and-bounds description can never rebut the centerline presumption. *See id.* at 364. On the other hand, California courts have clearly that established deed language alone can rebut the presumption, such as when a metes-and-bounds description "uses a side line of the street, rather than the street itself, as a boundary." *Speer v. Blasker*, 15 Cal. Rptr. 528, 530 (Cal. Dist. Ct. App. 1961); *see also Millyard*, 73 Cal. Rptr. at 703.

*2. Effect of Anderson Upon the Centerline Presumption*

Throughout its arguments that deed language alone cannot rebut the centerline presumption, Plaintiffs confuse the general rule (the centerline presumption) and its exceptions (certain deed language rebuts the presumption). Plaintiffs fail to identify any precedent that rejects the rule that metes-and-bounds deed language alone can rebut the centerline presumption; instead, Plaintiffs identify several cases in which the centerline presumption applied, but are irrelevant to the instant case. *See* Pl. Suppl. Reply at 10.

In particular, Plaintiffs attack Defendant's reliance upon several older decisions of the California Supreme Court to establish deed language that rebuts the centerline presumption. Pl. Mot. at 15. Defendant relies upon several decisions from 1918 and earlier: *Severy v. Central Pacific Railroad Co.*, 51 Cal. 194 (1875), *Alameda Macademizing Co. v. Williams*, 12 P. 530 (Cal. 1886), *Berton v. All Persons*, 170 P. 151 (Cal. 1917), and *Warden v. South Pasadena Realty & Improvement Co.*, 174 P. 26 (Cal. 1918). Def. Mot. at 24, 27. Plaintiffs argue that these cases have not been good law since the California Supreme Court's decision in *Anderson v. Citizens' Savings & Trust Co.*, 197 P. 113 (Cal. 1921). Pl. Mot. at 15 ("*Anderson* represented a monumental

shift in California's application of the centerline presumption and rendered all prior cases, including every single case upon which the government relies, inapplicable.").

The deed at issue in *Anderson* conveyed a parcel of land defined by a recorded subdivision map (rather than a metes-and-bounds description), which abutted an abandoned street. *Anderson*, 197 P. at 114–115. The California Supreme Court ruled that the centerline presumption applied to the abandoned streets at issue in that particular case because there was an "absence of any circumstances showing clearly that the parties intended otherwise." *Id.* at 118. However, the Court cannot identify any discussion in *Anderson* that changes the application of the centerline presumption when a deed uses a metes-and-bounds description. *See id.* Furthermore, the *Anderson* decision neither discusses nor cites any of the four California Supreme Court decisions that Plaintiffs claim it overrules. *See id*; Pl. Mot. at 15. To the extent that a relevant discussion appears in *Anderson*, it is dicta, as the deeds at issue relied upon plat maps to define parcels, rather than metes-and-bounds descriptions. *See Anderson*, 197 P. at 118. *Anderson* could not have overruled prior California Supreme Court cases concerning metes and bounds descriptions because "precedent cannot be overruled in dictum." *Trope v. Katz*, 902 P.2d 259, 287 (Cal. 1995); *see Speer*, 15 Cal. Rptr. at 530–31 (holding that *Anderson* does not apply when "the deed describes the [subject] property by [metes] and bounds]").

In Plaintiffs' Supplemental Reply brief, Plaintiffs cite three more California Supreme Court decisions that, they argue, change the evidence required to rebut the centerline presumption. Pl. Suppl. Reply at 11–13 ("[A]ll California decisions post-*Anderson* confirm that mere language suggesting the possibility of such a contrary intent, such as a metes and bounds description, does not provide that substantial evidence.").

Importantly, none of Plaintiffs' three post-*Anderson* California Supreme Court cases hold that a metes-and-bounds description that excludes the right-of-way can never rebut the centerline presumption. *See* Pl. Suppl. Reply at 11–13. First, Plaintiffs cite *Brown v. Bachelder*, 7 P.2d 1027, 1028 (Cal. 1932). Pl. Suppl. Reply at 11. There, the California Supreme Court held that a parcel "bounded . . . on the north by the south side of Spring street" included "the south half" of Spring street, up to the centerline. *Brown*, 7 P.2d at 1028. The decision did not include any other language suggesting that a metes-and-bounds description could *never* rebut the centerline presumption, merely that the description in the particular facts of the case rebutted the presumption. *See id.* To the contrary, *Brown* stated (in dicta) that a metes-and-bounds description can rebut the centerline presumption: "[had] [the grantor] wished to exclude any portion of the strip marked as a street on the map, he no doubt would have adopted a description by metes and bounds which would have excluded such strip from the parcel conveyed." *Id.*

Second, Plaintiffs cite *Allan v. City and County of San Francisco*, 61 P.2d 1175, 1176–77 (Cal. 1936). Pl. Suppl. Reply at 12. There, the California Supreme Court held that the centerline presumption applied and was not rebutted when deeds contained both metes-and-bounds descriptions and references to a parcel map. *Allan*, 61 P.2d at 1176–77. However, *Allan* did not analyze whether the language of the metes-and-bounds description in the deeds excluded a right-of-way abutting the parcel. *See id.* at 1177. In addition to the metes-and-bounds descriptions and references to parcel maps, the deeds explicitly conveyed "all the other lots or parts of lots" that the grantee owned in the area and had not previously sold, in addition to the parcels described. *Id.* The inclusion of "all the other lots or parts of lots" explicitly included any interest in a right-of-way in the conveyance, so there was no need to reach the issue of the centerline presumption, which governs the implicit inclusion of land within a right-of-way. *See id.*

Third, Plaintiffs cite *Machado v. Title Guarantee & Trust Co.*, 99 P.2d 245, 247 (Cal. 1940). Pl. Suppl. Reply at 12. There, the California Supreme Court stated that the centerline presumption could only be rebutted by a metes-and-bounds description in "those situations where the description by metes and bounds is the result of the free exercise of choice by the grantor." *Machado*, 99 P.2d at 247.[9] There was no free exercise of choice in the deed's description of the property at issue in *Machado* because the land was divided by referees in partition pursuant to a court order. *Id.* However, the California Supreme Court did not overrule any precedent concerning the rebuttal of the centerline presumption, as it characterized its decision as not "detracting from the cases relied on by the appellants" involving the rebuttal of the centerline presumption by a metes-and-bounds description. *Id.* Thus, none of the cases that Plaintiffs cite indicate that the older cases cited by Defendant have been overruled or that a metes-and-bounds description that excludes the right-of-way cannot rebut the centerline presumption.

Finally, Plaintiffs attempt to explain that they "never asserted" that "*Anderson* overruled the earlier California Supreme Court precedent." Pl. Suppl. Reply at 15. Instead, Plaintiffs argue that the earlier precedent is limited "to the facts of those particular cases"; however, Plaintiffs fail to present any California case that would prove or support this argument. *See id.* Instead, since the *Anderson* and *Machado* decisions, California courts have continued to cite the older precedent on which Defendant relies for examples of metes-and-bounds descriptions that rebut the centerline presumption. *See Millyard*, 73 Cal. Rptr. at 703 (citing *Warden*, 174 P. at 27); *Speer*, 15 Cal. Rptr. at 530 (citing *Alameda Macademizing Co. v. Williams*, 12 P. 530, 533 (Cal. 1886) and *Severy*, 51 Cal. at 197); *Nickerson*, 10 Cal. Rptr. at 436 (citing *Warden*, 174 P. at 27). As California courts

[9] This is a different case than *Machado v. So. Pac. Transp. Co.*, 284 Cal. Rptr. 560 (Cal. Ct. App. 1991), to which this Court's prior Memorandum and Order cited for factors used to determine whether a deed conveys fee simple or an easement. *Bewley I*, slip op. at 26.

have continued to cite the pre-*Anderson* precedent for the proposition that certain deed language rebuts the centerline presumption, the Court concludes that this precedent remains good law in California, and this Court must apply California law to interpret California property rights. *See ATS Ford Drive Inv., LLC v. United States*, 136 F.4th 1066, 1170 (Fed. Cir. 2025) ("[W]e must apply the law of the state where the property interest arises." (quoting *Chicago Coating Co. v. United States*, 892 F.3d 1164, 1170 (Fed. Cir. 2018))).

### B. Group-by-Group Analysis

To rebut the centerline for each of Groups E, F, and G, Defendant matches the language in Plaintiffs' source deeds to California precedent in which the centerline presumption did not apply. *See* Def. Mot. at 29–32. In contrast, even with the multiple rounds of briefing on this issue, Plaintiffs do not quote any decisions in which a deed contained similar language in a metes-and-bounds description as the deeds in Groups E, F, and G, and the centerline presumption was not rebutted. *See* Pl. Resp. at 39–40; Pl. Mot. at 18–19; Pl. Suppl. Reply at 30–39. Instead, Plaintiffs repeatedly fall back on their argument that a metes-and-bounds description alone cannot rebut the centerline presumption. *See* Pl. Resp. at 39; Pl. Mot. at 19; Pl. Suppl. Reply at 26–27. The Court has rejected that argument. *See supra* Discussion I.A.

#### *1. Group E: Property "to" and "along" the Sideline*

Group E plaintiffs have title deeds that describe their property as running "to" the sideline of the rail right-of-way and "along" the sideline. Def. Mot. at 30 ("The title deeds for Group E Plaintiffs do not merely identify the rail corridor as the boundary of Plaintiffs' property, but instead specify the side line of the corridor."). For example, Plaintiff Steven Danielson owns a parcel for which the boundary runs "to the Easterly line of the right of way of the Northwestern Pacific Railroad Company; thence along the Easterly line of said right of way." ECF No. 64-30 at 3, PLT

000990. Plaintiff Stanwood & Pamela Murphy Family Trust has a parcel that runs "to the East line of the right of way of Northwestern Pacific Railroad Company; thence . . . along the said East line." ECF No. 64-28 at 27, PLT000799.

Defendant argues that these deeds rebut the centerline presumption for Group E plaintiffs because they "do not merely identify the rail corridor as the boundary of Plaintiffs' property, but instead specify the side line of the corridor." Mot. at 30. Plaintiffs argue that "a metes and bounds description alone does not rebut the centerline presumption." Pl. Resp. at 39.[10] The Court has already disposed of this argument. *Supra* Discussion I.A. In addition, Plaintiffs argue that following "significant precedent from various California Courts post-*Anderson*, the fact that the railroad corridor bounds Plaintiffs' parcels confirms, rather than rebuts, the centerline presumption's applicability." Pl. Mot. at 18.[11]

To the contrary, longstanding California precedent holds that a metes-and-bounds description of a parcel that runs "to" and then "along" the sideline of a right-of-way rebuts the centerline presumption. *See Alameda Macademizing Co.*, 12 P. at 533. In *Alameda Macademizing Co.*, the title deed at issue described a parcel "running . . . *to* the said line of Second avenue; thence southerly, *along* said line of Second avenue." *Id.* (emphasis added). The California Supreme Court, applying the same statutory centerline presumption that remains in force today, wrote that "[w]ith such a description, we hold the presumption that the lot runs to the center of . . . Second avenue is rebutted." *Id.* In *Warden*, the California Supreme Court reiterated that a metes-and-bounds description that runs "to" the sideline of a right-of-way and then "along" that sideline rebuts the centerline presumption: "[i]t does not give the grantee title to the center of that street, as

[10] Plaintiffs make this same argument for Groups E, F, and G. Pl. Resp. at 39.

[11] Plaintiffs make this same argument for Groups E and F. Pl. Mot. at 18.

in a case where the boundary line is said to run 'along a street.'" *Warden*, 174 P. at 27. The distinction in *Warden* is between parcels that run along the sideline and along the street itself. *See id.* In 1961, after *Anderson* and the subsequent California Supreme Court decisions that Plaintiffs cite, the California District Court of Appeal affirmed the proposition that a description running "along" a sideline rebuts the centerline presumption. *Speer*, 15 Cal. Rptr. at 531.[12] Thus, it is well-established that a metes-and-bounds description that runs "to" and "along" the sideline of a right-of-way rebuts the centerline presumption. *See Alameda Macademizing Co.*, 12 P. at 533; *Warden*, 174 P. at 27; *Speer*, 15 Cal. Rptr. at 531.

Group E Plaintiffs have deeds whose metes-and-bounds descriptions describe parcel boundaries running "to" and "along" the sideline of the railroad right-of-way. *See* ECF No. 64-30 at 3, PLT 000990 ("to the Easterly line of the right of way of the Northwestern Pacific Railroad Company; thence along the Easterly line of said right of way"); ECF No. 64-28 at 27, PLT000799 ("to the East line of the right of way of Northwestern Pacific Railroad Company; thence . . . along the said East line"). This language is nearly identical to the language that California courts have long said rebuts the centerline presumption. *See Alameda Macademizing Co.*, 12 P. at 533; *Warden*, 174 P. at 27; *Speer*, 15 Cal. Rptr. at 531. As such, the Group E deeds rebut the centerline presumption.[13]

---

[12] Plaintiffs argue that *Speer* does not apply in this case because, there, evidence in addition to the metes-and-bounds description supported the rebuttal of the centerline presumption. Pl. Suppl. Reply at 20. However, the decision states that the language in the description alone would have rebutted the presumption: "under settled rules [the deed] would not have conveyed the property therein described to the center of Buell Street." *Speer*, 15 Cal. Rptr. at 531. The *Speer* court only considered the additional evidence after concluding that the deed language alone was sufficient to rebut the centerline presumption. *See id.* at 533.

[13] The Court thus holds that the centerline presumption has been rebutted for claims associated

*2. Group F: Property Lying Opposite the Sideline*

Like the Group E deeds, the title deeds for Group F parcels use the NCRA right-of-way's sideline as a boundary line. Thus, for example, the title deed that applies to two parcels owned by Plaintiff Swallowtail Ranch grants land "lying West of the West line of the right of way of the Northwestern Pacific Railroad Company." ECF No. 63-11 at 4, PLT000016. A title deed that applies to two parcels owned by Plaintiff Stanwood & Pamela Murphy Family Trust grants land "which lies Northerly and Westerly of the Westerly line of the right of way heretofore conveyed to the Eel River and Eureka Railroad Company (now Northwestern Pacific Railroad Company)." ECF No. 64-28 at 21, PLT000793. Group F title deeds differ from Group E deeds because the Group F deeds define properties as "lying" in a direction "of" the sideline, opposite the right-of-way, whereas the Group E deeds state that parcels run "to" or "along" the sideline. Def. Mot. at 30–31.

Defendant argues that the metes-and-bounds descriptions in Group F deeds "rebut the center line presumption by identifying a boundary of the rail corridor as a border to their property." Def. Mot. at 31. Plaintiffs argue that "a metes and bounds description alone does not rebut the centerline presumption." Pl. Resp. at 39. The Court has already disposed of Plaintiffs' argument. *Supra* Discussion I.A. Plaintiffs also argue that following "significant precedent from various California Courts post-*Anderson*, the fact that the railroad corridor bounds Plaintiffs' parcels

with the following Plaintiffs and parcels: Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 306-211-004; Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 305-201-016; Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 305-171-015; Steven Danielson, 305-131-017; Redwood Coast Trucking, Inc., 506-081-017; Redwood Coast Trucking, Inc., 506-081-016. If the claim had not been dismissed in *Bewley I*, slip op. at 64–65, the Court would hold that the centerline presumption had been rebutted for the claim by Plaintiff The Hongran Cohen Trust, Trustee, Hongran Cohen, Sean Suh, 205-111-074.

confirms, rather than rebuts, the centerline presumption's applicability." Pl. Mot. at 18. Neither party identifies any cases in which a metes-and-bounds description states that a parcel "lies" in a direction opposite the sideline of a right-of-way. *See* Def. Mot. at 30–31; Def. Suppl. Mot. at 14–15; Pl. Resp. at 39; Pl. Mot. at 18.

Under California law, "the intention of the parties to a grant is properly gathered, if possible, from the instrument itself." *Everett v. Bosch*, 50 Cal. Rptr. 813, 818 (Cal. Dist. Ct. App. 1966). The descriptions here are unambiguous: the sideline (not the centerline) is the parcel boundary, and the parcel only lies opposite the right-of-way. *See, e.g.*, ECF No. 63-11 at 4, PLT000016 ("lying West of the West line of the right of way of the Northwestern Pacific Railroad Company"). The unambiguous use of the sideline as a monument in the description is a decisive signal that the centerline presumption does not apply. *See Alameda Macademizing Co.*, 12 P. at 533 (centerline presumption rebutted when "it clearly appears that [the deed] was intended to make the side line of the street as a boundary instead of the center"); *Speer*, 15 Cal. Rptr. at 530 ("Excluded from the [presumption], because the reason therefor does not apply, is a deed wherein the description of the property conveyed uses a side line of the street, rather than the street itself, as a boundary."). As such, the language of the Group F deeds rebuts the centerline presumption.[14] *See* ECF No. 63-11 at 4, PLT000016; ECF No. 64-28 at 21, PLT000793.

[14] The Court thus holds that the centerline presumption has been rebutted for claims associated with the following Plaintiffs and parcels: Swallowtail Ranch, 036-185-015; Swallowtail Ranch, 036-185-016; Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 305-201-016; Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 305-171-015. If the claim had not been dismissed in *Bewley I*, slip op. at 63, 65, the Court would hold that the centerline presumption had been rebutted for the claim by Plaintiff Fort Baker Ranch Company, 216-166-016.

### 3. *Group G: Deeds that Define Parcels Lying in a Direction "of" a Right-of-Way*

Defendant also seeks to rebut the centerline presumption for certain deeds that refer to the right-of-way (rather than the sideline of the right-of-way) as the boundary and place the parcel outside the right-of-way. Mot. at 31–32. Group G deeds state that each parcel "lies" in some direction "of" the right-of-way. *See, e.g.*, 64-45 at 4, PLT001423 ("that portion . . . which lies on the Northerly side of the right of way of the Northwestern Pacific Railroad"). Defendant argues that these descriptions rebut the centerline presumption under the precedent set by *Canal Oil Co. v. National Oil Co.*, 66 P.2d 197, 201 (Cal. Dist. Ct. App. 1937), in which similar descriptions in deeds granting land on either side of a canal rebutted the centerline presumption. Def. Mot. at 31–32; Def. Suppl. Mot. at 25. Plaintiffs argue that "*Canal Oil* is inapplicable for myriad reasons." Pl. Suppl. Reply at 21 n.15. The Court concludes that the Group G deeds rebut the centerline presumption under the rule set by *Canal Oil*. *See Canal Oil*, 66 P.2d at 201.

In *Canal Oil*, title deeds conveyed land bordering each side of a canal. *Canal Oil*, 66 P.2d at 199–200. One of the deeds at issue stated that the "property conveyed therein lay 'west of the right of way of the East Side Canal.'" *Id.* at 200. The other deed at issue stated "that the property conveyed lay 'northeasterly of the right of way of the East Side Canal Company.'" *Id.*[15] The *Canal Oil* court held that the deeds were "not susceptible of being construed so as to convey title to the center of the right of way." *Id.* at 201. The above-quoted language in each deed (stating that the conveyance lay in a direction "of" the right-of-way) indicated that the deeds "specifically exempt from the grant's title to the right of way." *Id.* The description that a parcel lies in a

[15] The second deed at issue also contained a provision excepting "the right of way of the East Side Canal Company" from the conveyance. *Canal Oil*, 66 P.2d at 200. In the instant case, similar exception clauses are discussed in Group H. *See infra* Discussion II.

direction "of" a right-of-way rebuts the centerline presumption because the description does not use the centerline as the boundary:

> The deeds upon which they rely do not refer to the canal as a boundary line of their property. Those deeds merely locate the properties which are thereby conveyed as "west of the right of way," "northeasterly of the right of way" and "excepting therefrom the right of way."

*Id.* More recently, a California federal court interpreting California law has cited *Canal Oil* and held that a deed describing property as lying "northeasterly" of a right-of-way "may not be subject to the centerline presumption because their deed's metes and bounds did not designate the railroad right-of-way as a boundary." *In re SFPP Right-of-Way Claims*, No. 15-718, 2017 WL 2378363, at *15 (C.D. Cal. May 23, 2017).

The Group G parcels are defined according to metes-and-bounds descriptions that define the parcels as lying in a direction "of" the railroad right-of-way. *See, e.g.*, ECF No. 64-45 at 4, PLT001423 ("that portion . . . which lies on the Northerly side of the right of way of the Northwestern Pacific Railroad"). This matches deed language that rebuts the centerline presumption under California law. *See Canal Oil*, 66 P.2d at 200 ("property conveyed therein lay 'west of the right of way of the East Side Canal'"); *In re SFPP Right-of-Way Claims*, 2017 WL 2378363, at *15 ("their property lies 'northeasterly' of the right-of-way"). As such, the centerline presumption is rebutted for Group G parcels.

Plaintiffs argue that *Canal Oil* does not apply to railroad rights-of-way because "the right-of-way at issue was not a road, street, or highway, or any public way, so the centerline presumption did not apply." Pl. Suppl. Reply at 21 n.15.[16] The *Canal Oil* decision itself states that it does not

[16] Plaintiffs also argue that *Canal Oil* does not apply because "the deeds themselves did not identify the canal as a boundary line." Pl. Suppl. Reply at 21 n.15. To the extent that Plaintiffs argue the

interpret the centerline presumption that applies to streets and highways because it concerned a canal, which "is a mere private easement." *Canal Oil*, 66 P.2d at 201. However, a California appellate court has rejected the same argument interpreting *Canal Oil* that Plaintiff makes. *See Nelson*, 50 Cal. Rptr. at 486–87. In *Nelson*, a party argued that, under the rule set forth in *Canal Oil*, the centerline presumption would not apply to privately held easements, such as railroad rights-of-way. *Nelson*, 50 Cal. Rptr. at 485–86. California's District Court of Appeal rejected this argument and held that the *Canal Oil* court applied the same centerline presumption that applies to public roads and highways (and private railways). *Id.* at 487. "[I]t is clear that the decision of the [*Canal Oil*] court is not based on any theory emphasizing the distinction between the public character of a highway as opposed to the private nature of a canal easement, for to do so would have been futile." *Id.* at 486. Instead, "[t]he real basis for the decision" was that the *Canal Oil* "court simply decided that the trial court was correct in construing the . . . deeds as providing true exceptions to the land conveyed." *Id.* at 487. As California law has already rejected Plaintiffs' argument regarding the applicability of *Canal Oil*, the Court must do so as well here.[17] *See id.*; *see also ATS Ford Drive*, 136 F.4th at 1170.

---

deeds at issue in *Canal Oil* did not specifically reference the canal, that is false: a deed at issue in the case "recited that the property conveyed therein lay 'west of the right of way of the East Side Canal.'" *Canal Oil*, 66 P.2d at 200. Alternatively, to the extent that Plaintiffs mean to distinguish their deeds from those at issue in *Canal Oil*, Plaintiffs have failed, as the Group G deeds contain materially identical language to the deeds in *Canal Oil*. *Compare id.* ("property conveyed therein lay 'west of the right of way'")*, with* ECF No. 64-45 at 4, PLT001423 ("that portion . . . which lies on the Northerly side of the right of way").

[17] The Court thus holds that the centerline presumption has been rebutted for claims associated with the following Plaintiffs and parcels: Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg, 201-311-019; Trustees Philip Nyberg & Melinda Nyberg, 201-311-024; Trustees Philip Nyberg & Melinda Nyberg, 201-311-004; Trustees Philip Nyberg & Melinda Nyberg, 201-322-008. If the claim had not been dismissed in *Bewley I*, slip op. at 63, 65, the Court would hold that the centerline presumption had been rebutted for the claim by Plaintiff Fort Baker Ranch Company, 216-166-016.

## II. Group H: Deeds Explicitly Excepting the Right-of-Way

Whereas the centerline presumption addresses whether a deed implicitly includes land in the right-of-way, the issue for Group H is whether the deeds explicitly exclude land in the right-of-way from the conveyance. Defendant argues that the Group H title deeds both unambiguously reference the land within the railroad right-of-way (so that no presumption is needed) and exclude that land from any grant. Def. Mot. at 34; Def. Suppl. Mot. at 15, 22. In contrast, Plaintiffs argue that the exception clauses are amenable to a contrary interpretation: rather than withholding any fee interest in the right-of-way, Group H deeds might have included these provisions to withhold the easement interest that had already been granted to the railroad. Pl. Resp. at 40 ("[D]eed language 'excepting' a railroad right-of-way from the conveyed estate does not indicate an intention to exclude from the conveyed estate the fee simple land but merely the interest identified in the excepting clause."); Pl. Mot. at 19 (same).

Group H deeds expressly except the "portion" of the grant "lying within the boundaries of" the NCRA right-of-way. *See, e.g.*, ECF Nos. 63-11 at 4, PLT000016 ("EXCEPTING THEREFROM THE FOLLOWING: Any portion of the above described lands lying within the boundaries of the Northwestern Pacific Railroad rights of way."); 64-28 at 26, PLT000798 ("ALSO EXCEPTING FROM Parcels 1 and 2 above described, those portions thereof lying within the boundaries of the easement for railroad and transportation purposes conveyed to Northwestern Pacific Acquiring Company.").

The California Supreme Court has held that a deed does not convey land within a railroad right-of-way if it contains language excepting the "portion" of a grant "lying" within the right-of-way. *See Los Angeles & Redondo R.R. Co. v. New Liverpool Salt Co.*, 87 P. 1029, 1029–30 (Cal. 1906). There, the California Supreme Court interpreted an option clause in a lease agreement, by

which a lessor had the right to purchase the premises it leased. *Id.* at 1029. When the lessor (the defendant in the suit before the California Supreme Court) invoked the option, the option clause was incorporated into the deed for the purchase of the land. *Id.* As incorporated into the option clause, the lease agreement defined the parcel's boundaries and then stated "saving and reserving . . . that portion thereof lying between the tracks of the Los Angeles & Redondo Railway Company, . . . and also saving and reserving a strip of land twenty feet in width, being ten feet on either side of the center line of said railroad tracks." *Id.* at 1029–30. The California Supreme Court held that this language constituted an exception from the conveyance in both the lease and the sale of land in fee, rather than a notification of the existing easement:

> The saving clause in the description is not a reservation of an easement, merely, over a part of the leased premises. Its effect is to save and except from the operation of the lease the fee of the area between the tracks and for 10 feet on each side of the center thereof . . . . That space formed no part of the leased premises, and was not covered by the option clause giving the right to purchase the premises actually leased.

*Id.* at 1030. Plaintiffs argue that *New Liverpool* does not control this case because "the exception at issue came in a lease agreement" and the California Supreme Court considered evidence extrinsic to the excepting clause. Pl. Suppl. Reply at 27. However, the California Supreme Court in *New Liverpool* was clear that its interpretation did not just apply to the lease, but also to the "option clause giving the right to purchase the premises actually leased." *New Liverpool*, 87 P. at 1030. In addition, although there was extrinsic evidence of usage available to the California Supreme Court, the language of the option clause alone would have been sufficient to establish the exception to the conveyance. *See id.* Thus, *New Liverpool* stands for the proposition that an exception of "that portion thereof lying" within a right-of-way from the sale of land excludes the fee interest under the right-of-way, rather than just the easement interest already conveyed. *New Liverpool*, 87 P. at 1029–30.

Plaintiffs respond that under California law, an exception in a deed does not limit the grant of fee ownership to that land if "excepting language clearly and unambiguously excepts a previously conveyed easement." Pl. Resp. at 40.[18] Plaintiffs rely upon a California decision holding that "the obvious purpose[] of the exception was to exclude from the operation of this deed property which already had been conveyed and over which the grantor had no legal control, i.e., the easement." *Id.* (quoting *Kraemer v. Kraemer*, 334 P.2d 675, 682 (Cal. Dist. Ct. App. 1959)). In *Kraemer*, deed language excepting the "tract *conveyed* by [the grantor] to the [easement holder] for reservoir purposes" excepted only the easement that had already been conveyed, rather than the fee interest underlying the easement. *Kraemer*, 334 P.2d at 681 (emphasis in original). While this quote from *Kraemer* establishes that an exception of a "tract *conveyed*" for an easement does not except the fee interest under the easement, it does not establish that the Group H deeds are subject to this rule. *See id.*; Def. Reply at 22.[19] Plaintiffs' argument supports the proposition that the precise words of the deed matter, but it does little to establish the meaning of precise words *in*

[18] Plaintiffs also cite *Castillo v. United States*, 952 F.3d 1311 (Fed. Cir. 2020), for their argument that "excepting language merely excepts a previously conveyed easement." Pl. Mot. at 19–20. *Castillo* does not apply this case because it interprets Florida law, not California law. *See Castillo*, 952 F.3d at 1322 (interpreting Florida property law); *ATS Ford Drive*, 136 F.4th at 1170 ("[W]e must apply the law of the state where the property interest arises." (quoting *Chicago Coating Co.*, 892 F.3d at 1170)). Even if *Castillo* applied, it would not change the outcome of this case. *See Castillo*, 952 F.3d at 1322. The deeds at issue in *Castillo* excepted a "Right-of-Way" and a "strip of land [that] is the right of way," and the United States Court of Appeals for the Federal Circuit held that these phrases excepted already-conveyed easements under established Florida law. *Id.* In contrast, here, directly applicable precedent from the California Supreme Court establishes that the language used in the Group H deeds excepts the fee interest in the right-of-way *under California law*. *See New Liverpool*, 87 P. at 1029–30.

[19] Defendant contrasts the challenged Group H deeds with other deeds it has not challenged, which contain excepting clauses that more closely resemble the excepting clause in *Kraemer*. Def. Mot. at 36. The unchallenged deeds notify the grantee that there is an existing easement on the right-of-way and except the "portion conveyed" to the railroad, but do not except the land underneath the right-of-way. *Id.*; *see* ECF No. 64-66 at 4, PLT000047 ("EXCEPTING THEREFROM that portion conveyed to the Northwestern Pacific Railroad Company").

*their deeds*. Plaintiffs never cite specific language in the Group H deeds that indicates the exceptions apply only to the easements, rather than the underlying land. *See* Pl. Resp. at 41; Pl. Mot. at 19; Pl. Suppl. Reply at 28–29. To demonstrate that *Kraemer* applies to this case, Plaintiffs must also "cit[e] to particular parts of materials in the record." *See* Rule 56(c)(1)(A).

Instead, the language in the excepting clauses of Group H deeds almost exactly matches the language in *New Liverpool*. *Compare New Liverpool*, 87 P. at 1029–30 ("that portion thereof lying between the tracks")*, with* ECF Nos. 63-11 at 4, PLT000016 ("[a]ny portion . . . lying within")*, and* 64-28 at 26, PLT000798 ("those portions thereof lying within"). In contrast, the deeds do not except the tract or portion "conveyed" previously to the railroad, which would only except the easement already conveyed. *Compare Kraemer*, 334 P.2d at 681*, with* ECF Nos. 63-11 at 4, PLT000016 ("[a]ny portion . . . lying")*, and* 64-28 at 26, PLT000798 ("those portions thereof lying"). Just as in *New Liverpool*, this deed language indicates that the deeds in Group H do not convey any land within the railroad right-of-way. *See New Liverpool*, 87 P. at 1029–30. As such, Plaintiffs cannot establish their interest in the right-of-way through these deeds.[20]

## III. Chains of Title

Alternatively, Plaintiffs argue that if they cannot receive the benefit of the centerline presumption, they are still entitled to summary judgment based on the chains of title they have

[20] The Court thus holds that the following Plaintiffs and parcels cannot establish a fee interest in the right-of-way through their title deeds: Swallowtail Ranch, 036-185-015; Swallowtail Ranch, 036-185-016; Donald Dunn & Kathleen Dunn Revocable Trust of 2017, Trustees, Donald Dunn & Kathleen Dunn, 022-160-007; Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 307-101-008. As Plaintiffs did not attempt to prove fee ownership in the latter parcel through a chain of title, the Court **GRANTS** summary judgment to Defendant and **DENIES** summary judgment to Plaintiffs with respect to the following parcel: Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 307-101-008. *See* Pl. Mot. at 7 ("The government additionally included one more representative parcel— . . . Parcel No. 307-101-008— in Group H, but Plaintiffs did not acquire a chain of title.").

gathered. Pl. Mot. at 20. "Plaintiffs' chain of title evidence goes beyond reliance on the centerline presumption to show that they own the land in the railroad corridor." *Id.* at 21. Defendant argues that it is still entitled to summary judgment because the chains of title fail to provide any evidence that Plaintiffs own land within the right-of-way. *See* Def. Suppl. Mot. at 13.

### A. Establishing Ownership Through Chains of Title

Plaintiffs rely upon two cases interpreting California property law to explain the application of chains of title when the centerline presumption does not apply: *Besneatte v. Gourdin*, 21 Cal. Rptr. 2d 82 (Cal. Ct. App. 1993), and *Sutton v. United States*, 107 Fed. Cl. 436 (2012). Pl. Mot. at 22. Defendant does not contest that *Besneatte* and *Sutton* establish the standard for the use of chains of title to prove a fee interest in a right-of-way after the centerline presumption has been rebutted, nor does Defendant identify any other case that demonstrates the use of chains of title in California law. *See* Def. Suppl. Reply at 6–7. Instead, Defendant argues that Plaintiffs fail to meet the "burden" established in those cases. *Id.* at 7.

In *Besneatte v. Gourdin*, the California Court of Appeal applied California law concerning the use of chains of title to establish a fee interest in a right-of-way after the rebuttal of the centerline presumption. *Besneatte*, 21 Cal. Rptr. 2d at 85. In *Besneatte*, an abandoned alleyway separated plaintiffs' and defendants' houses. *Besneatte*, 21 Cal. Rptr. 2d at 82–83. Plaintiffs sued to quiet title and establish ownership of the abandoned alleyway. *Id.* The abandoned alleyway separated "tracts 9808 and 10009," each of which was subdivided into houses bordering the alleyway during the twentieth century. *Id.* at 83. Chain of title evidence introduced in the case established that a single entity, "the Whiting Company," owned all of tract 10009 in 1917 (before tract 10009 was subdivided into houses). *Id.* The Whiting Company "created the alley from the margin of tract 10009" in 1917—the alley was created only from tract 10009, not tract 9808, and

the Whiting Company retained fee title to the alley. *Id.* Later, the Whiting Company conveyed tract 10009 to other owners, and the conveyance included a metes-and-bounds description that did not include the alley. *Id.* The new owners subdivided the tract into individual houses, and successive owners of land in tract 10009 conveyed their parcels with "substantially the same metes and bounds description," which did not include the alley. *Id.* at 84.

Even though none of the metes-and-bounds descriptions included the alley, the *Besneatte* court found that the successive conveyances in tract 10009 included an interest in the entire alleyway, not just to the centerline. *Id.* at 85. Central to this holding was "the state policy against the creation of strips and gores":

> Put another way, if a property owner creates a street from and along the margin of his property, a deed conveying the land bounded by the road carries fee title to the entire parcel, subject to the public easement. In such cases it would be illogical to presume the grantor intended to retain a narrow sliver of land "which, when separated from the adjoining land, would be of little or no use to him."

*Id.* at 84–85 (quoting *Everett*, 50 Cal. Rptr. at 818). The *Besneatte* court found that "no evidence suggests the Whiting Company intended to reserve any ownership interest in the alleyway strip." *Id.* at 84. Specifically, "[t]he grantor did not specifically except or reserve any interest in the strip when it conveyed the property"; where there is a marginal right-of-way, the exclusion of a right-of-way from a metes-and-bounds description is insufficient to show a reservation of interests. *Id.* at 85. Thus, the owners of tract 10009 established their ownership to the alleyway in *Besneatte* because their chains of title established that (1) a predecessor-in-interest held a fee interest to the land underneath the right-of-way, and (2) no evidence established that any predecessors-in-interest had reserved or separately conveyed the fee interest to the right-of-way. *Id.* The Court must apply California law, as demonstrated in *Besneatte*, to the chains of title in this case, as the property at

issue lies in California. *See ATS Ford Drive*, 136 F.4th at 1170 ("[W]e must apply the law of the state where the property interest arises." (quoting *Chicago Coating Co.*, 892 F.3d at 1170)).

The Court of Federal Claims applied the rule set forth in *Besneatte* in *Sutton v. United States*, another rails-to-trails case arising out of alleged takings in California. *Sutton*, 107 Fed. Cl. at 441–42. In *Sutton*, plaintiffs and defendant filed cross-motions for summary judgment regarding, among other issues, "whether plaintiffs have a cognizable property interest in the land." *Id.* at 438. The parties to *Sutton* had already eliminated plaintiffs who did not own any interest in the right-of-way because the railroad owned the portion of the right-of-way abutting their land in fee simple. *Id.* Defendant challenged the remaining plaintiffs' ability to show ownership of the interest in the right-of-way. *Id.* at 440. The parties agreed that the centerline presumption did not establish plaintiffs' interests because plaintiffs' parcels did not directly abut the railroad corridor—an intervening road or drainage ditch lay between the parcels and the corridor—but plaintiffs argued they held fee title to the intervening road or drainage ditch *and* the follow railroad corridor. *Id.* at 441. Instead, plaintiffs "attempt[ed] to rely on chain of title evidence." *Id.* Chain of title evidence was valuable because it "demonstrates that [plaintiffs] own the railroad corridor in fee regardless of conflicting maps or metes and bounds descriptions found in plaintiffs' deeds and without regard to the centerline presumption." *Id.* "The center line presumption is irrelevant where chain of title evidence demonstrates ownership of the entire width of the railroad corridor, according to plaintiffs." *Id.*

Plaintiffs in *Sutton* first established that their predecessors-in-interest owned the land over which lay easements for the railroad corridor and the intervening street or drainage ditch. *Id.* Then, plaintiffs submitted chains of title that established that the fee interests underneath the

easements had been conveyed from the original predecessors-in-interest to the present owners, through successive conveyances of the property:

> Plaintiffs provide an affidavit of the title examiner who researched this property and found no transactions involving the railroad corridor in the records other than plaintiffs' chains of title. Plaintiffs' predecessors in interest owned the land underlying the railroad corridor and the strips of land under the roads or ditch. None of the intermediate conveyances in the chains of title show reservation of fee title or other rights in previous owners and grantors when they conveyed the lots that adjoin the railroad easement. Plaintiffs therefore obtained ownership interests in the railroad right-of-way.

*Id.* at 441–42. Thus, the *Sutton* plaintiffs demonstrated their interest in the right-of-way using chains of title when they submitted evidence showing that (1) a predecessor-in-interest owned the right-of-way in fee, and (2) neither the original nor any subsequent predecessor-in-interest reserved or separately conveyed the fee interest in the right-of-way. *Id.* Though not binding, the application of California law in *Sutton* is persuasive.

From *Besneatte* and that decision's application in *Sutton*, it is apparent that chains of title must provide two pieces of evidence to demonstrate a current owner's fee interest in a right-of-way in a rails-to-trails case: (1) a predecessor-in-interest must have held the fee interest in the right-of-way, and (2) neither that predecessor-in-interest nor any subsequent predecessor-in-interest reserved or separately conveyed the fee interest to the right-of-way. *See Sutton*, 107 Fed. Cl. at 441–42; *Besneatte*, 21 Cal. Rptr. 2d at 84–85.

**B. <u>Application to Each Parcel</u>**

Plaintiffs argue that each chain of title they have gathered "begins with each Plaintiffs' predecessor-in-title who owned the fee interest in the land underlying the railroad corridor at the time of the applicable railroad source conveyance and then continues, transaction by transaction, in a direct line to Plaintiffs' ownership as of the NITU's issuance." Pl. Mot. at 26. Plaintiffs contend that each chain "demonstrates that [Plaintiffs] are clearly record title owners of the

corridor land." *Id.* at 28. Defendant counters that the chains of title fail to demonstrate that Plaintiffs' predecessors-in-interest held fee title to the right-of-way because "[f]or every chain of title provided by Plaintiffs, the deeds through which Plaintiffs' predecessors acquired the property contain the same limitations and exclusions" as the Plaintiffs' title deeds. Def. Suppl. Mot. at 14. The Court will hike through each chain of title and assess the evidence provided for each Plaintiff individually—unlike for the previous issues addressed in the parties' motions, the parties have not organized the evidence for chains of title into groups.

*1. Swallowtail Ranch*

Plaintiffs move for summary judgment with respect to two parcels owned by Swallowtail Ranch. Pl. Mot. at 28. Defendant also moves for summary judgment against both parcels and argues that the chains of title produced for these parcels do "nothing to rebut the United States' arguments." Def. Suppl. Mot. at 14–15. Plaintiffs submitted chains of title for each parcel. *See* ECF Nos. 91-1 (chain of title for parcel 036-185-015); 91-2 (chain of title for parcel 036-185-016).

The chains of title fail to establish that any of Plaintiff Swallowtail Ranch's predecessors-in-interest owned the fee interest to the right-of-way. According to the chains of title, Plaintiff Swallowtail Ranch received its interest in each parcel from the same conveyance, dated November 19, 1999, from the Luster Family Foundation, Inc. ECF Nos. 91-1 at 1; 91-2 at 1. The Luster Family Foundation, Inc., received its interest from the Onderdonk Revocable Trust. ECF Nos. 91-1 at 1; 91-2 at 1. The Onderdonk Revocable Trust, in turn, received its interest from the Cherry Creek Partnership, which received its interest from Alfred Fromm, as Trustee of the Alfred Fromm and Hanna Fromm Revocable Trust, via deed dated May 25, 1989. ECF Nos. 91-1 at 1; 91-2 at

1.[21] The chains of title do not record any predecessors-in-interest before Alfred Fromm. *See* ECF Nos. 91-1 at 1; 91-2 at 1. The conveyance from Alfred Fromm to the Cherry Creek Partnership does not provide any evidence that Alfred Fromm conveyed the fee interest to the railroad right-of-way; instead, the conveyance excepts "[a]ny portion of the above described real property lying within the boundaries of the Northwestern Pacific Railroad Company rights of way." ECF Nos. 91-1 at 16; 91-2 at 16. The chains of title contain no evidence that Alfred Fromm held a fee interest in the right-of-way. ECF Nos. 91-1 at 1; 91-2 at 1.

The chains of title also include two deeds to the Northwestern Pacific Railroad Company: one from the Farmers' Savings Bank, dated October 25, 1907, and one from the Sunset Trading and Land Company, dated September 11, 1909. ECF Nos. 91-1 at 1; 91-2 at 1. Plaintiffs do not argue that the Farmers' Savings Bank or the Sunset Trading and Land Company are predecessors-in-interest to Swallowtail Ranch; in fact, Plaintiffs disclaim any relationship to the 1907 and 1909 deeds as evidence that Plaintiffs' predecessors-in-interest held a fee interest to the right-of-way. Pl. Mot. at 28 ("[A]lthough Swallowtail Ranch's chain begins with two conveyances to the railroad (a Farmer[s'] Savings Bank deed and a Sunset Trading and Land Company deed), Swallowtail Ranch does not base its claims on these deeds."). As such, the chains of title do not provide any evidence that could establish fee ownership of the railroad right-of-way by any of Swallowtail Ranch's predecessors-in-interest. *See* ECF Nos. 91-1 at 1; 91-2 at 1. Whereas plaintiffs in *Sutton* and *Besneatte* established that a predecessor-in-interest held a fee interest in the disputed right-of-way as an essential element to proving their own interest through chains of title, Plaintiffs' failure

[21] The first page of each chain of title for Plaintiff Swallowtail Ranch states that the last-mentioned predecessor-in-interest is named the "Alfred Fromm and Hannah Fromm Revocable Trust." ECF Nos. 91-1 at 1; 91-2 at 1. However, the deed dated May 25, 1989 records the name of the trust as the "Alfred Fromm and Hanna Fromm Revocable Trust." ECF Nos. 91-1 at 13; 91-2 at 13.

to identify any predecessor-in-interest with a fee interest in the defeats Swallowtail Ranch's claims.[22] *See Sutton*, 107 Fed. Cl. at 441–42; *Besneatte*, 21 Cal. Rptr. 2d at 84–85.

*2. Dunn Revocable Trust*

Plaintiffs move for summary judgment with respect to one parcel owned by Donald Dunn & Kathleen Dunn Revocable Trust of 2017, Trustees, Donald Dunn & Kathleen Dunn (Dunn Revocable Trust). Pl. Mot. at 29. Defendant also moves for summary judgment against Dunn Revocable Trust's parcel and argues that the chain of title produced includes "nothing about the history of the Dunn Revocable Trust's property." Def. Suppl. Mot. at 17–18. Plaintiff submitted the chain of title for the parcel. *See* ECF No. 91-3.

The chain of title fails to establish that any of Plaintiff Dunn Revocable Trust's predecessors-in-interest owned the fee interest under the right-of-way. Dunn Revocable Trust traces its predecessors-in-interest back to a conveyance dated November 17, 1997, in which Larry Gene Nerison conveyed land to Geraldine L. Dunn, Trustee of the Dunn Family Trust, Donald A. Dunn, and Kathleen J. Dunn. ECF No. 91-3 at 1. That conveyance explicitly stated that it did not include "any portion thereof lying" within the right-of-way: "EXCEPTING THEREFROM any portion thereof lying within the Northwestern Pacific Railroad right of way." *Id.* at 24. Nothing in the chain of title provides any evidence to show that Larry Gene Nerison or any of his predecessors-in-title held a fee interest under the right-of-way. *See id.* at 1. The chain of title notes that the "[e]xaminer was unable to determine where Larry Nerison was vested interest in the subject lands." *Id.* The chain of title also includes two deeds conveying the right-of-way: one from the Northwestern Pacific Railroad Company to the Northwestern Pacific Acquiring

[22] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiff and parcels: Swallowtail Ranch, 036-185-015; Swallowtail Ranch, 036-185-016.

Corporation, and one from Jerry E. Gregg, as Trustee in Bankruptcy for the Estate of Northwestern Pacific Acquiring Corporation, to the North Coast Railroad Authority. *Id.* However, the chain of title does not establish who conveyed the right-of-way to the Northwestern Pacific Railroad Company, or whether that owner was a predecessor-in-interest to Dunn Revocable Trust. *See id.* Whereas plaintiffs in *Sutton* and *Besneatte* established that a predecessor-in-interest held a fee interest in the disputed right-of-way as an essential element to proving their own interest through chains of title, Plaintiffs' failure to identify any predecessor-in-interest with a fee interest in the right of way means that there is insufficient evidence to create any dispute of material fact concerning Dunn Revocable Trust's fee ownership in the right-of-way.[23] *See Sutton*, 107 Fed. Cl. at 441–42; *Besneatte*, 21 Cal. Rptr. 2d at 84–85.

*3. Fort Baker Ranch Company*

As stated above, the Court has already entered summary judgment for Defendant against Plaintiff Fort Baker Ranch Company because the railroad holds a fee interest to the right-of-way abutting Fort Baker Ranch Company's parcel. *Bewley I*, slip op. at 63, 65.

*4. Hongran Cohen Trust and Sean Suh*

As stated above, the Court has already entered summary judgment for Defendant against Plaintiffs Hongran Cohen Trust and Sean Suh because the railroad holds a fee interest to the right-of-way abutting their parcel. *Bewley I*, slip op. at 64–65.

*5. Murphy Family Trust*

Plaintiffs move for summary judgment with respect to three parcels owned by Plaintiff Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood Murphy & Pamela Murphy

[23] The Court thus **GRANTS** summary judgment to Defendant for the claim associated with the following Plaintiff and parcel: Donald Dunn & Kathleen Dunn Revocable Trust of 2017, Trustees, Donald Dunn & Kathleen Dunn, 022-160-007.

(Murphy Family Trust). Pl. Mot. at 31. Defendant also moves for summary judgment against these three parcels and argues that the chains of title produced for these parcels do "not rebut any of the United States' arguments." Def. Suppl. Mot. at 22. Plaintiffs submitted chains of title for each parcel. *See* ECF Nos. 91-6 (chain of title for parcel 306-211-004); 91-7 (chain of title for parcel 305-201-016); 91-8 (chain of title for parcel 305-171-015).

The chains of title fail to establish that Plaintiff Murphy Family Trust holds any fee interest in the right-of-way. For all three parcels, the Eureka Southern Railroad Company, Inc., by and through Jerry E. Gregg, Trustee in Bankruptcy of the Estate of Eureka Southern Railroad Company (Eureka Southern) is a predecessor-in-interest to the Murphy Family Trust. ECF Nos. 91-6 at 1; 91-7 at 1; 91-8 at 1. For two of the three parcels, the chains of title reflect that Eureka Southern conveyed property to Stanwood A. Murphy, Jr., in a deed dated May 10, 1990, and that Stanwood A. Murphy, Jr., later conveyed that property to Murphy Family Trust. ECF Nos. 91-6 at 1; 91-7 at 1. For the third parcel, the chain of title reflects two conveyances to Stanwood A. Murphy, Jr., who subsequently conveyed the parcel to Murphy Family Trust. ECF No. 91-8 at 1. Stanwood A. Murphy, Jr., received a conveyance on May 10, 1990, from Stanwood A. Murphy, Jr., and another conveyance on January 10, 1997, from Pacific Gas and Electric Company (PG&E). *Id.* at 1, 68–69. PG&E had received the conveyed property from Eureka Southern on August 21, 1991. *Id.* at 1. Thus, Eureka Southern was a predecessor-in-interest for each of the three Murphy Family Trust parcels at issue in this section of the Memorandum and Order. ECF Nos. 91-6 at 1; 91-7 at 1; 91-8 at 1.

Plaintiffs have failed to introduce any evidence in the chains of title, however, demonstrating that Eureka Southern owned the fee interest in the parcels at issue. According to the chains of title, Eureka Southern traced its interests back to a November 29, 1882 deed from

Waterman Field to the Eel River and Eureka Rail Road Company (a predecessor-in-interest to the NCRA) for the Murphy Family Trust parcels at issue here. ECF Nos. 91-6 at 1; 91-7 at 1; 91-8 at 1.[24] Plaintiffs argue that the chains of title for all three parcels "begin with" the Field deed. Pl. Mot. at 31. In its previous Memorandum and Order, the Court determined that this "Field deed" included one fee conveyance and one easement conveyance: "the Field deed conveys both a fee interest and an easement." *Bewley I*, slip op. at 49. If Eureka Southern drew its title from the Field deed for these parcels, Plaintiffs could only have purchased a fee interest from Eureka Southern where Eureka Southern had acquired a fee interest in the Field deed, rather than the portion of the Field deed that conveyed an easement.

The Court has previously held that the first conveyance in the Field deed, which was described in the deed as a "certain lot piece or parcel of land," was for a fee interest, and the rest of the Field deed conveyed an easement interest. *Bewley I*, slip op. at 49 (quoting ECF No. 64-81 at 3). The Field deed described this *first* conveyance, of a fee interest, as "containing twenty seven (27) acres more or less." ECF No. 64-81 at 3. Murphy Family Trust owns another parcel, not at issue in this section, for which it did not gather a chain of title, and that parcel encompasses the land that the Field deed conveyed in fee. *See* Pl. Mot. at 7 n.4 ("Parcel No. 307-101-008"). Parcel number 307-101-008 is described as "[a]ll that certain 27 acre parcel of land '*First*' described in [the Field deed]," and this parcel corresponds to the fee conveyance in the Field deed. ECF No. 91-8 at 98 (emphasis added). If the Field deed included one fee conveyance and one easement conveyance, and parcel number 307-101-008 corresponds to "[a]ll" of the fee conveyance, *id.*,

---

[24] The chain of title for each deed labels the grantor in the November 29, 1882 deed as "Waterman." ECF Nos. 91-6 at 1; 91-7 at 1; 91-8 at 1. However, the deed itself names the grantor as "Waterman Field." ECF Nos. 91-6 at 2; 91-7 at 2; 91-8 at 2. To maintain consistency with its prior Memorandum and Order, the Court references this November 29, 1882 deed as the "Field deed." *See Bewley I*, slip op. at 49.

then the parcels at issue in this section must correspond to other portions of the right-of-way, over which Eureka Southern only received an easement in the Field deed, *Bewley I*, slip op. at 49–50. Thus, Murphy Family Trust cannot rely upon the Field deed to establish that Eureka Southern (Murphy Family Trust's predecessor-in-interest) owned fee simple over the parcels at issue in this section.

Plaintiffs do not identify any conveyance in the chains of title by which Eureka Southern acquired the fee interest to the land over which Waterman Field had only granted an easement. *See* ECF Nos. 91-6 at 1; 91-7 at 1; 91-8 at 1. Similarly, Plaintiffs fail to identify any other instrument by which the railroad might have later acquired the fee interest corresponding to the easement portion of the Field deed. *See id.* In their Supplemental Reply, Plaintiffs do not identify another instrument by which the railroad or Murphy Family Trust acquired fee title to the land over which the Field deed conveyed an easement. *See* Pl. Suppl. Reply at 36–37. Instead, Plaintiffs double down on the argument that the Murphy Family Trust's interests in the parcels at issue "trace[] directly back to Field." *Id.* Plaintiffs argue that "[o]bviously, the railroad acquired certain property from Field as either an easement or as fee title, and whatever the case, the underlying fee traces to the Murphy Trust." *Id.* The phrase "whatever the case" is not the type of evidence that must be submitted to avoid summary judgment. *See id.*; *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("There must be sufficient substance, other than attorney argument, to show that the issue requires trial."). Having struck out with the Field deed and subsequent chains of title, Plaintiffs offer no evidence that any deed in the chains of title for Murphy Family Trust parcel numbers 306-211-004, 305-201-016, and 305-171-015 granted Eureka Southern a fee interest in the right-of-way. *See* ECF Nos. 91-6 (chain of title for parcel 306-211-004); 91-7 (chain of title for parcel 305-201-016); 91-8 (chain of title for

parcel 305-171-015). Plaintiffs' failure to identify any predecessor-in-interest with a fee interest in the right of way means that Plaintiff Murphy Family Trust cannot show a genuine dispute of material fact over Murphy Family Trust's fee ownership of the right-of-way for parcel numbers 306-211-004, 305-201-016, and 305-171-015.[25]

*6. Steven Danielson*

Plaintiffs move for summary judgment with respect to a parcel owned by Plaintiff Steven Danielson. Pl. Mot at 32–33. Plaintiffs produced a chain of title for the parcel. *See* ECF No. 91-9 (chain of title for parcel 305-131-017). Defendant also moves for summary judgment against Steven Danielson's parcel and argues that the chain of title "fails to establish that Danielson owned the land within the railroad corridor." Def. Suppl. Mot. at 24.

i. Gaps in Steven Danielson's Chain of Title

Steven Danielson's chain of title provides some evidence that one of his predecessors-in-interest owned fee title to his parcel and the land underlying the right-of-way, but it also contains several gaps in ownership of the parcel. The chain of title begins with a November 1, 1867, conveyance from John Shanahan to H.H. Buhne of "[a]ll those certain, pieces, tracts and parcels of land lying" withing a particularly described parcel. ECF No. 91-9 at 1–2. Defendant does not dispute that H.H. Buhne is a predecessor-in-interest to Steven Danielson. *See* Def. Suppl. Mot. at 23–25. On August 9, 1885, the Northwestern Pacific Railroad Company acquired an easement for the right-of-way over H.H. Buhne's land through a condemnation action. ECF No. 91-9 at 1. The title examiner could not identify a deed, judgment, or other record associated with the

[25] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiff and parcels: Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 306-211-004; Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 305-201-016; Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy, 305-171-015.

condemnation. *Id.* However, a deed dated October 25, 1984, from the Northwestern Pacific Railroad Company to the Northwest Pacific Acquiring Corporation lists an interest in the right-of-way that the railroad acquired from H.H. Buhne through a court case on August 9, 1885. ECF No. 91-9 at 13, 24 (describing land acquired through condemnation action). Defendant does not contest the existence of the 1885 condemnation or that the railroad acquired only an easement for the right-of-way through that condemnation, so H.H. Buhne retained the fee interest in the right-of-way. *See* ECF No. 63-1 at 2 (challenging Plaintiff Steven Danielson based on centerline presumption and not based on railroad's fee ownership of right-of-way). Thus, Plaintiffs have submitted undisputed evidence that Steven Danielson's predecessor-in-interest conveyed an easement to the railroad and retained the fee interest in the right-of-way. *See* ECF No. 91-9 at 1.

The problems with the chain of title for Plaintiff Steven Danielson arise in tracing the fee interest from H.H. Buhne to Steven Danielson because the chain of title includes multiple gaps. *See* ECF No. 91-9 at 1. After the conveyance from H.H. Buhne to the railroad, there is a 67-year gap in the chain of title. *Id.* Then, the chain of title includes a September 26, 1952, conveyance from Fred Wollper and Maggie Wollper, "husband and wife," to Fred Wollper and Maggie Wollper, "husband and wife in joint tenancy" of all property which either spouse owned individually. *Id.* at 4. The title examiner was unable to identify any recorded deeds linking the chain of title between H.H. Buhne and Fred and Maggie Wolpper. *Id.* at 1. On October 29, 1954, a court decree establishing Margaret Wollper's ownership of property following Fred Wollper's death includes a parcel of land whose boundaries are defined, in part, by the parcel "deeded to H.H. Buhne by John Shanahan on November 1, 1867." *Id.* at 5–6. Another boundary of the parcel runs "along the East line of" the railroad right-of-way. *Id.* at 7.

The chain of title next records a quitclaim deed dated January 10, 1961, from Radio KDAN, Inc. to Margaret Wollper. *Id.* at 1. The title examiner noted that no documents established how Radio KDAN, Inc. would have acquired any interest in the parcel, and that, given the use of a quitclaim deed, "it is assumed [Radio KDAN, Inc.] owned no interest in the subject lands and filed the deed to clear any cloud or doubt in title." *Id.* Then, there is another gap in the chain of title—the chain of title misses at least one link between Margaret Wollper and the next recorded owner of the parcel, T&H Mortarless Tile Company. *Id.* at 1, 9. The title examiner could not identify any recorded deeds linking Margaret Wollper and T&H Mortarless Tile Company. *Id.* at 1.

On August 26, 1966, T&H Mortarless Tile Company conveyed a parcel of land to Joseph and Ellen Snipes. *Id.* at 1, 9. The boundaries of this parcel similarly incorporated part of the parcel "conveyed by John Shanahan to H.H. Buhne." *Id.* at 10. One of the parcel's boundaries ran "along the easterly line" of the railroad right-of-way. *Id.* The chain of title then contains an uninterrupted record of the parcel's conveyances to Steven Danielson, who acquired the parcel through an October 19, 2000 conveyance from Debra Danielson. *Id.* at 1. Steven Danielson's deed includes the same reference to H.H. Buhne's parcel as the August 26, 1966, deed and similarly runs "along the Easterly line of" the railroad right-of-way. *Id.* at 71. The title examiner found no recorded conveyance that specifically mentioned the fee interest under the right-of-way, either in Steven Danielson's chain of title or in any other deed. *See id.* at 1; *see also* ECF No. 91-16 at 2 (affidavit from title examiner stating that he included all deeds related to right-of-way in chain of title).

In sum, Plaintiffs have submitted uncontroverted evidence demonstrating that Plaintiff Steven Danielson's predecessor-in-interest owned the fee interest under the right-of-way and that no recorded deed separately conveyed or retained the fee interest under the right-of-way. *See id.* at 1. In most respects, this resembles the situation in *Sutton*, when plaintiffs were entitled to

summary judgment because their predecessors-in-interest held fee title to the railroad corridor and the "title examiner who researched this property . . . found no transactions involving the railroad corridor in the records other than plaintiffs' chains of title." *Sutton*, 107 Fed. Cl. at 441. As "[n]one of the intermediate conveyances in the chains of title show reservation of fee title or other rights in previous owners or grantors when they conveyed the lots that adjoin the railroad easement," plaintiffs were entitled to summary judgment. *Id.* at 441–42. Similarly, Plaintiffs have identified the predecessor-in-interest to Steven Danielson who owned fee title, and neither party has identified any sale or reservation that specifically mentions the fee interest to the right-of-way in the 141 years since the railroad's predecessor-in-interest acquired an easement. *See* ECF No. 91 at 1 (listing August 9, 1885, conveyance of interest in right-of-way to railroad); Def. Suppl. Mot. at 23–25. That is sufficient to establish a *prima facie* case, as in *Sutton* and *Besneatte*, that Steven Danielson's parcel includes the right-of-way. *Sutton*, 107 Fed. Cl. at 441–42; *Besneatte*, 21 Cal. Rptr. 2d at 84–85; ECF No. 91-9 at 71.

ii. Impact of Gaps in Chain of Title on Summary Judgment

However, Defendant contends that due to the gaps in the chain of title, Plaintiff Steven Danielson is not entitled to summary judgment: Defendant argues that "[w]here Plaintiffs have failed to provide the continuous ownership history dating back to when the railroad acquired its interest, they have not provided a chain of title and cannot show what interests have been conveyed from grantor to grantee from when the railroad acquired its interest to the present day." Def. Suppl. Mot. at 14. Neither party identifies any case interpreting California law in which a party seeking to prove its ownership of the fee interest under a right-of-way abutting its property submitted a chain of title that contained gaps. *See* Pl. Suppl. Reply at 29; Def. Suppl. Reply at 7.

Neither *Sutton* nor *Besneatte* mentions a gap in the chain of title. *See Sutton*, 107 Fed. Cl. at 441–42; *Besneatte*, 21 Cal. Rptr. 2d at 84–85. However, neither decision states that it is essential for a landowner to provide a chain of title free of any gaps. In *Sutton*, the relevant evidence for demonstrating that predecessors-in-interest had not retained or separately conveyed the right-of-way was not a flawless chain of title, but instead "an affidavit of the title examiner who researched this property and found no transactions involving the railroad corridor in the records other than plaintiffs' chains of title." *Sutton*, 107 Fed. Cl. at 441. Plaintiffs submitted just such an affidavit here, in which the title examiner states that the chain of title contains all recorded documents affecting the parcel that he could locate. ECF No. 91-16 ¶¶ 3.i, 6.ii. Similarly, the *Besneatte* court did not state whether the chains of title at issue contained any gaps or recorded every conveyance. *See Besneatte*, 21 Cal. Rptr. 2d at 84–85. Rather, the important evidence was that "[n]othing in the chain of title" provided evidence that the right-of-way had been separately conveyed and that "[n]one of the deeds specifically mentions ownership of the" right-of-way. *Id.* at 84. Similarly, here, the undisputed evidence is that the chain of title shows a predecessor-in-interest who held the fee interest to the right-of-way along with Steven Danielson's parcel, and that no recorded conveyance has separated the fee interest to the right-of-way from the parcel. ECF No. 91-9 at 1. Where precedent has only required the landowner to demonstrate a predecessor-in-interest who held fee title to the right-of-way and an absence of recorded conveyances separately disposing that fee title, the Court is not inclined to create a new requirement under California law that a chain of title stretching back to 1867 not include any gaps.

The cases cited by Defendant fail to establish a contrary rule.[26] *See* Def. Suppl. Reply at 7. Defendant quotes *Hill v. Barner* for the proposition that "[t]he burden rested upon the plaintiff to establish his title to the premises by sufficient evidence." *Id.* (quoting *Hill v. Barner*, 96 P. 111, 114 (Cal. Dist. Ct. App. 1908)). However, the failure to meet the burden in *Hill* is irrelevant to the gaps in the chain of title at issue in this case. *See Hill*, 96 P. at 114. There, plaintiff, Hill, sought to establish his title to a parcel of land through a chain of title stretching back to Haggin, who received his land from Reading. *Id.* The deed between Haggin and Reading "reserved certain portions thereof from the sale to Haggin," and plaintiff failed to present any evidence demonstrating that the parcel at issue was not in the excepted portion. *Id.* The *Hill* court held that this "missing link" in the chain of title prevented plaintiff from demonstrating his ownership of the land. *Id.* Unlike the gaps in this case, the "missing link" was not a conveyance missing from the chain of title, but instead plaintiff's failure to provide evidence of the boundaries of an exception in the deed that conveyed land to his predecessor-in-interest (Haggin). *See id.* The situation in *Hill* is inapposite to the dispute over Steven Danielson's chain of title because Plaintiffs have submitted evidence that there were no exceptions or reservations at all in the chain of title, and Defendant does not dispute that H.H. Buhne (Steven Danielson's predecessor-in-interest) owned the land at issue. *See* ECF No. 91-9 at 1.

[26] Plaintiffs argue that "the gaps do not impact Plaintiffs' title because unrecorded documents impart no constructive notice on subsequent purchasers of land, and therefore unrecorded documents cannot defeat record title." Pl. Suppl. Reply at 40. Defendant responds that "the United States is not trying to use unrecorded documents to undermine Plaintiffs' title; the United States' position is, and has always been, that Plaintiffs' deeds *never conveyed an interest in the railroad corridor*." Def. Suppl. Reply at 7 (emphasis in original). Recording acts and arguments about priority of title are not relevant where, as here, neither party has identified any competing claims of title; accordingly, the Court does not base its decision upon the possible existence of unrecorded documents.

Next, Defendant quotes *Central Savings Bank of Oakland v. Lake* for the proposition that a plaintiff could not demonstrate its ownership of land when "a necessary link in plaintiff's chain of title was missing." Def. Suppl. Reply at 7 (quoting *Cent. Sav. Bank of Oakland v. Lake*, 257 P. 521, 523 (Cal. 1927)). There is no mention in the decision of a gap in the chain of title. *See id.* Before the case reached the California Supreme Court, an appellate court had vacated the trial decision for lacking the "necessary link" in plaintiff's evidence. *Id.* The necessary link was a failure of deeds held by the plaintiff bank to convey the security interest that, plaintiff claimed, gave it an interest in the property: "judgment was reversed on the ground that the recitals in the trustee's deed were not sufficient in themselves to prove the substitution of the trustees, and there was no other evidence of the fact." *Id.* As in *Hill*, the flaw in the title concerned the sufficiency of the deeds presented, not whether the chain of title was missing deeds. *See id.* As such, *Central Savings Bank of Oakland* does not establish that a gap in the chain of title defeats any claim based on that chain. *See id.*

Finally, Defendant cites *Gulieux v. Pennymac Holdings* for the proposition that "[t]he gaps in Plaintiffs' purported chains of title defeat their efforts to prove an interest in the corridor." Def. Suppl. Reply at 7 (citing *Gulieux v. Pennymac Holdings LLC*, No. F073142, 2017 WL 2963045, at *10 (Cal. Ct. App. July 12, 2017)). The chain of title at issue in *Gulieux* involved several conveyances of a mortgage interest in real property, which made up the links in the chain at issue. *Gulieux*, 2017 WL 2963045, at *8. Defendant, which sought to foreclose based on its alleged mortgage interest, submitted a chain of title with several gaps as evidence that it owned the mortgage interest. *Id.* These gaps included transfers of the mortgage interest from one bank to another. *Id.* The *Gulieux* court reversed a trial court's decision allowing the bank to foreclose based on the mortgage, as "the trial court erred in concluding the chain of title was perfected." *Id.*

at 2017 WL 2963045, at *10. However, Defendant fails to explain any applicability of this holding to the instant case. The *Gulieux* holding stands only for the proposition that a missing link in the chain of title might prevent *perfection* of that title, not that the missing link means that an owner does not have a property interest. *See id.* Perfection is a term of art related to recording requirements that a property owner must complete before taking certain actions, such as foreclosing on a mortgage or ejecting a former owner. *See Dr. Leevil, LLC v. Westlake Health Care Ctr.*, 431 P.3d 151, 154–55 (Cal. 2018). Defendant fails to identify any requirement that a plaintiff perfect their title before recovering for a taking of their property under the Fifth Amendment. *See* Def. Suppl. Reply at 7. Thus, the holding in *Gulieux* has no bearing upon the issue in this case. *See Gulieux*, 2017 WL 2963045, at *10.

As such, Defendant's cited authorities do not rebut the *prima facie* case that Plaintiffs have successfully made that Plaintiff Steven Danielson can establish his fee title to the land under the railroad right-of-way using the chains of title. Defendant fails to introduce any evidence that would create a genuine dispute of material fact with regard to Steven Danielson's claim, so Plaintiff Steven Danielson is entitled to summary judgment.[27] *See* Rule 56(c).

*7. Nyberg Revocable Trust*

Plaintiffs move for summary judgment with respect to four parcels owned by Plaintiff Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg (Nyberg Revocable Trust). Pl. Mot. at 33. Defendant also moves for summary

[27] The Court thus **GRANTS** summary judgment to Plaintiffs on the issue of fee ownership in the railroad right-of-way for the claim associated with the following Plaintiff and parcel: Steven Danielson, 305-131-017. As Plaintiffs only moved for summary judgment on the question of whether "the representative Plaintiffs identified in the government's Groups E-H own the corridor land," this is not a final determination that Defendant is liable or of any damages that Defendant may owe. Pl. Mot. at 37.

judgment against the four Nyberg Revocable Trust parcels and argues that the chain of title produced for these parcels "only confirms that Plaintiffs do not possess any ownership interest in the railroad right of way." Def. Suppl. Mot. at 25. Plaintiffs submitted chains of title for each parcel. *See* ECF Nos. 91-10 (chain of title for parcel 201-311-019); 91-11 (chain of title for parcel 201-311-020); 91-12 (chain of title for parcel 201-311-004); 91-13 (chain of title for parcel 201-322-008). The Court finds that disputed issues of material fact preclude summary judgment for either party with respect to the four parcels at issue for Plaintiff Nyberg Revocable Trust.

Plaintiffs present sufficient evidence to at least create a genuine dispute of material fact establishing that a predecessor-in-interest held the fee interest to the right-of-way. The chains of title each reflect that the railroad's predecessor-in-interest acquired an easement for the right-of-way over the land of Jeremiah Dale on September 3, 1884 in a condemnation action. ECF Nos. 91-10 at 1; 91-11 at 1; 91-12 at 1; 91-13 at 1.[28] Dale conveyed property, including the "East half of the Northwest quarter" of a particular section of land, to Harry E. Hurlbutt on October 26, 1915. ECF Nos. 91-10 at 3; 91-11 at 3; 91-12 at 2; 91-13 at 3. The conveyance from Dale to Hurlbutt excepts the "right of way" that had already been conveyed to the railroad and indicates no intention

[28] None of the chains of title include a record from the condemnation action; instead, each chain of title includes an examiner's remark stating that "no record of this [condemnation action] was found in the Humboldt Co. District Clerk archives." ECF Nos. 91-10 at 1; 91-11 at 1; 91-12 at 1; 91-13 at 1. However, each chain of title contains multiple references to such a condemnation action against Jeremiah Dale, such as in the deed from Dale to Hurlbutt. ECF Nos. 91-10 at 3; 91-11 at 3; 91-12 at 2; 91-13 at 3. The parties do not dispute that the railroad would have acquired an easement in such a condemnation action, so that Dale would have retained the fee interest to the right-of-way and could have sold it to Hurlbutt. *See* Pl. Mot. at 33–34 & n.36; Def. Suppl. Mot. at 25–26. The Court finds that the references to a condemnation action in later deeds are sufficient to at least create a genuine dispute of material fact that Dale, a predecessor-in-interest to Plaintiff Nyberg Revocable Trust, held fee title to both the railroad right-of-way and Plaintiff Nyberg Revocable Trust's parcels. *See AT&T Advert., L.P. v. United States*, 147 Fed. Cl. 478 (2020) (finding genuine dispute of material fact when "the Court would need to weigh the credibility of evidence"); ECF Nos. 91-10 at 3; 91-11 at 3; 91-12 at 2; 91-13 at 3.

for Dale to retain the fee interest underlying the right of way. ECF Nos. 91-10 at 5; 91-11 at 5; 91-12 at 4; 91-13 at 5.

Hurlbutt later conveyed part of the property to his wife, Bertha E. Hurlbutt, including "all that portion of the West half of the Northeast quarter of the Northwest quarter which lies on the Northerly side of the right of way of the Northwestern Pacific Railroad." ECF Nos. 91-10 at 4–5; 91-11 at 4–5; 91-12 at 3–4; 91-13 at 4–5. In addition, the conveyance to Bertha Hurlbutt included other parcels in the same section of land, which were not limited to the north side of the right-of-way: "[t]he East half of the Southwest quarter, the West half of the Northeast quarter, [and] the East half of the East half of the Northwest quarter." ECF Nos. 91-10 at 5; 91-11 at 5; 91-12 at 4; 91-13 at 5. The deed by which Plaintiff Nyberg Revocable Trust received the four parcels at issue contains a materially identical description of the property as the conveyance to Bertha Hurlbutt, including both the land "which lies on the Northerly side of the right of way" and other parcels. *Compare* ECF Nos. 91-10 at 5; 91-11 at 5; 91-12 at 4; 91-13 at 5 (conveyance to Bertha Hurlbutt), *with* ECF Nos. 91-10 at 68; 91-11 at 68; 91-12 at 67; 91-13 at 68 (conveyance to Nyberg Revocable Trust). Here, Plaintiffs have presented evidence that Plaintiff Nyberg Revocable Trust has a predecessor-in-interest for these four parcels who owned the fee interest to the right-of-way, but the evidence also indicates that at least some parcels are limited to land "which lies on the Northerly side of the right of way." *See, e.g.*, ECF No. 91-10 at 5.

The parties dispute whether some or all of Plaintiff Nyberg Revocable Trust's parcels derive from the grant of land "which lies on the Northerly side of the right of way" or whether some of the parcels derive from other grants that might include part of the right-of-way. There is no evidence concerning Harry Hurlbutt's later actions or intent to retain land in the right-of-way. *See* ECF Nos. 91-10 at 5; 91-11 at 5; 91-12 at 4; 91-13 at 5. Defendant argues that each of the

four parcels derives from the grant that is limited to land north of the right-of-way. Def. Suppl. Mot. at 25–26; ECF No. 63-8 at 2 (challenging each Nyberg Revocable Trust parcel based on "portion . . . which lies on the Northerly side of the Northwestern Pacific Railroad" deed language). In contrast, Plaintiffs argue that "Nyberg Trust owns on both sides of the corridor" for two of the four parcels (i.e., including land south of the right-of-way), in which case at least one parcel must derive from a grant in the Hurlbutt deed besides the grant of land "which lies on the Northerly side of the right of way." Pl. Mot. at 34. Neither party submits evidence concerning which Nyberg Revocable Trust parcel corresponds to which grant of land in the deeds at issue. *See* Pl. Mot. at 34; Def. Suppl. Mot. at 25. As such, there is a genuine dispute of material fact concerning which parcels are limited to land "which lies on the Northerly side of the right of way," and the Court must deny summary judgment to both Defendant and Plaintiffs with respect to Nyberg Revocable Trust's four parcels at issue.[29]

*8. Redwood Coast Trucking*

Plaintiffs move for summary judgment with respect to two parcels owned by Plaintiff Redwood Coast Trucking, Inc. (Redwood Coast Trucking). Pl. Mot. at 34–35. Defendant also moves for summary judgment against both parcels and argues that "Redwood Coast Trucking's predecessors in title had no ownership interest in the railroad." Def. Supp. Mot. at 27. Plaintiffs submitted chains of title for each parcel. *See* ECF Nos. 91-14 (chain of title for parcel 506-081-017); 91-15 (chain of title for parcel 506-081-016).

[29] The Court thus **DENIES** summary judgment to Defendant and Plaintiffs for claims associated with the following Plaintiff and parcels: Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg, 201-311-019; Trustees Philip Nyberg & Melinda Nyberg, 201-311-024; Trustees Philip Nyberg & Melinda Nyberg, 201-311-004; Trustees Philip Nyberg & Melinda Nyberg, 201-322-008.

Redwood Coast Trucking acquired title to each parcel in a title deed dated July 30, 1996. ECF Nos. 91-14 at 1, 82; 91-15 at 1, 82. That title deed states that the parcels border the railroad right-of-way on two sides. ECF Nos. 91-14 at 82; 91-15 at 82. First, Redwood Coast Trucking's land ends at the west side of "the Westerly line of the strip of land conveyed to Eureka and Klamath Railroad Company, by Deed recorded May 20, 1911 in Book 115 of Deeds, page 55, Humboldt County Records." ECF Nos. 91-14 at 82; 91-15 at 82. Second, the parcel extends to the north of "the North line of a parcel of land heretofore conveyed by E.H. Vance to the Eureka and Klamath River Railroad Company, a corporation, by Deed recorded May 11, 1896 in Book 57 of Deeds, page 601, Humboldt County Records." ECF Nos. 91-14 at 82; 91-15 at 82. To establish its fee simple interest in the right-of-way in these portions abutting its property, Redwood Coast Trucking must establish that the grantor of the May 20, 1911 deed or the May 11, 1896 deed from E.H. Vance was a predecessor-in-interest. *See Sutton*, 107 Fed. Cl. at 441–42; *Besneatte*, 21 Cal. Rptr. 2d at 84–85.

Plaintiffs fail to establish that a predecessor-in-interest granted an easement to the railway in either the May 20, 1911 deed or the May 11, 1896 deed from E.H. Vance. *See* ECF Nos. 91-14 at 1, 91-15 at 1. Instead, the chains of title submitted by Plaintiffs for each parcel owned by Redwood Coast Trucking identify their predecessor-in-interest as Lucy Conover, who conveyed a strip of land to the Humbold's Bay and Trinidad Logging and Lumbering Company on December 3, 1895. ECF Nos. 91-14 at 1; 91-15 at 1. Humbold's Bay and Trinidad Logging and Lumbering Company then conveyed the same parcel to the Eureka and Klamath River Railroad Company on May 9, 1896. ECF Nos. 91-14 at 1; 91-15 at 1. This conveyance to the railroad was recorded on May 11, 1896, in volume 57 of Humboldt County's recorded deeds, beginning on page 609. ECF

Nos. 91-14 at 1, 5; 91-15 at 1, 5.[30] The chains of title do not mention any link between Humbold's Bay and Trinidad Logging and Lumbering Company or the same parcel of land the May 20, 1911, deed or the May 11, 1896, deed from E.H. Vance. *See* ECF Nos. 91-14 at 1; 91-15 at 1. Similarly, Redwood Coast Trucking's chains of title do not include the May 20, 1911, deed or the May 11, 1896, deed from E.H. Vance. ECF Nos. 91-14 at 1; 91-15 at 1. Plaintiffs have thus failed to provide any evidence that a predecessor-in-interest to Redwood Coast Trucking owned the fee interest in the land that Redwood Coast Trucking now claims. The chains of title include no other evidence that could demonstrate Plaintiff Redwood Coast Trucking has a predecessor-in-interest who conveyed an easement to the railroad and retained the fee interest. *See* ECF Nos. 91-14 at 1; 91-15 at 1. Plaintiffs' failure to identify any predecessor-in-interest with a fee interest in the right of way means that Plaintiff Redwood Coast Trucking cannot show a genuine dispute of material fact for its parcels at issue, and Defendant is accordingly entitled to summary judgment.[31] *See Sutton*, 107 Fed. Cl. at 441–42; *Besneatte*, 21 Cal. Rptr. 2d at 84–85.

## IV. Timeliness of Summary Judgment

Plaintiffs argue that even if they fail to present any evidence indicating their ownership of a fee interest in the right-of-way, then disputed issues of material fact remain because the evidence

[30] The deed included in Redwood Coast Trucking's chains of title, from Humbold's Bay and Trinidad Logging and Lumbering Company to the Eureka and Klamath River Railroad Company, appears to be recorded eight pages after from the deed from E.H. Vance to the Eureka and Klamath River Railroad Company, in the same volume of Humboldt County's recorded deeds. ECF Nos. 91-14 at 1, 5, 82; 91-15 at 1, 5, 82.

[31] The Court thus **GRANTS** summary judgment to Defendant for claims associated with the following Plaintiff and parcels: Redwood Coast Trucking, Inc., 506-081-017; Redwood Coast Trucking, Inc., 506-081-016.

"does not answer the question of who owns the land, if not Plaintiffs." Pl. Mot. at 35.[32] Defendant disagrees and argues that if "Plaintiffs have not presented evidence that proves their ownership of the corridor, the United States is entitled to summary judgment." Def. Suppl. Reply at 8. Defendant asserts that "this case is not about who owns the land within the corridor; the issue is whether *Plaintiffs* own the land within the corridor." *Id.* (emphasis in original).

Summary judgment is warranted when, as here, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322; *see Alt. Carbon Res., LLC v. United States*, 939 F.3d 1320, 1327–28 (Fed. Cir. 2019) ("[A] nonmoving party's failure of proof concerning the existence of an element essential to its case on which [it] will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." (quoting *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994))); *see also GBA Assocs. Ltd. P'ship v. United States*, 171 Fed. Cl. 93, 100 (2024) ("Summary judgment must be granted for the moving party if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322–323)). It is not enough to say that ownership of the reversion interest remains disputed—the United States Court of Appeals for the Federal Circuit has specifically stated that, at summary judgment "[i]t is plaintiffs' burden to establish cognizable

[32] In its Response to Defendant's original Partial Motion for Summary Judgment, Plaintiffs argued that if the centerline presumption were rebutted, they should still have the opportunity to gather chains of title. Pl. Resp. at 38 ("If the Court finds that the government has rebutted the centerline presumption, then Plaintiffs will simply acquire full chains of title to prove that no landowner ever intended to withhold the corridor land from a conveyance of Plaintiffs' adjacent property."). The Court granted Plaintiffs that opportunity for additional discovery. ECF No. 82 at 2.

property interests for purposes of their takings . . . claims." *Klamath Irrigation Dist. v. United States*, 635 F.3d 505, 519 n.12 (Fed. Cir. 2011).

The issue in this case is not *who* owns the land (as Plaintiffs argue), but rather *whether the Plaintiffs* own the land. The Court already granted Plaintiffs a second chance to gather evidence of their property interests, in the form of chains of title. ECF Nos. 78 at 2; 82 at 2; 90 at 1–2. If that evidence fails to establish a property interest, Plaintiffs cannot advance their claims based upon mere conjecture. *See Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 720 (2011) (Non-movant "cannot defeat summary judgment by merely suggesting that deeds that include a reference to the right-of-way might exist."); *see also Zafer Taahut Insaat ve Ticaret A.S. v. United States*, 833 F.3d 1356, 1362–63 (Fed. Cir. 2016) (non-movant plaintiff must present evidence for essential elements of claim at time of summary judgment motion to defeat summary judgment); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir. 1987) ("[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient."). Plaintiffs in rails-to-trails cases cannot defeat summary judgment with a contention that someone must own the land, even if Plaintiffs lack evidence of their ownership. *BHL Props., LLC v. United States*, 135 Fed. Cl. 222, 229 (2017) ("In short, to defeat the government's motion for summary judgment, [Plaintiff] must do more than simply cite the absence of evidence in the record that another individual currently owns the land underlying [the right-of-way]."). As such, the Government is entitled to summary judgment with regard to parcels for which Plaintiffs have not successfully presented any evidence of their fee interest in the right-of-way.[33] *See Zafer Taahut Insaat ve Ticaret*, 833 F.3d at 1362–63; *Lakeshore Harbour*

[33] The parcels for which Plaintiffs have failed to present evidence establishing their property interest in the right-of-way, and for which Defendant is entitled to summary judgment, are listed *infra* at nn.20, 22, 23, 25, 31.

*Townhouses Condominium v. United States*, 174 Fed. Cl. 365, 372–73 (2024) (granting summary judgment for Government because Plaintiff could not establish property interest after centerline presumption rebutted).

* * * * *

## CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the remainder of Defendant's Partial Motion for Summary Judgment (ECF No. 63) and **GRANTS IN PART** and **DENIES IN PART** Defendant's Supplemental Motion for Summary Judgment Regarding Chains of Title for Representative Parcels (ECF No. 92), as set forth below. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment on Record Title Ownership of the Corridor for 8 Representative Plaintiffs (ECF No. 91), as set forth below.

The Court **GRANTS** summary judgment in favor of Defendant and **DENIES** summary judgment to Plaintiffs with regard to the following Plaintiffs and associated parcels:

| PLAINTIFF | PARCEL NUMBER |
|---|---|
| Swallowtail Ranch | 036-185-015 |
| Swallowtail Ranch | 036-185-016 |
| Donald Dunn & Kathleen Dunn Revocable Trust of 2017, Trustees, Donald Dunn & Kathleen Dunn | 022-160-007 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy | 306-211-004 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy | 305-201-016 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy | 305-171-015 |
| Stanwood & Pamela Murphy Family Trust, Trustees, Stanwood & Pamela Murphy | 307-101-008 |
| Redwood Coast Trucking, Inc. | 506-081-017 |
| Redwood Coast Trucking, Inc. | 506-081-017 |

Accordingly, the claims of these Plaintiffs for their respective parcels are **DISMISSED** from this action.

The Court **GRANTS** summary judgment to Plaintiffs and **DENIES** summary judgment to Defendant on the issue of fee ownership in the railroad right-of-way for the following Plaintiff:

| PLAINTIFF | PARCEL NUMBER |
|---|---|
| Steven Danielson | 305-131-017 |

The Court **DENIES** summary judgment to Defendant and to Plaintiffs for the following parcels:

| PLAINTIFF | PARCEL NUMBER |
|---|---|
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 201-311-019 |
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 201-311-024 |
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 201-311-004 |
| Philip J. Nyberg and Melinda J. Nyberg Revocable Trust of 2015, Trustees Philip Nyberg & Melinda Nyberg | 201-322-008 |

The Court **DENIES AS MOOT** Plaintiffs' Motion for Summary Judgment (ECF No. 91) and Defendant's Supplemental Motion for Summary Judgment Regarding Chains of Title for Representative Parcels (ECF No. 92) with respect to the following claims, for which the Court has already granted summary judgment to Defendant, *see Bewley I*, slip op. at 63–65:

| PLAINTIFF | PARCEL NUMBER |
|---|---|
| Fort Baker Ranch Company | 216-166-016 |
| The Hongran Cohen Trust, Trustee, Hongran Cohen & Sean Suh | 205-111-074 |

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

September 10, 2026
Washington, D.C.